Triarch Architectural Services, P.C. v.
Medallion Inc., et al.

Garry Braverman
Vol. 1, July 11, 2012

Page 169

**G. Braverman**

[1]

[2] **A:** No.

[3] **Q:** Do you know why not?

[4] **MR. ISRAEL:** Objection.

[5] **A:** I don't remember.

[6] **Q:** Do you recall whether

[7] Mr. Voronchenko was not interested because of the

[8] nature of the opportunity or because of his ideas

[9] about Mr. Corelli?

[10] **MR. ISRAEL:** Objection, calls for

[11] speculation.

[12] **A:** I don't —

[13] **MR. ISRAEL:** Irrelevant. Go ahead.

[14] **A:** I don't remember.

[15] **Q:** Why weren't you interested, do you

[16] recall —

[17] **MR. MANDEL:** Withdrawn.

[18] **Q:** Do you recall whether you were not

[19] interested in the opportunity because of

[20] Mr. Corelli or because of the idea itself?

[21] **MR. ISRAEL:** Objection.

[22] **A:** Because there were Tribeca-related,

[23] I was not interested in any Tribeca project.

[24] **Q:** If it was a real estate development

[25] opportunity that interested you, would you have

Page 170

**G. Braverman**

[1]

[2] been willing to go into business with

[3] Mr. Corelli?

[4] **MR. ISRAEL:** Come on, objection.

[5] **A:** Sure, I would, if it was interesting

[6] business proposal, why not.

[7] **Q:** In the middle of the second page,

[8] Mr. Corelli e-mails you in that e-mail, he states

[9] that these renderings are taking up a tremendous

[10] amount of time. Did you understand that to be

[11] the case?

[12] **A:** Did — did I understand what?

[13] **Q:** Was it your understanding while you

[14] were working on the project that the renderings

[15] took a lot of time to repair?

[16] **A:** I simply ignored — ignored those

[17] comments because I am very computer literate and

[18] I know how they're being created. I can do it

[19] within 30 seconds.

[20] **Q:** You can develop these renderings

[21] within 30 seconds?

[22] **A:** Well, I would know if they would be

[23] acceptable to a potential client, but from a

[24] computer standpoint of view, I can do — I can do

[25] a dozen of them within two hours, so I don't

Page 171

**G. Braverman**

[1]

[2] understand why — and he's a professional, so

[3] obviously he would use better materials or better

[4] design than I would.

[5] **Q:** I'm handing you what has been marked

[6] as Defendant's Exhibit 46.

[7] Did Mr. Corelli e-mail you an

[8] invoice on or around January 14, 2009?

[9] **A:** He did, according to this e-mail.

[10] **Q:** Did you object to that e-mail in any

[11] way?

[12] **A:** I did, because he was not entitled

[13] to more than 15 percent of his — of his 17

[14] percent until the renderings are approved.

[15] **Q:** I may have misheard. Did you say 15

[16] percent, 1-5?

[17] **A:** Yes.

[18] **Q:** So at this point in time, as of

[19] January 14, 2009, what percentage of the 17

[20] percent fee was Triarch entitled to?

[21] **A:** According to our agreement, no more

[22] than 15 percent.

[23] **Q:** So less than 15 percent?

[24] **A:** Correct.

[25] **Q:** Do you have any understanding as to

Page 172

**G. Braverman**

[1]

[2] how many hours Triarch put in between early

[3] September 2008, when they were hired, and January

[4] 14, 2009?

[5] **A:** Well, by this — how any project

[6] would — would work, they indicated 40 percent

[7] for — for — for phase number 3; even so,

[8] probably timewise it would take them less than

[9] that. Once — once the client — once the client

[10] approved the design, then it's all technical.

[11] **Q:** Here Mr. Corelli states, towards the

[12] end, "While there are additional charges for the

[13] extra presentation work, we have significantly

[14] reduced the amount of time we have billed for,

[15] that is to say we have spent a lot more time on

[16] this than you have been charged for."

[17] Do you have any understanding as to

[18] whether that statement is true or false?

[19] **A:** I cannot judge, but that is

[20] how — that is how it works. I mean, when you're

[21] trying to accommodate the client, to make him

[22] like what you do, you spend — sometimes you

[23] submit a proposal which you work on for countless

[24] hours and it just doesn't work, that's the nature

[25] of the beast.

Garry Braverman
Vol. 1, July 11, 2012

Triarch Architectural Services, P.C. v.
Medallion Inc., et al.

Page 173

[1] **G. Braverman**
[2] **Q:** And is it your understanding that
[3] the client can ask for many, many, many revisions
[4] and not pay any additional fee?
[5] **A:** It's — I just said that's how you
[6] win the project. I mean, you have to
[7] accommodate — you have to make the client happy.
[8] **Q:** When you say "win the project," what
[9] do you mean? I guess I'm confused by that
[10] language because you had already entered into a
[11] contract; Medallion had already entered into a
[12] contract with Triarch, correct?
[13] **A:** Correct.
[14] **Q:** Hadn't Triarch already won the
[15] project?
[16] **MR. ISRAEL:** Objection.
[17] **A:** Yes. But what I'm referring to is
[18] that the following stages of the project are much
[19] less time-consuming from his standpoint of view.
[20] And in terms of his involvement. Once — once
[21] the design is approved, then it goes to — to
[22] soft — to software, which is called CAD, that
[23] automatically creates all the — all the drawings
[24] and all of that so this is something that a
[25] person who makes $10 dollars an hour can do.

Page 174

[1] **G. Braverman**
[2] **Q:** So —
[3] **A:** You understand what I'm referring
[4] to?
[5] **Q:** The AutoCAD software?
[6] **A:** The creative project, that is
[7] actually what is needed from him. Once it's
[8] done, then the rest of the project for him is a
[9] very — much less time-consuming.
[10] **Q:** So the margins are on the back end
[11] of the project?
[12] **A:** Always.
[13] **Q:** If that's the case, why wouldn't he
[14] have adjusted the percentage so most of the fee
[15] is for the initial stage of the project?
[16] **MR. McKEE:** Objection to form.
[17] **MR. ISRAEL:** Objection.
[18] **A:** I wouldn't know.
[19] **Q:** But under your understanding of the
[20] terms of the agreement, the work that is required
[21] for the first schematic design phase of the
[22] project is disproportionate to the percentage of
[23] the fee that Triarch is entitled to under the
[24] contract?
[25] **MR. ISRAEL:** Objection.

Page 175

[1] **G. Braverman**
[2] You can answer it if you understand
[3] what he said.
[4] **A:** I'm not an expert, I cannot tell.
[5] **Q:** In Exhibit 46, Mr. Corelli states,
[6] "As you will note, this bill is the lion's share
[7] of the overall fee." Is it your understanding
[8] that the lion's share of the work had already
[9] been done?
[10] **MR. ISRAEL:** Objection.
[11] **A:** Well, I would never accept such
[12] statement if we're still in Phase I and we still
[13] have four phases to go. Is it lion share of the
[14] entire project, or this is the lion share of
[15] phase I? And why would you go to phase II if
[16] phase I is not completed?
[17] **Q:** So it's your understanding that the
[18] lion's share of Triarch's overall
[19] responsibilities of the project had not been done
[20] at this point?
[21] **A:** That is correct.
[22] **MR. MANDEL:** Thank you.
[23] **Q:** At some point did you ask Triarch to
[24] give you an estimate for the construction cost of
[25] the project?

Page 176

[1] **G. Braverman**
[2] **A:** Yes.
[3] **Q:** I'm handing you what has been marked
[4] as Defendant's Exhibit 47. Do you recognize this
[5] document?
[6] **A:** Yes.
[7] **Q:** What is it?
[8] **A:** This is construction work estimate.
[9] **Q:** And did Ms. Deiss provide this to
[10] you?
[11] **A:** Yes.
[12] **Q:** And am I correct that this was
[13] a — this budget was for $1,273,800?
[14] **A:** Yes.
[15] **Q:** And was this budget an acceptable
[16] amount?
[17] **A:** Yes, it was more or less.
[18] **Q:** I believe, early in the day, you
[19] testified that there was a $1 million ceiling and
[20] you couldn't go above the ceiling; am I correct
[21] about your testimony earlier today?
[22] **A:** Yes.
[23] **Q:** Do you wish to change that
[24] testimony?
[25] **A:** No.

Triarch Architectural Services, P.C. v.
Medallion Inc., et al.

Garry Braverman
Vol. 1, July 11, 2012

Page 177

**G. Braverman**

[2] **Q:** So how do you reconcile your
[3] testimony that there was a hard-and-fast
[4] $1 million ceiling with this $1,273,000 budget
[5] being acceptable?
[6] **MR. ISRAEL:** Objection,
[7] mischaracterizes his earlier testimony.
[8] You can answer.
[9] **A:** It doesn't mean it was accepted. We
[10] asked them to submit a proposal, which I would
[11] compare to proposals I have in-house. It's just
[12] a proposal. It doesn't mean that it was ever
[13] accepted.
[14] **Q:** So it was Medallion's intention to
[15] work with this proposal and/or other proposals
[16] until it got to the point that it could meet its
[17] $1 million budget?
[18] **A:** Then I would start to negotiate line
[19] by line. I would ask them why was the guest bath
[20] toilet a thousand dollars if I can get it for
[21] 600.
[22] **Q:** Right. I may have misunderstood
[23] this proposal. Were they proposing — was
[24] Triarch proposing to be the general contractor
[25] themselves, or was Triarch just giving you their

Page 178

**G. Braverman**

[2] opinion as to what the overall project would
[3] cost?
[4] **A:** No, they said that they do have a
[5] general contractor who they work with on the
[6] previous projects.
[7] **Q:** I see.
[8] **A:** So I told them why not, why don't
[9] you submit a proposal and see what it would cost.
[10] **Q:** So is it your understanding that
[11] this proposal was created by the Triarch — the
[12] general counsel — excuse me, the general
[13] contractor with which Triarch was familiar?
[14] **A:** I believe so, yes.
[15] **Q:** I'm handing you what has been marked
[16] as Plaintiff's Exhibit 45. Do you recognize this
[17] document?
[18] **A:** Yes.
[19] **Q:** And do you recall discussing with
[20] Mr. Corelli the payment of an invoice on or
[21] around January 21, 2009?
[22] **A:** Yes.
[23] **Q:** Was it your understanding that
[24] Medallion was going to pay the invoice?
[25] **A:** Yes.

Page 179

**G. Braverman**

[2] **Q:** And did Medallion have any objection
[3] to the invoice?
[4] **A:** No.
[5] **Q:** And why did —
[6] **MR. MANDEL:** Withdrawn.
[7] **Q:** Am I correct that Medallion
[8] ultimately decided not to pay the invoice?
[9] **A:** I'm not aware of the fact that it
[10] wasn't paid.
[11] **Q:** I'm handing you what has been marked
[12] as Plaintiff's Exhibit 44, and I'll turn your
[13] attention to the third page, which is invoice
[14] number 3. And am I correct that that invoice is
[15] dated January — what is the date of that
[16] invoice?
[17] **MR. ISRAEL:** 9.
[18] **Q:** Am I correct that invoice number 3
[19] was sent to Medallion on or about January 9,
[20] 2009?
[21] **MR. ISRAEL:** Objection. He didn't
[22] send it, so how is he going to know?
[23] **MR. MANDEL:** Didn't I say sent to
[24] Medallion?
[25] **MR. ISRAEL:** Yes, you were saying

Page 180

**G. Braverman**

[2] was it sent to Medallion on that date,
[3] since he wasn't sending it how would he
[4] know when it was sent?
[5] **MR. MANDEL:** Withdrawn.
[6] **Q:** Was invoice number 3 received by
[7] Medallion on or about January 9, 2009?
[8] **A:** I don't remember seeing this.
[9] **Q:** Is this the invoice that you're
[10] referring to in Plaintiff's Exhibit 45, your
[11] January 21st e-mail to Mr. Corelli?
[12] **MR. ISRAEL:** Objection.
[13] You can answer if you know.
[14] **A:** I don't think so.
[15] **Q:** Which invoice do you think you were
[16] referring to?
[17] **A:** I was referring to the second
[18] invoice that was — the second payment that was
[19] sent.
[20] **Q:** Turning your attention again to
[21] Plaintiff's Exhibit 44, the second page of that
[22] is the second invoice. Is it your understanding
[23] that Plaintiff's Exhibit 45 refers to that second
[24] invoice there?
[25] **A:** None of these invoices were ever

Garry Braverman
Vol. 1, July 11, 2012

Triarch Architectural Services, P.C. v.
Medallion Inc., et al.

Page 181

**G. Braverman**

[1]
[2] approved by me, because additional services is
[3] not part of our contract. They were not doing
[4] any additional services, they were doing phase I.
[5] **Q:** So which invoice was being referred
[6] to in Plaintiff's Exhibit 45? So that the record
[7] is clear, this is Exhibit 45, and this is Exhibit
[8] 44. So which invoice is being referred to in
[9] Plaintiff's Exhibit 45?
[10] **MR. ISRAEL:** Are there any other
[11] invoices?
[12] **MR. MANDEL:** Not that I'm aware of.
[13] So the record is clear, Plaintiff's
[14] Exhibit 44 is, as far as I'm aware, all
[15] four invoices that Triarch sent to
[16] Medallion.
[17] **A:** I do remember about two payments
[18] that were sent to them, one is the initial
[19] deposit and there was another payment of, I would
[20] say, around 30, 35,000. I don't remember about
[21] any other payments that were made.
[22] **Q:** Do you recall when that second
[23] payment of approximately 30 to 35,000 was made?
[24] **A:** No. I was not the one who was
[25] sending payments.

Page 182

**G. Braverman**

[1]
[2] **Q:** So just returning your attention to
[3] Plaintiff's 45, do you know what invoice you're
[4] referring to in that e-mail?
[5] **MR. ISRAEL:** Objection. It doesn't
[6] say it's an invoice.
[7] **A:** No, I don't.
[8] **Q:** Do you know what payment you're
[9] referring to in that e-mail?
[10] **A:** I'm not sure.
[11] **Q:** At this point in time had Medallion
[12] decided to terminate Triarch?
[13] **A:** Yes.
[14] **Q:** At what point in time did Medallion
[15] make that decision?
[16] **A:** The decision was made actually back
[17] in December, but I was hoping to — to see any
[18] improvements and then I realized that it is a
[19] total waste of time.
[20] **Q:** So was a preliminary decision made
[21] in December to terminate?
[22] **A:** Yes, when I sent this e-mail.
[23] **Q:** Well, this e-mail is in January.
[24] **A:** No, I'm referring to my December
[25] e-mail.

Page 183

**G. Braverman**

[1]
[2] **Q:** Your December 10th e-mail?
[3] **A:** Yes.
[4] **Q:** So around December 10th, Medallion
[5] had made — was it a tentative decision to
[6] terminate Triarch?
[7] **A:** I was thinking of terminating this
[8] conflict, yes.
[9] **Q:** So in December of 2008, Medallion
[10] was considering terminating Triarch?
[11] **A:** Yes.
[12] **Q:** But Medallion hadn't reached a
[13] decision on that issue?
[14] **A:** That's right.
[15] **Q:** So turning back to January 21, 2009,
[16] as of this point in time, you're telling
[17] Mr. Corelli that Mr. Voronchenko hasn't
[18] authorized payment yet. At the time that you
[19] were telling him that he hadn't authorized
[20] payment, had Medallion already decided to
[21] terminate Triarch?
[22] **MR. ISRAEL:** Objection.
[23] You can answer.
[24] **A:** Yes, I believe so, yes.
[25] **Q:** And when was that decision made?

Page 184

**G. Braverman**

[1]
[2] **A:** Around this — around this date.
[3] **Q:** And why did you tell —
[4] **MR. ISRAEL:** Senor Corelli.
[5] **Q:** — Senor Corelli that you were
[6] terminating him at this point?
[7] **A:** Well, I've been telling him that
[8] since December, that I'm seriously — and I
[9] expressed that in my e-mails and over the
[10] telephone. But — but obviously I felt that it
[11] should come from — from Robert Wise, and I — I
[12] instructed him to send termination letters.
[13] **Q:** And you gave Mr. Wise that
[14] instruction around January 21, 2009?
[15] **A:** Around this time, yes.
[16] **Q:** And at this time was Triarch still
[17] working on the project?
[18] **A:** Practically no. I don't think so,
[19] no.
[20] **Q:** Did you want to obtain any copies of
[21] any of Triarch's renderings or drawings or work
[22] product before you terminated them?
[23] **A:** I never asked for them.
[24] **Q:** Did Medallion ever want all of those
[25] materials before the termination occurred?

Triarch Architectural Services, P.C. v.
Medallion Inc., et al.

Garry Braverman
Vol. 1, July 11, 2012

Page 185

**G. Braverman**

[1]
[2] **A:** No.
[3] **Q:** Did anyone ask you to obtain any
[4] materials from Triarch prior to the termination?
[5] **A:** No.
[6] **Q:** Did anyone working for or on behalf
[7] of Medallion make any effort to obtain any of
[8] Triarch's materials before terminating Triarch?
[9] **A:** No. It wasn't anyone else but me.
[10] **Q:** Just you.
[11] Well, there is Mr. Voronchenko and
[12] there was Mr. Wise and there was Filip and there
[13] were a lot of people who were e-mailing and
[14] speaking with Triarch, right?
[15] **A:** Well, Vladimir never communicated
[16] with Corelli directly or never wrote to him
[17] directly.
[18] **Q:** They had some in-person meetings,
[19] right?
[20] **A:** I was always present at those
[21] meetings.
[22] **Q:** Right?
[23] **A:** Always.
[24] **Q:** Right?
[25] **A:** Filip was not aware of, no. And

Page 186

**G. Braverman**

[1]
[2] Wise obviously wouldn't do it without advising
[3] me, or at least I would have been aware of it.
[4] **Q:** I'm handing you — excuse me, yes,
[5] I'm handing you what has been marked as
[6] Plaintiff's Exhibit 16. Do you recognize this
[7] document?
[8] **MR. ISRAEL:** Let me see it. Okay.
[9] **A:** Yes.
[10] **Q:** What is it?
[11] **A:** I guess I'm advising Hayden
[12] regarding the new designer.
[13] **Q:** Were you still working on the
[14] apartment in July of 2009?
[15] **A:** Practically no.
[16] **Q:** Is this — excuse me. Did you
[17] attend a meeting with Mr. Calderin in New York in
[18] or around July of 2009?
[19] **A:** Yes, I did.
[20] **Q:** Is that the meeting that you
[21] mentioned a few minutes ago?
[22] **A:** I mentioned, yes.
[23] **Q:** Other than what you testified about
[24] today in regard to that meeting, do you have any
[25] other recollection of that meeting?

Page 187

**G. Braverman**

[1]
[2] **A:** No.
[3] **Q:** Do you know when Mr. Calderin was
[4] hired?
[5] **A:** I think it was around March, March,
[6] April.
[7] **Q:** And was this — was Mr. Calderin's
[8] July 2009 visit to New York his first visit to
[9] New York to see the apartment?
[10] **A:** That, I wouldn't know, because at
[11] the time I was not already — involved already on
[12] a daily basis.
[13] **Q:** Had any progress on the
[14] apartment —
[15] **MR. MANDEL:** Withdrawn.
[16] **Q:** I think we're going to get into some
[17] territory where there is going to be a lot of
[18] questions that you don't know the answers to.
[19] I'm going to keep asking them because I have to
[20] know one way or the other whether you know.
[21] Do you know if any progress was made
[22] on the renovation of the apartment between the
[23] time Triarch was terminated in January 2009 and
[24] Mr. Calderin's visit in July of 2009?
[25] **A:** I don't know.

Page 188

**G. Braverman**

[1]
[2] **Q:** With all of the hindsight that you
[3] have sitting here today, do you still think that
[4] terminating Triarch was the right decision to
[5] make?
[6] **A:** Absolutely, yes.
[7] **Q:** And do you think that the apartment
[8] was renovated and decorated more quickly because
[9] Triarch was terminated?
[10] **A:** Obviously not, but I don't know — I
[11] don't know the reasons behind why it took so
[12] long.
[13] **Q:** Do you know if Mr. Voronchenko lost
[14] interest in working on the apartment for long
[15] periods of time?
[16] **MR. McKEE:** Objection to form.
[17] **A:** I don't know. I don't know. He
[18] never worked on it. In fact, since I left, we
[19] never discussed this project.
[20] **Q:** Since you stopped working on the
[21] project, you have not discussed the project at
[22] all with Mr. Voronchenko?
[23] **A:** That's right.
[24] **Q:** But you've seen him on a fairly
[25] regular basis since then, correct?

Garry Braverman
Vol. 1, July 11, 2012

Triarch Architectural Services, P.C. v.
Medallion Inc., et al.

Page 189

[1]         **G. Braverman**

[2] **A:** Yes.

[3] **Q:** You've remained good friends since

[4] then, correct?

[5] **A:** Yes.

[6] **Q:** And this work on the apartment

[7] didn't negatively affect your relationship in any

[8] way?

[9] **A:** No, sir.

[10]     (Plaintiff's Exhibit 68, two-page

[11] document dated June 1, 2012, marked for

[12] identification.)

[13] **Q:** Do you know when the Italian

[14] manufacturers began working on manufacturing the

[15] product for the apartment?

[16] **MR. ISRAEL:** Okay.

[17] **Q:** I'm handing you what has been marked

[18] as Plaintiff's Exhibit 68, which is an e-mail

[19] chain, that the top e-mail is an e-mail to my

[20] firm and to Garth Hayden's counsel's firm, and

[21] just beneath that is from a Mr. Dejan, D-E-J-A-N,

[22] to Mr. Calderin, dated August 3, 2009. At the

[23] bottom of the e-mail — let me restate the

[24] question.

[25]     This e-mail seems to indicate that

Page 190

[1]         **G. Braverman**

[2] sometime after August 3, 2009 either Libracon or

[3] Tempora visited New York for the first time to

[4] take measurements of the apartment.

[5]     Do you have any idea as to whether

[6] that visit occurred in August of 2009?

[7] **A:** No. No, I was not involved.

[8] **Q:** Do you know when —

[9] **MR. MANDEL:** Withdrawn.

[10] **Q:** Towards the bottom of the e-mail it

[11] states that they will begin manufacturing when

[12] they return to Italy.

[13]     That doesn't refresh your

[14] recollection in any way as to when the Italian

[15] manufacturer began work on the project, does it?

[16] **A:** No.

[17] **Q:** Am I correct that if I asked you

[18] about correspondence in connection with the

[19] apartment in the second half of 2009 and 2010 and

[20] 2011, if you weren't cc'd on that correspondence

[21] you would have no understanding of that

[22] correspondence?

[23] **A:** No, I wouldn't be able to — I was

[24] not involved. Even — even if I was cc'd, I have

[25] never — I never even read it.

Page 191

[1]         **G. Braverman**

[2] **MR. McKEE:** Can I see 68, please?

[3] **MR. MANDEL:** Of course.

[4]     (Plaintiff's Exhibit 69, document

[5] dated July 1, 2010, marked for

[6] identification.)

[7] **Q:** I've handed you —

[8] **MR. MANDEL:** I gave you a second

[9] copy, Mr. Israel?

[10] **MR. MANDEL:** You did, thank you.

[11] **MR. MANDEL:** Plaintiff's Exhibit 69

[12] is a July 1, 2010 letter from James Rowland

[13] to Mr. Israel.

[14] **Q:** Mr. Braverman, did Triarch ever send

[15] Medallion a cease and desist letter asking

[16] Medallion to cease and desist any use of the

[17] drawings or renderings or its work product on

[18] this project?

[19] **A:** I do not recall that.

[20] **MR. ISRAEL:** I don't think I ever

[21] saw this before.

[22] **Q:** Have you ever seen Plaintiff's

[23] Exhibit 69 before today?

[24] **A:** No.

[25] **Q:** At the bottom, the last sentence of

Page 192

[1]         **G. Braverman**

[2] the second paragraph this letter, it says,

[3] "Triarch has, at no time, waived or otherwise

[4] transferred ownership of the Drawings to

[5] Medallion Inc. or any other party." Do you know

[6] if that statement is true or false?

[7] **MR. ISRAEL:** Objection, calls for a

[8] legal conclusion.

[9] **Q:** On the second page of this letter,

[10] the second paragraph, the first sentence states,

[11] "Accordingly, Triarch demands that Medallion

[12] immediately cease and desist from using the

[13] Triarch Design Documents in any manner."

[14]     Do you know if Medallion ever used

[15] the documents that Triarch gave to it after

[16] Medallion terminated Triarch?

[17] **A:** I don't think so, because it has a

[18] totally different look, totally different design.

[19] **Q:** Do you know one way or the other?

[20] **A:** No.

[21] **Q:** Turning your attention to the first

[22] paragraph of Plaintiff's Exhibit 69, the last

[23] sentence, "Based on information it has obtained

[24] from others, Triarch understands that your

[25] client, Medallion, used and allowed to be used

Triarch Architectural Services, P.C. v.
Medallion Inc., et al.

Garry Braverman
Vol. 1, July 11, 2012

Page 193

**G. Braverman**

[1]
[2] and copied, the Triarch Design Documents without
[3] Triarch's consent." Do you know if that
[4] statement is true or false?
[5]   **A:** I don't know.
[6]   **Q:** Earlier you testified that when you
[7] were sitting down —
[8]   **MR. MANDEL:** Withdrawn.
[9]   **Q:** Earlier you testified that when you
[10] were first discussing the timeline for the
[11] project with Mr. Corelli, you knew the timeline,
[12] the December 31, 2008 timeline was — I believe
[13] the word you used was "tight"; am I getting your
[14] testimony correct in that regard?
[15]   **A:** Yes, I said that, yes.
[16]   **Q:** Is that accurate?
[17]   **A:** Yes.
[18]   **Q:** Would Medallion have found it
[19] acceptable if the project were finished sometime
[20] in 2009, as opposed to December 31, 2008?
[21]   **A:** But Corelli said it's doable.
[22]   **Q:** I'm not asking what Mr. Corelli
[23] said. I'm just asking what Medallion's feeling
[24] was on the subject of 2009.
[25]   **A:** Beginning of 2009 was acceptable

Page 194

**G. Braverman**

[1]
[2] since Victor's tenant was going to take
[3] possession on February 1, 2009.
[4]   **Q:** Who wanted to take possession?
[5]   **A:** It's Victor's tenant.
[6]   **Q:** Who was that?
[7]   **A:** I don't know. His friend of his.
[8] His prospective tenant that Victor mentioned
[9] wanted to take possession as of February 1st.
[10]   **Q:** Okay. And that was a friend of
[11] Mr. Vekselberg's?
[12]   **A:** Correct.
[13]   **Q:** Do you know how you spell his last
[14] name?
[15]   **A:** Whose?
[16]   **Q:** The tenant's name?
[17]   **A:** Tenant.
[18]   **Q:** I apologize, I misheard you.
[19]   **A:** Prospective tenant.
[20]   **Q:** I thought you were naming
[21] Mr. Tenant.
[22]   **A:** Last name is T-E-N-A — tenant.
[23]   **MR. ISRAEL:** That was the last
[24] deposition.
[25]   **Q:** I apologize. So Victor's tenant

Page 195

**G. Braverman**

[1]
[2] wanted to take possession on February 1st?
[3]   **A:** Yes.
[4]   **Q:** And even under the schedule, the
[5] ideal schedule that you articulated earlier, you
[6] knew that the apartment wasn't going to be ready
[7] until sometime in January, correct?
[8]   **A:** Yes.
[9]   **Q:** I'm handing you again what has been
[10] marked as Plaintiff's Exhibit 46. The third
[11] sentence of the letter states, "Triarch was
[12] retained on the express understanding that it
[13] would complete the project, including
[14] construction, on or before December 31, 2008."
[15]   **A:** Mm-hmm.
[16]   **Q:** That statement is inaccurate, right?
[17]   **A:** This statement is very accurate.
[18]   **Q:** I thought you just testified that
[19] you knew from the beginning that construction
[20] wasn't going to be completed until sometime until
[21] January 2009?
[22]   **A:** No, I never said that. I always was
[23] starting in December 31st of 2008 as — as a our
[24] target or wish date, so to speak. Understanding
[25] that the January would take some time for

Page 196

**G. Braverman**

[1]
[2] additional decoration, cleaning, so on.
[3]   **Q:** Who —
[4]   **A:** So in other words, he would always
[5] get this, you know, lead time if anything goes
[6] wrong, because you always have time to correct
[7] it, but our intention was to finish it by
[8] December 31st.
[9]   And once again, Corelli would never
[10] have been hired if he would tell up front that
[11] this is simply impossible. He always said that
[12] it's doable. And based on this promise of
[13] whatever you want to call it, we signed it into
[14] agreement.
[15]   **Q:** But even if —
[16]   **MR. MANDEL:** Withdrawn.
[17]   **Q:** The target was to get all of the
[18] information that the Italian manufacturer needed
[19] to start production was on October 1st?
[20]   **A:** Correct.
[21]   **Q:** And you knew that it was going to
[22] take the Italian manufacturer at least 90 days to
[23] do the manufacturing, correct?
[24]   **A:** No, no, no, including delivery.
[25]   **Q:** Manufacturing and delivery would

Garry Braverman
Vol. 1, July 11, 2012

Triarch Architectural Services, P.C. v.
Medallion Inc., et al.

Page 197

**G. Braverman**

[1]
[2] take 90 days?

[3] **A:** Yes.

[4] **Q:** But then installation would take at

[5] least two weeks after that, right?

[6] **A:** No, at least — yeah, about 10 to 14

[7] days.

[8] **Q:** So even under the ideal timeline

[9] with the October 1st target date, forgetting all

[10] of the information that the Italian manufacturer

[11] needed, it still wasn't going to be done until

[12] January 2009?

[13] **A:** Mid-January, yes.

[14] **Q:** So this statement that there was an

[15] understanding that the construction was going to

[16] be completed on December 31, 2008 is false?

[17] **A:** No, it's not. Construction — we

[18] are not referring to Italians. We're referring

[19] to construction, because when Italian come, they

[20] cover the floors that are done, the ceiling that

[21] is done, they covering all of that, and they just

[22] installing panels.

[23] **Q:** So what was Medallion's

[24] understanding was going to be completed by

[25] December 31, 2008?

Page 198

**G. Braverman**

[1]
[2] **A:** The entire — the entire apartment

[3] with the exception of the Italians are doing,

[4] like doors for the closet in the master bedroom

[5] and the panels for hallway and — and living

[6] room.

[7] **Q:** What would be complete by December

[8] 31, 2008 is the bathrooms and the floors in all

[9] the rooms and the ceilings in all the rooms?

[10] **A:** Correct.

[11] **Q:** But everything else would have to be

[12] done after December 31, 2008, correct?

[13] **A:** Everything else, whatever was done

[14] overseas, right.

[15] **Q:** And then all the furnishings, right?

[16] **A:** Yes.

[17] **Q:** So drapes, all the furniture, all of

[18] that stuff would have done on after December

[19] 31st, correct?

[20] **A:** Correct.

[21] **Q:** All the walls would have to be done

[22] after December 31, 2008 correct?

[23] **A:** Correct.

[24] **Q:** So it is your testimony that the

[25] phrase "complete the project including

Page 199

**G. Braverman**

[1]
[2] construction" doesn't include all of those things

[3] that you just described, that would be done in

[4] January 2009?

[5] **A:** Correct. Correct. This draft was

[6] prepared based on my instructions.

[7] **Q:** You reviewed this draft before it

[8] went out?

[9] **A:** Yes.

[10] **Q:** And you felt it was accurate when it

[11] went out?

[12] **A:** Yes.

[13] **Q:** You didn't think it would be more

[14] accurate to say would complete the project

[15] including construction by sometime in January

[16] 2009?

[17] **A:** No, because I was referring to the

[18] work — you see, Tri — Triarch had nothing to do

[19] with whatever would be done after December 31st,

[20] absolutely nothing; in other words, they would

[21] oversee a construction to the point when it's

[22] done, but they had not to do Italians. Italians

[23] were just — just like — you know, they changed

[24] the door, you would come, you take out the old

[25] door, you put the new one. So that — this is

Page 200

**G. Braverman**

[1]
[2] what they would do.

[3] **Q:** Was Triarch going to be involved in

[4] furnishing the apartment?

[5] **A:** No. We discussed that, but we

[6] never — we never agreed to that.

[7] **Q:** So it was a possibility but it

[8] wasn't part of the 17 percent contract price that

[9] had been agreed upon?

[10] **A:** I believe it is not.

[11] **Q:** Then in this letter, in the next

[12] sentence it states, "Almost five months after the

[13] commencement of the project there is not a single

[14] approved schematic design"; is that true?

[15] **A:** Yes, it is true.

[16] **Q:** So after January 27, 2009, Medallion

[17] had not approved a single schematic design for

[18] the renovation of the apartment?

[19] **A:** Yes.

[20] (Plaintiff's Exhibit 70, document

[21] entitled, "Answer and Counterlcaims",

[22] marked for identification.)

[23] **Q:** I've handed you what has been marked

[24] as Plaintiff's Exhibit 70. It is Medallion's

[25] answer and counterclaims in a state court action

Triarch Architectural Services, P.C. v.
Medallion Inc., et al.

Garry Braverman
Vol. 1, July 11, 2012

Page 201

**G. Braverman**

[1]
[2] with index number 107644/2009.
[3]    Have you ever seen this document
[4] before?
[5]    **A:** Yes.
[6]    **Q:** And when was that?
[7]    **A:** Yesterday.
[8]    **Q:** Had you ever seen it before
[9] yesterday?
[10]    **A:** No.
[11]    **Q:** Was yesterday the first time that
[12] you learned that Mr. Vekselberg had a tenant he
[13] wanted to move into the apartment in February of
[14] 2009?
[15]    **A:** No, I learned this back in 2008.
[16]    **Q:** So you knew that the whole time you
[17] were working on the project?
[18]    **A:** Of course.
[19]    **Q:** And you never asked anyone who that
[20] tenant was —
[21]    **A:** No.
[22]    **Q:** — because it wasn't your business?
[23] Do you know whether Mr. Vekselberg's tenant was
[24] going to pay rent?
[25]    **A:** Yes. He mentioned 30,000 a month.

Page 202

**G. Braverman**

[1]
[2]    **Q:** Who mentioned that?
[3]    **A:** Victor mentioned that the guy is
[4] willing to pay 30,000 a month.
[5]    **Q:** So it wasn't — the tenant wasn't a
[6] friend of Mr. Vekselberg, it was —
[7]    **A:** I believe business associate, but
[8] I'm not sure.
[9]    **Q:** When did Mr. Vekselberg mention that
[10] to you?
[11]    **A:** A few months after — after the
[12] apartment was purchased.
[13]    **Q:** And do you know whether that tenant
[14] was willing to move into that apartment at a
[15] later date?
[16]    **A:** He always ask me is that realistic
[17] to — to have it complete by February 1st, so I
[18] told him based on — based on the promise we got
[19] from — from Triarch it should be done by then.
[20]    **Q:** When did you tell Mr. Vekselberg
[21] that?
[22]    **A:** Around September-October.
[23]    **Q:** Am I correct you testified that
[24] Mr. Vekselberg first mentioned this prospective
[25] tenant at the time the apartment was purchased in

Page 203

**G. Braverman**

[1]
[2] February of 2008?
[3]    **A:** No, probably late spring of 2008.
[4]    **Q:** And at that time did Mr. Vekselberg
[5] ask you what the possible move-in date was?
[6]    **A:** Yes. I told him probably by the end
[7] of the year is — is realistic.
[8]    **Q:** Why did you think that that was
[9] realistic?
[10]    **A:** Based — again, based on my
[11] experience at having seven, eight month — eight,
[12] nine month — nine month should be more than
[13] enough.
[14]    **Q:** In March of 2008, hadn't Mr. Hayden
[15] told you it might take a very long time to do
[16] work on this project?
[17]    **A:** That is precisely why we used the
[18] plan that was already approved, so I knew,
[19] worst-case scenario, that we'll get proved by
[20] June, July.
[21]    **Q:** And did Medallion look for another
[22] tenant to rent the apartment —
[23]    **MR. MANDEL:** Withdrawn.
[24]    **Q:** So what happened with — do you
[25] know —

Page 204

**G. Braverman**

[1]
[2]    **MR. MANDEL:** Withdrawn.
[3]    **Q:** What happened with the initial
[4] tenant, did someone at some point communicate to
[5] him that the apartment was not going to be
[6] available in February 2009?
[7]    **A:** I don't know, I don't know.
[8]    **Q:** Do you know whether Medallion made
[9] any effort to find an alternative tenant to rent
[10] the apartment?
[11]    **A:** I don't know.
[12]    **Q:** Do you know whether the market value
[13] of the apartment changed as a result of the
[14] renovation?
[15]    **A:** I doubt it, no.
[16]    **Q:** You don't know or you doubt?
[17]    **A:** I doubt it.
[18]    **Q:** You doubt it?
[19]    **A:** Yeah.
[20]    **Q:** You think it is probably worth the
[21] same now as it was worth prior to the renovation?
[22]    **A:** I think it's worth less.
[23]    **Q:** Because of market factors unrelated
[24] to the renovation?
[25]    **A:** It was purchased right before

Garry Braverman
Vol. 1, July 11, 2012

Triarch Architectural Services, P.C. v.
Medallion Inc., et al.

Page 205

**G. Braverman**

[1]
[2] the — the crash, right, so I would assume that
[3] it is probably worth — by now it's probably
[4] worth the same as it was purchased for.
[5] **Q:** Do you think the renovation has
[6] increased its value above what it would have had
[7] absent to the renovation?
[8] **A:** I personally don't believe that any
[9] renovation increases the value.
[10] **Q:** Did Medallion disagree with you
[11] about that?
[12] **A:** It is my personal — I never
[13] discussed it.
[14] **Q:** Why did Medallion want to renovate
[15] the apartment at all?
[16] **A:** It was in terrible condition.
[17] **Q:** Could it have been lived in in the
[18] condition that Medallion purchased it in?
[19] **A:** Yes.
[20] **Q:** So it was safe but it wasn't a
[21] pleasant place to live?
[22] **A:** Well, considering the — you know,
[23] the — the — considering that this is a luxury
[24] piece of real estate, you would expect something
[25] else.

Page 206

**G. Braverman**

[1]
[2] I mean that — that was used by a
[3] tenant who used to come once every three years
[4] and stay for weeks, so to him it probably was
[5] acceptable. But it wasn't a luxury — luxury
[6] piece of real estate, no.
[7] **Q:** Turning your attention to page 4,
[8] paragraph 10, of this document, it states
[9] "Defendant advised the plaintiff that it was
[10] critical that its Italian tile maker be furnished
[11] designs for this aspect of the project within 30
[12] days since the manufacturer, delivery and
[13] installation, electrical plumbing, et cetera, of
[14] the tile would require another 90 days."
[15] Is it your understanding that all
[16] the designs and materials that the Italian
[17] manufacturer needed could be produced within a
[18] 30-day period?
[19] **A:** Again, which — which 30-day period?
[20] **Q:** Sure. Was it possible for Triarch?
[21] The Triarch-Medallion contract was signed on
[22] September 5, 2008, and you set the target date to
[23] get all the materials that the Italian
[24] manufacturer needed was October 1st —
[25] **A:** Correct.

Page 207

**G. Braverman**

[1]
[2] **Q:** — so was it possible within that
[3] 30-day period for Triarch to produce all the
[4] materials that the Italian manufacturer is going
[5] to need?
[6] **A:** Once again, as I said before, that
[7] it really — it is like you and I are reading the
[8] same contract. It takes you three seconds to
[9] scroll through a paragraph. It would take me
[10] three minutes or five minutes to scroll through a
[11] paragraph. He's a professional, right, so he
[12] should be able to create renderings, he should
[13] come up with a dozen of renderings within a day
[14] or so. I mean, he's experienced. I saw his
[15] apartment. He's a talented designer. So why
[16] not? I mean, it might be a month, more than
[17] enough, a week should be enough to submit the
[18] initial renderings, and another week for any
[19] changes that the client might want looking at
[20] those renderings, submitting not only one option
[21] but three or four options for every room.
[22] **Q:** Turning your attention to page 6 of
[23] this document, paragraph 28, the last paragraph
[24] on the page I would ask you to read that
[25] paragraph to yourself and just tell me whether

Page 208

**G. Braverman**

[1]
[2] that statement is true, that statement is false
[3] or you don't know whether the statement is true
[4] or false.
[5] **A:** Yes, it's very true.
[6] **Q:** So you know it was true that it was
[7] months before a suitable replacement could be
[8] hired?
[9] **A:** Yes. The fact is that the other
[10] designer didn't really start to work until
[11] sometime in July or August. I was not already
[12] there.
[13] **Q:** When was that other — we're talking
[14] about Mr. Calderin, correct?
[15] **A:** Calderin, yes.
[16] **Q:** When was Mr. Calderin hired?
[17] **A:** I don't know exactly when he was
[18] hired. But I do remember that based on — based
[19] on one of the e-mails that you — when I arranged
[20] a meeting between Garth Hayden and Calderin while
[21] he was in New York, that was what, sometime in
[22] July or August, so this is the gap between
[23] January, February and July, August.
[24] **Q:** Okay. Was there any written
[25] agreement between Medallion or Mr. Vekselberg and

Triarch Architectural Services, P.C. v.
Medallion Inc., et al.

Garry Braverman
Vol. 1, July 11, 2012

Page 209

**G. Braverman**

[1]
[2] the prospective tenant?
[3]   A: I'm not aware of it.
[4]   Q: Have you seen any written documents
[5] whatsoever that refer to this prospective tenant
[6] renting the apartment?
[7]   A: No. But most deals in Russia, I'm
[8] doing some business there, are done on a
[9] handshake. A handshake is by far much safer than
[10] any agreement.
[11]   Q: And other than Mr. Vekselberg
[12] telling you that he had a prospective tenant to
[13] move into the apartment in February of 2009 for
[14] $30,000 per month, other than him telling you
[15] that, do you have any other source of information
[16] regarding that prospective tenancy?
[17]   A: Vladimir mentioned that several
[18] times.
[19]   Q: Mr. Voronchenko mentioned that to
[20] you as well?
[21]   A: Yes. He was constantly talking
[22] about it.
[23]   Q: Did Mr. Voronchenko know the tenant?
[24]   A: I don't — I wouldn't know. I
[25] wouldn't know. They — they're very close,

Page 210

**G. Braverman**

[1]
[2] they're business partners, very close friends.
[3] I'm not that close. I wouldn't know.
[4]   Q: They're early childhood friends; is
[5] that right?
[6]   MR. MANDEL: I withdraw the
[7] question, it doesn't matter.
[8]   A: I don't know history.
[9]   Q: Other than Mr. Vekselberg and
[10] Mr. Voronchenko telling you about this tenant,
[11] did you have any other knowledge of the tenant?
[12]   A: No.
[13]   Q: Did Mr. Voronchenko hear about the
[14] tenant from Mr. Vekselberg?
[15]   A: Most likely.
[16]   Q: Do you know how much —
[17]   MR. MANDEL: Withdrawn.
[18]   Q: How much did Medallion suffer in
[19] damages as a result of the failure to rent this
[20] apartment to the prospective tenant?
[21]   MR. ISRAEL: If you know, you know,
[22] but don't guess.
[23]   A: In terms of numbers?
[24]   Q: Yes.
[25]   A: 30 — 30,000 multiplied

Page 211

**G. Braverman**

[1]
[2] by — effective February 1, 2009 — I don't know
[3] what time, I'm not sure how to figure it out.
[4]   Q: Other than that failure to rent the
[5] apartment to the prospective tenant at the rate
[6] of $30,000 per month, did Triarch cause Medallion
[7] any other damages?
[8]   A: I'm not aware of any other damages.
[9]   Q: I'm handing you what has been marked
[10] as Plaintiff's Exhibit 44. This is the invoices.
[11] I have one copy additional beyond those that I've
[12] already provided to you.
[13]     Do you recognize Plaintiff's Exhibit
[14] 44?
[15]   A: No, I don't. But most likely I saw
[16] it. Yes, it was addressed to me.
[17]   Q: And starting with invoice number 1,
[18] did you object —
[19]   MR. MANDEL: Withdrawn.
[20]   Q: Starting with invoice number 1,
[21] which is the first page of Plaintiff's 44, did
[22] Medallion object to the invoice at any point
[23] after receiving it?
[24]   A: I did.
[25]   Q: And when did you object?

Page 212

**G. Braverman**

[1]
[2]   A: Immediately after receiving it.
[3]   Q: What is the objection?
[4]   A: My design development was 54,000,
[5] what is it based on, I don't remember exactly,
[6] but — phase I is entitled to 15 percent of — of
[7] about 170,000, so in my book, 15 percent of
[8] 170,000 is about 25, but not 54.
[9]   Q: Were there any other objections that
[10] Medallion had to invoice number 1?
[11]   A: There is nothing else.
[12]   Q: Turning your attention to invoice
[13] number 2, did Medallion object to this invoice?
[14]   A: Yes.
[15]   Q: And when did it make that objection?
[16]   A: Immediately after receiving the
[17] invoice.
[18]   Q: And to whom did Medallion object?
[19]   A: Directly to Corelli.
[20]   Q: Did you make the objection?
[21]   A: Yes.
[22]   Q: And was it in writing or over the
[23] phone, if you can recall?
[24]   A: It was over the phone.
[25]   Q: And what were your objection or

Garry Braverman
Vol. 1, July 11, 2012

Triarch Architectural Services, P.C. v.
Medallion Inc., et al.

Page 213

[1]                    **G. Braverman**
[2] objections?
[3]    **A:** At 15 percent of design development, 20
[4] percent of construction documents, which I never
[5] saw, number one; and number two, I was always
[6] referring to the fact that how can you go into
[7] design development if the schematic design is not
[8] approved. Why would you draw — draw something
[9] if you don't know what — what the final product
[10] is.
[11]    Same thing with 20 percent of
[12] construction documents, what construction? We're
[13] not — we're not even remotely close to where we
[14] should be.
[15]    **Q:** Any other objections?
[16]    **A:** There is nothing else.
[17]    **Q:** What about the additional services?
[18]    **A:** In terms of additional services, I
[19] never understood those charges because phase I is
[20] — per our contract is entitled to again 15
[21] percent of certain amount, right, so in addition
[22] to that he's charging for someone to prepare
[23] those renderings, which in my opinion is wrong,
[24] when — when he needs to do some reimbursable
[25] expenses obviously it's natural and

Page 214

[1]                    **G. Braverman**
[2] understandable, but I never understood the
[3] concept of additional services.
[4]    **Q:** Did you object to the additional
[5] services item on invoice 2?
[6]    **A:** Yes, yes.
[7]    **Q:** What did Mr. Corelli say in
[8] response?
[9]    **A:** Truly, I don't know.
[10]    **Q:** And did you object to the billing
[11] for a hundred percent of schematic design?
[12]    **A:** Yes, I did, because at the time the
[13] invoice is dated December 8th, it was not
[14] approved.
[15]    **Q:** As of December 8, 2008, how much did
[16] you think Triarch was entitled to in
[17] compensation?
[18]    **A:** My understanding was that he
[19] received a deposit that was initially agreed
[20] upon. Once the professional received a deposit,
[21] he goes back to drawing board, and he must
[22] present the client with several options for every
[23] one.
[24]    Once this first phase is approved
[25] with what we call schematic design, he's entitled

Page 215

[1]                    **G. Braverman**
[2] to additional 15 percent, which, in our case is
[3] approximately 25,000. So only then would he have
[4] been entitled to additional 25,000.
[5]    Once it's all approved then he is
[6] obviously going to design development phase, and
[7] as he progresses, he can bill monthly.
[8]    Obviously if he — if overall for
[9] this phase he's entitled to, let's say, 20
[10] percent, and it took him, let's say three months
[11] to do it, as he progresses he's entitled to bill
[12] for certain percentage of the complete part of
[13] this phase, this is my understanding.
[14]    **Q:** Was there any limit to the number of
[15] changes or revisions or additional designs that
[16] Medallion could request without incurring
[17] additional fees?
[18]    **A:** No, we never discussed that.
[19]    **Q:** So —
[20]    **A:** I know that was some of his
[21] complaints, that I cannot make anything good
[22] enough for Vladimir. So I tell him why don't you
[23] try submit not one or two renderings, three or
[24] four, there is nothing wrong with that. I mean,
[25] I have experience from this, no one — no one

Page 216

[1]                    **G. Braverman**
[2] would submit one or two renderings for every
[3] room. You want to look at a couple of options
[4] and it's not a big deal, and then decide which
[5] one you like. I like this one, but I would like
[6] to change this and that. We are done. That's
[7] it.
[8]    **Q:** Did Mr. Corelli have any other
[9] complaints about how the project was going?
[10]    **A:** He always has some excuses. What I
[11] do remember is that he would promise something
[12] for next week and next week never happened. What
[13] happened? It will be ready next week and the
[14] following week.
[15]    **Q:** Understood.
[16] Did he have any other complaints or
[17] concerns about how the project was going that he
[18] expressed to you?
[19]    **A:** I'm the one who should have
[20] complaints, not him.
[21]    **Q:** So sitting here today, you can't
[22] recall any other complaints that Mr. Corelli had?
[23]    **A:** No.
[24]    **Q:** Turning your attention to invoice
[25] number 3 did you have — withdrawn — did

Triarch Architectural Services, P.C. v.
Medallion Inc., et al.

Garry Braverman
Vol. 1, July 11, 2012

Page 217

[1]                    **G. Braverman**
[2] Medallion have any objections to this invoice?
[3]    **A:** Yes. And they are based on the
[4] previous invoice. Why would someone do 71
[5] percent of design development if the renderings
[6] are not signed off?
[7]    **Q:** So the same objection —
[8]    **A:** You — you ultimate tool — your
[9] client's ultimate tool is client signoff,
[10] approval, so to speak. Once it's done then you
[11] go into production.
[12]    **Q:** Other than that objection, did you
[13] have any other objections to invoice number 3?
[14]    **A:** Same — same thing as additional
[15] services, which I never understood and
[16] reimbursable expenses are fine.
[17]    **Q:** And did you communicate those
[18] objections to anyone at Triarch?
[19]    **A:** Yes.
[20]    **Q:** Who was that?
[21]    **A:** Steve. I always spoken with Steven,
[22] specifically in regards to bill.
[23]    **Q:** And would that have been shortly
[24] after January 9, 2009?
[25]    **A:** Yes.

Page 218

[1]                    **G. Braverman**
[2]    **Q:** Do you recall that e-mail we looked
[3] at earlier where around January 14, 2009 you told
[4] Mr. Corelli you have not received approval on
[5] payment yet? You're saying that somewhere
[6] between January 9, 2009 and January 14, 2009 you
[7] objected to this invoice and then you sent him
[8] that e-mail that said he's not approved payment
[9] quite yet?
[10]    **MR. ISRAEL:** Objection.
[11]    **A:** Well, I'm not really sure about this
[12] point, but — no, I will — I simply — I don't
[13] remember.
[14]    **Q:** So you don't remember one way or the
[15] other whether you objected to this invoice?
[16]    **A:** I'm under the impression that I was
[17] referring to second payment that was made to him,
[18] I don't remember the date. So once again was
[19] initial payment and then it was another payment,
[20] but I don't remember the date.
[21]    **Q:** So after all of that, I just want to
[22] make sure we're clear on what your testimony is.
[23] Did you object after receiving invoice number 3
[24] to Mr. Corelli?
[25]    **A:** Yes.

Page 219

[1]                    **G. Braverman**
[2]    **Q:** That would have been orally, over
[3] the phone, in the days after January 9th?
[4]    **A:** It was always over the phone.
[5]    **Q:** And turning your attention to
[6] invoice 4, this was sent on February 5, 2009. Am
[7] I correct this was sent —
[8]    **MR. MANDEL:** Withdrawn.
[9]    **Q:** Am I correct that you received
[10] invoice number 4 after Medallion had terminated
[11] Triarch?
[12]    **MR. ISRAEL:** Objection.
[13]    If you know, you know. Don't guess.
[14]    **A:** I don't remember.
[15]    **Q:** Did you object to this invoice after
[16] it was received?
[17]    **A:** I don't think so.
[18]    **Q:** Sitting here today, other than the
[19] objections you've described with respect to the
[20] other invoices, that things were done in the
[21] wrong order and schematic design was not complete
[22] and you didn't understand the additional
[23] services, other than those objections —
[24]    **MR. MANDEL:** Withdrawn. Let me
[25] rephrase that.

Page 220

[1]                    **G. Braverman**
[2]    **Q:** Am I correct that you had those same
[3] objections that you described earlier for the
[4] earlier invoice for this invoice as well?
[5]    **MR. ISRAEL:** Objection.
[6] You can answer.
[7]    **A:** I don't think I had communicated
[8] with him after February.
[9]    **Q:** I'm not asking whether you
[10] communicated with him. I'm asking, sitting here
[11] today, taking a look at this invoice, do you have
[12] any objections to it, and I'm assuming maybe I'm
[13] mistaken, maybe you have the same objection for
[14] invoice 4 as you had for the previously three
[15] invoices; is that correct?
[16]    **A:** Correct.
[17]    **Q:** Other than those invoices — excuse
[18] me, other than those objections, do you have any
[19] other objections to invoice number 4?
[20]    **A:** No.
[21]    **Q:** Turn your attention to invoice
[22] number 1 again. Tell me if you need a moment to
[23] look at invoice 4.
[24]    Turning your attention to invoice
[25] number 1, it says "Project address Voronchenko

Garry Braverman
Vol. 1, July 11, 2012

Triarch Architectural Services, P.C. v.
Medallion Inc., et al.

Page 221

[1] **G. Braverman**
[2] residence." Was it your understanding when you
[3] received invoice number 1 that that apartment
[4] that is at issue in this case was going to be the
[5] Voronchenko residence?
[6] **MR. ISRAEL:** Objection.
[7] You can answer.
[8] **A:** No, it — I don't know why he calls
[9] it Voronchenko residence — well, because
[10] probably he was dealing with Voronchenko.
[11] **Q:** Did Triarch believe that
[12] Mr. Voronchenko was going to move into that
[13] apartment?
[14] **MR. ISRAEL:** When? At this time?
[15] **MR. MANDEL:** Yes.
[16] **Q:** At the time of the September
[17] invoice, number 1.
[18] **A:** No, he had an apartment on Madison
[19] Avenue.
[20] **Q:** At some point in time did you learn
[21] that Mr. Voronchenko was going to move into the
[22] apartment?
[23] **A:** No.
[24] **Q:** Are you aware of whether
[25] Mr. Voronchenko lives in the apartment today?

Page 222

[1] **G. Braverman**
[2] **A:** Yes.
[3] **Q:** Does he live in the apartment today?
[4] **A:** Yes.
[5] **Q:** And when did you become aware that
[6] he had moved into or was going to move into that
[7] apartment?
[8] **A:** About a year ago.
[9] **Q:** So prior to a year ago, you had no
[10] idea that Mr. Voronchenko was going to move into
[11] the apartment; is that correct?
[12] **A:** No.
[13] **Q:** And did Triarch ever say anything to
[14] you that indicated that it believed
[15] Mr. Voronchenko was going to move into the
[16] apartment?
[17] **A:** No.
[18] **Q:** But you didn't object when they
[19] listed the project address as Voronchenko
[20] residence, correct?
[21] **MR. ISRAEL:** Objection.
[22] **A:** Never paid attention.
[23] **MR. ISRAEL:** Do you have a question?
[24] **MR. MANDEL:** Do you need another
[25] moment?

Page 223

[1] **G. Braverman**
[2] **MR. ISRAEL:** If there are no
[3] questions, great.
[4] **Q:** But if you have — if you're ready
[5] for the next document?
[6] **A:** Yes, I am. I was just wondering how
[7] is that 21 plus 30,000 is 40,000. It is very
[8] creative way of giving customer credit.
[9] **Q:** You are correct. I believe we have
[10] indicated in discovery responses that that is a
[11] math error, and we have corrected that to correct
[12] the actual number, which if memory serves, is
[13] somewhere between 50 and 51,000.
[14] **A:** So he is doing manual invoice in
[15] 2009?
[16] **Q:** I don't know how the invoices were
[17] created.
[18] **A:** Okay.
[19] **Q:** Here is what has been marked as
[20] Defendant's Exhibit 30. Have you ever seen this
[21] document before?
[22] **A:** No.
[23] **Q:** Defendant's Exhibit 30 is entitled
[24] "Meeting Notes". You can take your time to
[25] glance through this exhibit, if you would like.

Page 224

[1] **G. Braverman**
[2] Do you know whether the dates listed
[3] on the first page of this document are dates on
[4] which Triarch met with you and/or
[5] Mr. Voronchenko?
[6] **A:** Probably, yes.
[7] **Q:** Other than the dates listed on this
[8] document, were there any other dates on which you
[9] or Mr. Voronchenko met with Triarch?
[10] **A:** I'm not sure. I have to go back,
[11] but it looks just about right.
[12] **Q:** Did you take any notes in your
[13] meeting with Triarch?
[14] **A:** I never do.
[15] **Q:** Did Triarch take notes at those
[16] meetings?
[17] **MR. ISRAEL:** Objection.
[18] **A:** I don't know.
[19] **Q:** Did Mr. Voronchenko take notes at
[20] those meetings?
[21] **A:** Probably. But I'm — again, I don't
[22] remember.
[23] **Q:** And does Medallion have any
[24] document —
[25] **MR. MANDEL:** Withdrawn.

Triarch Architectural Services, P.C. v.
Medallion Inc., et al.

Garry Braverman
Vol. 1, July 11, 2012

Page 225

**G. Braverman**

[1]
[2] **Q:** Does Medallion have any policies
[3] concerning how it maintains its documents?
[4] **A:** No.
[5] **Q:** After this lawsuit was filed, did
[6] Medallion hold on to all of the documents related
[7] to this case?
[8] **MR. ISRAEL:** Objection.
[9] **A:** When you say "all of the documents,"
[10] whatever — whatever documents I had in my
[11] possession, I transferred to —
[12] **MR. ISRAEL:** Me.
[13] **Q:** When did you do that?
[14] **A:** More than a year ago, right?
[15] **Q:** And did anyone ever advise you to
[16] not destroy any documents related to this case?
[17] **A:** No.
[18] **Q:** Did you ever search through all your
[19] e-mails to see all of your e-mails related to
[20] this case?
[21] **A:** I did.
[22] **Q:** Did you find any e-mails?
[23] **A:** Yes, they were all —
[24] **MR. ISRAEL:** Yes, he did, he turned
[25] them over to me and I produced them to you.

Page 226

**G. Braverman**

[1]
[2] **Q:** About how many e-mails did you turn
[3] over to Mr. Israel?
[4] **A:** A dozen, ten, maybe ten.
[5] **Q:** Is it your practice to retain
[6] e-mails?
[7] **A:** Not every — not everything. I
[8] would — I would delete something that is totally
[9] irrelevant or not important, in my opinion, but I
[10] would keep the important ones, yes.
[11] **Q:** And would you put them in a folder
[12] that related to this project?
[13] **A:** Yes.
[14] **Q:** And did you turn over that whole
[15] folder?
[16] **A:** Yes, yeah. I actually printed it
[17] out and then I sent it to — I printed out
[18] whatever.
[19] **MR. MANDEL:** I don't believe we
[20] received those from you.
[21] **MR. ISRAEL:** You definitely, you
[22] definitely have received them.
[23] **THE WITNESS:** I saw them all.
[24] **MR. ISRAEL:** I took out his files.
[25] **MR. MANDEL:** Those were from our

Page 227

**G. Braverman**

[1]
[2] files, for the most part. I don't believe
[3] we have five e-mails from Medallion from
[4] before the 2009 —
[5] **MR. ISRAEL:** Then you miscounted
[6] because I turned over to you everything
[7] that we have. I'll take another look but
[8] if he gave them to me, I turned them over.
[9] **Q:** Do you keep some e-mails in your
[10] inbox outside of a folder or do you put
[11] everything into folders?
[12] **A:** I have broken down by subject, by
[13] folder, yes.
[14] **Q:** So you didn't have any — so some
[15] e-mails you delete, and those e-mails you don't
[16] delete —
[17] **A:** — in the box.
[18] **Q:** — a hundred percent —
[19] **A:** No, no, no. Even before I store in
[20] the separate folder, I'll delete them if I feel
[21] that they're totally irrelevant and not worth
[22] saving.
[23] **Q:** So, today, how many e-mails are in
[24] your in box?
[25] **A:** Maximum, dozen.

Page 228

**G. Braverman**

[1]
[2] **Q:** Other than you turning over
[3] documents —
[4] **MR. MANDEL:** Withdrawn.
[5] **Q:** How many e-mail addresses do you
[6] have?
[7] **A:** Altogether?
[8] **Q:** Yes.
[9] **A:** Over 500.
[10] **Q:** 500 e-mail addresses. And how many
[11] of those e-mail addresses did you use in
[12] connection with this project?
[13] **A:** Four or five.
[14] **Q:** And are your practices with respect
[15] to keeping and organizing e-mails the same with
[16] respect to those four or five e-mail accounts?
[17] **A:** Yes.
[18] **Q:** Do all of your e-mail addresses get
[19] forwarded to a single e-mail account?
[20] **A:** I'm sorry, can you repeat the
[21] question?
[22] **Q:** Sure.
[23] Do those four or five e-mail
[24] addresses that you used in connection with this
[25] case, do they all get forwarded to one e-mail

Garry Braverman
Vol. 1, July 11, 2012

Triarch Architectural Services, P.C. v.
Medallion Inc., et al.

Page 229

**G. Braverman**

[1]
[2] account, or do you access them through different
[3] accounts?
[4]   **A:** No, only through one account.
[5]   **Q:** And other than you providing e-mail
[6] to Mr. Israel, did Medallion make any other
[7] efforts to collect e-mails related to this
[8] project?
[9]   **MR. ISRAEL:** It did, but he probably
[10] doesn't know about it because he's not
[11] working for Medallion now. But I'll
[12] represent to you, on the record, that other
[13] people were involved, at least three other
[14] people marshaled documents including any
[15] e-mails that were available and they were
[16] produced to you.
[17]   **MR. MANDEL:** Which three other
[18] people?
[19]   **MR. ISRAEL:** I'm not going to answer
[20] your questions today, I'll say off the
[21] record, I'll even give you an e-mail
[22] telling you who the people are, but I'm not
[23] going to answer questions on this — on the
[24] record of this deposition.
[25]   **MR. MANDEL:** That is fine. I would

Page 230

**G. Braverman**

[1]
[2] appreciate an e-mail.
[3]   **Q:** Other than your providing e-mails to
[4] Mr. Israel, and am I correct that you don't have
[5] any understanding as to what efforts Medallion
[6] took to collect and produce documents in this
[7] case?
[8]   **A:** No idea. It happened recently, I
[9] believe.
[10]   **Q:** When did Medallion first seek
[11] approval from the building to do the project?
[12]   **A:** I'd say May or June of 2008.
[13]   **Q:** And when did it first obtain
[14] approval?
[15]   **A:** In August.
[16]   **Q:** And after it obtained approval —
[17]   **MR. MANDEL:** Withdrawn.
[18]   **Q:** Am I correct you're referring to
[19] August of 2008?
[20]   **A:** Yes.
[21]   **Q:** And after obtaining approval in
[22] August of 2008, did it have to go back to get any
[23] additional approvals from the building?
[24]   **A:** I don't think so, no.
[25]   **Q:** Would you know if they had to after

Page 231

**G. Braverman**

[1]
[2] you stopped being involved?
[3]   **MR. ISRAEL:** Objection.
[4]   **A:** I wouldn't.
[5]   **Q:** And when did Medallion first seek
[6] approval from the department of buildings to do
[7] the project?
[8]   **A:** Immediately after getting an
[9] approval from the building.
[10]   **Q:** And when did it first receive
[11] approval from the department of buildings?
[12]   **A:** Within few days after it was filed.
[13]   **Q:** And did Medallion make any
[14] additional department of buildings filings after
[15] that initial filing?
[16]   **A:** I don't know.
[17]   **Q:** With respect to the —
[18]   **MR. MANDEL:** Withdrawn.
[19]   **Q:** Earlier you testified about a
[20] company that had done work on another similar
[21] apartment in the same building.
[22]   **A:** Mm-hmm. .
[23]   **Q:** Do you know if the name of that
[24] apartment — do you know if the name of that
[25] professional was Jendretzki?

Page 232

**G. Braverman**

[1]
[2]   **A:** Yes.
[3]   **Q:** And is that J-E-N-D-R-E-T-Z-K-I?
[4]   **A:** That's right.
[5]   **Q:** Other than Mr. Hayden and
[6] Mr. Calderin and Triarch and Filip of Libracon,
[7] who else performed services in connection with
[8] the renovation and decoration of the apartment?
[9]   **A:** You listed them all.
[10]   **MR. McKEE:** Let's take two minutes.
[11]   (Time noted: 4:55 p.m.)
[12]   (A brief recess is taken.)
[13]   (Time noted: 5:03 p.m.)
[14]   **Q:** Other than what you testified to
[15] before —
[16]   **MR. MANDEL:** Withdrawn.
[17]   **Q:** Other than what you've already
[18] testified to here today, did Triarch breach its
[19] obligations under its contract with Medallion in
[20] any way?
[21]   **MR. ISRAEL:** Objection, calls for a
[22] legal conclusion.
[23]   **A:** I cannot judge.
[24]   **Q:** Sure. I just mean you had an
[25] understanding as to what Triarch was supposed to

Triarch Architectural Services, P.C. v.
Medallion Inc., et al.

Garry Braverman
Vol. 1, July 11, 2012

Page 233

[1]                    *G. Braverman*
[2] do under the Triarch-Medallion contract, right?
[3]    **A:** Right, right.
[4]    **Q:** And you testified today about a
[5] whole bunch of ways in which they didn't perform
[6] their obligation under that agreement?
[7]    **A:** Okay.
[8]    **Q:** Other than what you testified to
[9] here today, are there any other ways that Triarch
[10] failed to live up to their obligations that you
[11] haven't testified to?
[12]    **A:** What else is there?
[13]    **Q:** I just want to make sure.
[14] So just so the record is clear, just
[15] what you testified to here today, there is no
[16] other way that Triarch has failed to live up to
[17] its obligations under the agreement?
[18]    **A:** No.
[19]    **Q:** Did Medallion ever copy any of
[20] Triarch's drawings?
[21]    **MR. ISRAEL:** Objection.
[22]    **A:** No.
[23]    **Q:** Did Medallion ever instruct anyone
[24] else to copy Triarch's drawings?
[25]    **A:** Again, I can't speak for Medallion,

Page 234

[1]                    *G. Braverman*
[2] I can, but only for this time frame I was
[3] involved in, the answer is no.
[4]    **Q:** So with respect to the time frame
[5] that you were involved with Medallion, Medallion
[6] did not instruct anyone to copy any of Triarch's
[7] drawings, but you don't know — correct?
[8]    **MR. MANDEL:** Withdrawn. Let me
[9] start again. Withdrawn.
[10]    **Q:** For the time period you were
[11] involved, Medallion did not instruct anyone else
[12] to copy Triarch's drawing, correct?
[13]    **A:** Correct.
[14]    **Q:** And for the period of time you were
[15] not involved, you don't know whether Medallion
[16] instructed anyone to copy Triarch's drawings?
[17]    **A:** I don't.
[18]    **Q:** Are you aware of whether work on the
[19] apartment —
[20]    **MR. MANDEL:** Withdrawn.
[21]    **Q:** Are you aware of whether work on the
[22] renovation project ceased at any point in time?
[23]    **A:** No, I'm not.
[24]    **Q:** Do you know who did the construction
[25] on the apartment?

Page 235

[1]                    *G. Braverman*
[2]    **A:** No.
[3]    **Q:** Do you know who did the expediting
[4] for approval at the department of buildings?
[5]    **A:** I don't know what expediting is.
[6]    **Q:** Do you know whether any engineers
[7] did any work in the apartment?
[8]    **A:** I don't.
[9]    **Q:** Does Medallion have any disputes
[10] with anyone else who provided goods or services
[11] in connection with this project?
[12]    **MR. ISRAEL:** Don't speculate.
[13]    **A:** No.
[14]    **Q:** Does Medallion —
[15]    **MR. MANDEL:** Withdrawn.
[16]    **Q:** Has Medallion failed to pay any
[17] amounts that it was invoiced for in connection
[18] with the project, other than the Triarch
[19] invoices?
[20]    **A:** No.
[21]    **Q:** And do you know if that is true with
[22] respect to invoices received after you stopped
[23] working for Medallion?
[24]    **A:** No.
[25]    **Q:** Okay. I'm going to be asking some

Page 236

[1]                    *G. Braverman*
[2] general questions.
[3]    As many times as you've made it
[4] clear here today that there are periods of time
[5] you know and periods of time you don't know, it
[6] is very important that your answers are clear
[7] with respect to whether you know or don't know
[8] for various periods of time.
[9]    Triarch provided Medallion with
[10] certain renderings, correct?
[11]    **A:** Yes.
[12]    **Q:** And Triarch provided Medallion with
[13] certain drawings, correct?
[14]    **A:** I never saw any drawings.
[15]    **Q:** You never saw any drawings?
[16]    **A:** No.
[17]    **Q:** Okay. I'm handing you what has
[18] previously been marked as Defendant's Exhibit 7.
[19] Have you ever seen this document before?
[20]    **A:** No.
[21]    **Q:** Do you know if this document was
[22] ever provided to Medallion?
[23]    **A:** They were not.
[24]    **Q:** You're certain about that?
[25]    **A:** I never saw it.

Garry Braverman
Vol. 1, July 11, 2012

Triarch Architectural Services, P.C. v.
Medallion Inc., et al.

Page 237

**G. Braverman**

[1]

[2] **Q:** Do you know if these documents were

[3] ever provided to anyone that was working for

[4] Medallion?

[5] **A:** You want to know my opinion?

[6] **Q:** I want to know — I don't think

[7] these are really opinion questions. I think

[8] either you know whether they were turned over or

[9] you don't know.

[10] **A:** I don't know.

[11] **Q:** Let's start with your opinion. Do

[12] you have an opinion as to whether these documents

[13] were ever provided to anyone at Medallion?

[14] **A:** I think they were done after

[15] termination.

[16] **Q:** And why do you think that?

[17] **A:** Otherwise I would have seen them.

[18] **Q:** Do you see that these documents are

[19] dated December 23, 2008? You see that it says

[20] December 23, 2008 on there?

[21] **A:** I do, I do.

[22] **Q:** Do you have any understanding as to

[23] whether they were actually created on or about

[24] December 23, 2008?

[25] **MR. ISRAEL:** Other than what he just

Page 238

**G. Braverman**

[1]

[2] said, right, because he has an

[3] understanding of that.

[4] **MR. MANDEL:** I don't want to modify

[5] the question in any way.

[6] **MR. McKEE:** You should read it back,

[7] then.

[8] **MR. MANDEL:** Yes. Why don't you

[9] read it back.

[10] **A:** Why would you do the drawings if

[11] none of your designs ever were approved?

[12] (The record is read.)

[13] **A:** Anyhow, I never saw it.

[14] **Q:** And do you have any understanding as

[15] to when they were created?

[16] **A:** Do I have any understanding?

[17] **Q:** Yes.

[18] **MR. McKEE:** Do you know when —

[19] **A:** Are you referring to my book or —

[20] **Q:** I'm referring to —

[21] **A:** — my ability to read this date?

[22] **Q:** I understand. I understand that you

[23] can read the date, and I didn't mean to insult

[24] you in any way.

[25] All I'm asking is, you know —

Page 239

**G. Braverman**

[1]

[2] forgetting what this says on the lower right-hand

[3] corner, do you have any understanding as to when

[4] these documents were created? By "these

[5] documents" I'm referring to Defendant's Exhibit

[6] 7.

[7] **MR. ISRAEL:** Can I take a shot?

[8] He wants to know if you have an

[9] understanding as to when these documents

[10] that you never saw before were created by

[11] somebody else outside of your presence; do

[12] you have an understanding of when that

[13] happened?

[14] **A:** No.

[15] **Q:** Okay. Did anyone incorporate any

[16] aspects —

[17] **MR. MANDEL:** Withdrawn.

[18] **Q:** Did any of the various professionals

[19] working for Medallion incorporate any aspects of

[20] Triarch's renderings in their designs or

[21] drawings?

[22] **MR. ISRAEL:** Objection.

[23] **A:** I wouldn't know.

[24] **Q:** Was anyone —

[25] **MR. MANDEL:** Withdrawn.

Page 240

**G. Braverman**

[1]

[2] **Q:** Were any of the professionals who

[3] were working for Medallion, did they incorporate

[4] any aspects of Triarch's drawings in any of the

[5] professional designs or drawings?

[6] **MR. ISRAEL:** Objection.

[7] **A:** I wouldn't know.

[8] **Q:** And were any aspects of Triarch's

[9] designs incorporated into the apartment as it was

[10] built?

[11] **A:** I don't know.

[12] **Q:** Did Garth Hayden copy any of

[13] Triarch's drawings?

[14] **MR. McKEE:** Objection.

[15] **MR. ISRAEL:** Objection. Calls for

[16] speculation.

[17] **A:** No.

[18] **Q:** And how do you know that?

[19] **A:** Let me get something straight. How

[20] would Garth copy something that was already

[21] approved, that was created by him and approved?

[22] Copy what?

[23] **Q:** So —

[24] **A:** Triarch was not hired as an

[25] architect, but as a designer. All of these

Triarch Architectural Services, P.C. v.
Medallion Inc., et al.

Garry Braverman
Vol. 1, July 11, 2012

Page 241

**G. Braverman**

[1]
[2] drawings done by Garth, and approved by Garth.
[3] **Q:** So you're referring to Defendant's
[4] Exhibit 7. You're saying Defendant's Exhibit 7
[5] was done by Mr. Hayden?
[6] **MR. ISRAEL:** Objection. First of
[7] all, you're just going through what he's
[8] never saw before and he's pointing to the
[9] top of the document. So it's clear, he's
[10] not referring to this document in any
[11] detail because we're all in the room and we
[12] can all observe that.
[13] **Q:** I definitely don't want to put any
[14] words in your mouth. I'm just trying to
[15] understand what it is you just said.
[16] Is it your testimony that all of
[17] Triarch designs were, in fact, copied from
[18] Mr. Hayden?
[19] **MR. ISRAEL:** Objection.
[20] **MR. McKEE:** Objection.
[21] **A:** No, it is not what I said.
[22] **Q:** So —
[23] **A:** What I said is that why would
[24] Mr. Hayden steal anything from these people if
[25] he's the one who initially created the floor plan

Page 242

**G. Braverman**

[1]
[2] and had it approved.
[3] **Q:** Did Triarch present any original
[4] designs to Medallion at any point in time?
[5] **A:** Original designs, meaning
[6] renderings?
[7] **Q:** Yes, whether the designs were
[8] represented as renderings or drawings, I'm trying
[9] not to get bogged down on that issue. A design
[10] you can write it down on paper one way or a
[11] different way, you can memorialize it on paper a
[12] number of different ways. My question is: Did
[13] Triarch, while it was working for Medallion,
[14] create any original designs whatsoever?
[15] **A:** No.
[16] **Q:** Were all of its designs copies —
[17] **MR. MANDEL:** Withdrawn.
[18] **Q:** Were all of its designs copied from
[19] somewhere else?
[20] **MR. ISRAEL:** Objection. He said he
[21] didn't create designs. What are you
[22] talking about?
[23] Go ahead. Sorry.
[24] **Q:** Did Triarch copy all of its designs
[25] from someone else?

Page 243

**G. Braverman**

[1]
[2] **MR. ISRAEL:** Objection.
[3] **MR. McKEE:** Objection.
[4] **A:** Well, they used someone else's
[5] ideas, yes.
[6] **Q:** Whose ideas were those?
[7] **MR. ISRAEL:** Objection.
[8] **A:** Initially, they were presented with
[9] some ideas that got created in Moscow by Filip.
[10] **MR. MANDEL:** Can we go off the
[11] record for a second.
[12] (Discussion held off the record.)
[13] **Q:** I'm showing you what has been marked
[14] as Plaintiff's Exhibit Number 10. Do you
[15] recognize that document?
[16] **A:** No. May I look?
[17] **Q:** Yes. Please flip through it.
[18] **A:** Yes, I remember seeing it. Yes.
[19] **Q:** And when you said that — and I
[20] don't remember your exact words, but a moment ago
[21] you referred to drawings that were provided by
[22] Filip. Were these — excuse me, you may have
[23] been referring to renderings and not drawings?
[24] **A:** Renderings.
[25] **Q:** Are these the renderings that you're

Page 244

**G. Braverman**

[1]
[2] referring to?
[3] **A:** Yes.
[4] **Q:** Were these provided to Triarch?
[5] **A:** Yes.
[6] **Q:** At what time were they provided to
[7] Triarch?
[8] **A:** Definitely before they started to
[9] work, definitely before they got involved.
[10] **Q:** Right now you're referring to the
[11] third page of Plaintiff's Exhibit 10. Is that a
[12] rendering of the foyer?
[13] **A:** Yes.
[14] **Q:** Is it your testimony that
[15] plaintiff's —
[16] **MR. MANDEL:** Withdrawn.
[17] **Q:** Is it your testimony that Triarch's
[18] rendering of the foyer copied page 3 of Exhibit
[19] 10 here?
[20] **A:** No. What I said, they were based on
[21] this one, and this was given to them as their —
[22] something that we don't want.
[23] **Q:** Sorry. This was based on what?
[24] **A:** This was given to them as an example
[25] of what we don't want.

Garry Braverman
Vol. 1, July 11, 2012

Triarch Architectural Services, P.C. v.
Medallion Inc., et al.

Page 245

**G. Braverman**

[1]
[2] **Q:** When you say —
[3] **MR. McKEE:** What do you want, the
[4] presentation book?
[5] **MR. MANDEL:** Yes.
[6] **Q:** When you say this was given to them,
[7] this was given to Triarch, are you referring to
[8] all of Plaintiff's Exhibit 10 or just certain
[9] pages of Plaintiff's Exhibit 10?
[10] **A:** All of it.
[11] **Q:** In addition to showing you
[12] Plaintiff's Exhibit 10 I'm showing you
[13] Plaintiff's Exhibit 4. And both of these
[14] exhibits show renderings of the foyer?
[15] **A:** Mm-hmm.
[16] **Q:** Is it your testimony that Triarch's
[17] renderings of the foyer in Defendant's Exhibit 4
[18] are based on the renderings of the foyer in
[19] Defendant's Exhibit 10?
[20] **A:** Conceptually, yes, and this is an
[21] opinion.
[22] **Q:** And can you describe to me how
[23] conceptually Triarch's rendering is based on
[24] Filip's rendering?
[25] **A:** All the same colors and the

Page 246

**G. Braverman**

[1]
[2] combination of colors, the same concept of using
[3] wood and — and — and suede. I would say that
[4] it is more refined than this one, but
[5] conceptually, conceptually, it's wood and
[6] using — it's the same materials of a different
[7] color, a different combination, but conceptually
[8] it is not entirely — this was giving them as an
[9] example of bad taste. This is what we don't want
[10] to see even close.
[11]    What I'm saying is — I'm not saying
[12] it's the same, of course, this is much more
[13] refined. But conceptually it's the same
[14] approach. The wood, the suede, even the colors.
[15] Yes, you have different shades but the colors are
[16] also the same. This is what I'm referring to.
[17] **Q:** Is it your understanding that
[18] Filip's rendering these panels here on the very
[19] edge, that those are suede panels?
[20] **A:** Yes.
[21] **Q:** Can you tell that from the rendering
[22] or have you worked on the project or both?
[23] **A:** As far as I remember, yes. I don't
[24] see it, I don't see it in more than five years.
[25] **Q:** I understand.

Page 247

**G. Braverman**

[1]
[2] Did Mr. Voronchenko request that
[3] palisander wood be used —
[4] **A:** Yes.
[5] **Q:** — in your response —
[6] **A:** Yes, yes, yes.
[7] **Q:** Is it possible that the use of wood
[8] in both sets of renderings is because
[9] Mr. Voronchenko asked for it?
[10] **A:** Are you referring to similarity?
[11] **Q:** You pointed to — one of the
[12] similarities you pointed to is that you both used
[13] similar wood, I believe, and I'm just asking
[14] whether that necessarily means that Triarch's use
[15] of wood was based on Filip's use of wood; or is
[16] it that Mr. Voronchenko asked for wood?
[17] **A:** No, using wood is very natural. But
[18] in combination, in combination of other
[19] materials, it looks like very similar to me, it's
[20] combination of wood and suede.
[21] **Q:** Am I correct that Filip only did
[22] renderings of the foyer and the living room?
[23] **A:** Yes.
[24] **Q:** And just comparing Triarch's
[25] renderings from the living room in Defendant's

Page 248

**G. Braverman**

[1]
[2] Exhibit 4 with Filip's rendering of the living
[3] room in Plaintiff's Exhibit 10, is it also your
[4] testimony that Triarch's renderings of this room
[5] were based on Filip's renderings of this room?
[6] **A:** Again, conceptually, yes.
[7] **Q:** Did Triarch supply any original
[8] thinking in preparing its renderings?
[9] **MR. ISRAEL:** Objection.
[10] **A:** Can you repeat the question?
[11] **Q:** Sure. Do Triarch's renderings
[12] include any originality whatsoever?
[13] **MR. ISRAEL:** Objection.
[14] **A:** Compared to this, or overall?
[15] **Q:** Overall. Just did —
[16] **A:** It's a question of taste, you either
[17] like it or not.
[18] **Q:** That would be whether it's good or
[19] not, I think. I'm asking whether Triarch used
[20] any creativity or any original thought whatsoever
[21] in preparing its renderings?
[22] **A:** You want to know my opinion?
[23] **Q:** Yes.
[24] **A:** They — they got this ideas and they
[25] took — they took it to the next level, in my

Triarch Architectural Services, P.C. v.
Medallion Inc., et al.

Garry Braverman
Vol. 1, July 11, 2012

Page 249

[1]                     *G. Braverman*
[2] opinion.
[3]     **Q:** And by taking it to the next level,
[4] did they use any creativity or originality?
[5]     **A:** Some.
[6]     **Q:** Is that true with all of the rooms,
[7] or just the living room?
[8]     **A:** Well, there is only living room and
[9] hall — hallway in this renderings.
[10]     **Q:** In Filip's renderings?
[11]     **A:** Yes.
[12]     **Q:** And did Triarch use any originality
[13] in the renderings of the foyer?
[14]     **MR. ISRAEL:** Objection.
[15]     **A:** Some.
[16]     **Q:** The other renderings and the
[17] other —
[18]     **MR. MANDEL:** Withdrawn.
[19]     **Q:** Am I correct that Filip didn't do
[20] any renderings of the library, correct?
[21]     **A:** I believe he did not, no.
[22]     **Q:** So Triarch could not have based its
[23] rendering of the library on Filip's renderings of
[24] the library, correct?
[25]     **A:** Correct.

Page 250

[1]                     *G. Braverman*
[2]     **Q:** And the same is true of the bedroom,
[3] the master bedroom?
[4]     **MR. ISRAEL:** Objection.
[5]     **A:** Excuse me, I take it back, this is
[6] the library.
[7]     **Q:** So you're pointing to a page —
[8]     **A:** But it is different, it's different,
[9] yes.
[10]     **Q:** So —
[11]     **MR. McKEE:** Let's identify the
[12] exhibit.
[13]     **MR. MANDEL:** Yes. So the record is
[14] clear, Mr. Braverman is referring to
[15] Plaintiff's Exhibit 10, to a page that is
[16] the second to last page in that exhibit,
[17] which is a rendering of the living room.
[18] And there is a large opening or doorway in
[19] the living room that looks into the
[20] library.
[21]     **Q:** Is that correct?
[22]     **A:** Correct.
[23]     **Q:** And that rendering displays portions
[24] of the library?
[25]     **A:** Yes.

Page 251

[1]                     *G. Braverman*
[2]     **Q:** Was Triarch's rendering of the
[3] library based in any way on Filip's rendering of
[4] the library?
[5]     **A:** No.
[6]     **Q:** Did Triarch base its designs on
[7] anything other than Filip's renderings?
[8]     **MR. ISRAEL:** Objection. Calls for
[9] speculation.
[10]     **A:** Once again, I didn't pay much
[11] attention to this since it was Vladimir's
[12] department.
[13]     **Q:** So you don't know one way or the
[14] other?
[15]     **A:** I don't.
[16]     **Q:** Do you have any knowledge as to
[17] whether Mr. Calderin copied any of Triarch's
[18] designs?
[19]     **A:** I don't.
[20]     **Q:** Do you have any knowledge as to
[21] whether Filip copied any of Triarch's designs?
[22]     **A:** I don't.
[23]     **Q:** Do you have any knowledge of whether
[24] Libracon copied any of Triarch's designs?
[25]     **A:** Filip is Libracon.

Page 252

[1]                     *G. Braverman*
[2]     **Q:** So it's the same answer? Is that a
[3] yes?
[4]     **A:** Yes. Yes.
[5]     **Q:** Did Medallion ever show any of the
[6] designs Triarch provided to anyone other than
[7] Medallion?
[8]     **MR. ISRAEL:** Objection.
[9]     **A:** I don't know.
[10]     **Q:** Am I correct that Mr. Voronchenko
[11] closely supervised the design aspects of the
[12] project?
[13]     **A:** Yes.
[14]     **Q:** Would it have been possible for
[15] Mr. Calderin to copy any of Triarch's designs
[16] without Mr. Voronchenko instructing him to do so?
[17]     **MR. McKEE:** Objection.
[18]     **MR. ISRAEL:** Objection, calls for
[19] speculation.
[20]     **A:** I don't know.
[21]     **Q:** Would it have been possible for
[22] Mr. Hayden to copy any of Triarch's drawings
[23] without Mr. Voronchenko instructing him to do so?
[24]     **MR. McKEE:** Objection.
[25]     **MR. ISRAEL:** Objection, calls for

Garry Braverman
Vol. 1, July 11, 2012

Triarch Architectural Services, P.C. v.
Medallion Inc., et al.

Page 253

[1]　　　　　　　　G. Braverman
[2] speculation.
[3]　**A:** I don't know.
[4]　**MR. MANDEL:** Let's take a
[5] five-minute break.
[6]　　(Time noted: 5:29 p.m.)
[7]　　(A brief recess is taken.)
[8]　　(Time noted: 5:31 p.m.)
[9]　　(Plaintiff's Exhibit 71, two-page
[10] document dated Wednesday November 5, 2008,
[11] marked for identification.)
[12]　**Q:** Mr. Voronchenko (sic), do you
[13] recognize Plaintiff's Exhibit 71?
[14]　**A:** I don't have 71.
[15]　**Q:** I'm handing you what has been marked
[16] as Plaintiff's Exhibit 71 — actually, for the
[17] record, that is an e-mail chain, the top e-mail
[18] of which is from Mr. Corelli to you dated
[19] November 5, 2008.
[20]　Do you recognize this document?
[21]　**MR. McKEE:** Excuse me.
[22]　**A:** Yes.
[23]　**Q:** Am I correct that this is an e-mail
[24] chain concerning an invoice that you received in
[25] November 2008?

Page 254

[1]　　　　　　　　G. Braverman
[2]　**A:** Yes. What is the question?
[3]　**Q:** Am I correct — I'm also handing you
[4] what has been previously marked, that you
[5] reviewed, as Plaintiff's Exhibit 44.
[6]　**A:** Mm-hmm.
[7]　**Q:** Am I correct that this e-mail chain
[8] relates to Triarch invoice number 1 on
[9] Plaintiff's Exhibit 44?
[10]　**A:** No.
[11]　**Q:** Which —
[12]　**A:** Well, yes, yes, yes.
[13]　**Q:** And in the e-mail chain that is
[14] contained on Plaintiff's Exhibit 71, you have an
[15] objection to invoice number 1 and Mr. Corelli
[16] responds to your objection with an explanation.
[17]　Did Mr. Corelli's explanation
[18] resolve your concern with respect to invoice
[19] number 1?
[20]　**A:** No, it did not.
[21]　**Q:** No, the explanation did not resolve
[22] the concern?
[23]　**A:** No.
[24]　**Q:** Why not?
[25]　**A:** Because, as I explained to him at

Page 255

[1]　　　　　　　　G. Braverman
[2] the meeting on the same day or the following day,
[3] that he has no business to work on anything else
[4] but phase I.
[5]　**Q:** And did you explain that to
[6] Mr. Corelli?
[7]　**A:** I'm sure I did.
[8]　**Q:** Now, the e-mail on Plaintiff's
[9] Exhibit 71 also complains about the invoice being
[10] calculated on a budget of approximately $2.1
[11] million; am I correct about that?
[12]　**A:** No. What I'm referring to, that
[13] based on the number that he billed, he's
[14] referring to the budget of 2.5 million — 2.1.
[15]　**Q:** Right. But am I correct that he
[16] wasn't — that Triarch wasn't calculating invoice
[17] 1 on the basis of an approximately $2.1 million
[18] budget, he was using an $800,000 budget; is that
[19] correct?
[20]　**A:** Yes.
[21]　**Q:** But even with —
[22]　**MR. MANDEL:** Withdrawn.
[23]　**Q:** Am I correct that Mr. Corelli's
[24] e-mail resolves your concern about the budget
[25] upon which Triarch was basing its calculation?

Page 256

[1]　　　　　　　　G. Braverman
[2]　**MR. ISRAEL:** Objection.
[3]　**Q:** Is that a yes?
[4]　**A:** That he clarified the budget?
[5]　**Q:** Yes.
[6]　**A:** Yes.
[7]　**Q:** You still had other objections to
[8] the invoice that he did not clarify, correct?
[9]　**A:** Yes, yes.
[10]　**Q:** Am I correct that you never saw any
[11] of Mr. Calderin's design for the apartment?
[12]　**A:** No.
[13]　**Q:** And you never saw any of his
[14] drawings?
[15]　**A:** No.
[16]　**Q:** And you never saw any of his
[17] renderings?
[18]　**A:** No.
[19]　**Q:** I am handing you what has been
[20] marked as Plaintiff's Exhibit 54. Do you
[21] recognize this document?
[22]　**A:** No.
[23]　**Q:** Have you ever seen this document
[24] before?
[25]　**A:** I don't think so.

Page 257

[1]                          **G. Braverman**
[2]     **Q:** This document is dated February 14,
[3] 2009, correct?
[4]     **A:** Yes.
[5]     **Q:** Do you know if this document is a
[6] set of drawings that was prepared by Libracon?
[7]     **MR. ISRAEL:** Don't guess; if you
[8] know, you know.
[9]     **A:** I do not.
[10]     **Q:** Do you know if anyone instructed
[11] Libracon —
[12]     **MR. MANDEL:** Withdrawn.
[13]     **Q:** Am I correct that February 14, 2009
[14] is shortly after Medallion terminated Triarch?
[15]     **MR. ISRAEL:** Objection.
[16]     **A:** Do I know for a fact?
[17]     **Q:** Setting aside the document for a
[18] second, am I correct that Medallion terminated
[19] Triarch at the end of January 2009?
[20]     **A:** No, I believe the — it is dated
[21] sometime in February — oh, okay, end of January.
[22]     **Q:** And am I correct that February 14,
[23] 2009 is after Triarch was terminated?
[24]     **MR. ISRAEL:** Objection. You want to
[25] know whether the month of February comes

Page 258

[1]                          **G. Braverman**
[2] after the month of January; is that your
[3] question?
[4]     **MR. MANDEL:** Yes, yes, more or less.
[5]     **MR. ISRAEL:** He wants to know
[6] whether the month of February comes after
[7] the month of January; can you answer that
[8] question?
[9]     **A:** Yes, I think so.
[10]     **Q:** Do you know if after Triarch was
[11] terminated —
[12]     **MR. MANDEL:** Withdrawn.
[13]     **Q:** Do you know if after Triarch was
[14] terminated, Libracon copied any of Triarch's
[15] drawings?
[16]     **MR. ISRAEL:** Objection. Calls for
[17] speculation.
[18]     **A:** I don't know.
[19]     **MR. ISRAEL:** Do you know?
[20]     **Q:** Do you know whether Plaintiff's
[21] Exhibit 54 was copied from any of Triarch's
[22] drawings?
[23]     **MR. ISRAEL:** Objection.
[24]     **A:** No, I don't.
[25]     **Q:** If I showed you other drawings from

Page 259

[1]                          **G. Braverman**
[2] Libracon from that same period and asked you the
[3] same questions, am I correct that your answers
[4] would be the same?
[5]     **A:** Yes.
[6]     **Q:** If I showed you other drawings from
[7] Garth Hayden for the period after Triarch was
[8] terminated, am I correct that you would have no
[9] way of knowing whether Mr. Hayden copied any of
[10] Triarch's drawings?
[11]     **A:** I wouldn't know, I never saw them.
[12]     **Q:** And you wouldn't know whether he
[13] copied them one way or the other?
[14]     **A:** No.
[15]     **Q:** I am showing you what has been
[16] marked as Plaintiff's Exhibit 53. Do you
[17] recognize this document?
[18]     **A:** No, no.
[19]     **Q:** Have you ever seen this document
[20] before?
[21]     **A:** No. I don't think so, no.
[22]     **Q:** Am I correct that you never saw any
[23] drawings or designs prepared by the Italian
[24] manufacturer?
[25]     **A:** No, I never saw.

Page 260

[1]                          **G. Braverman**
[2]     **Q:** I am handing you what has been
[3] marked as Plaintiff's Exhibit 22. Do you
[4] recognize this document?
[5]     **A:** No. Never saw it.
[6]     **Q:** Earlier you testified that you were
[7] deposed in two separate cases, have you given
[8] testimony in any other cases?
[9]     **A:** No.
[10]     **Q:** And other than the two cases you
[11] testified you were involved in as the plaintiff,
[12] have you ever been involved in any other
[13] litigation?
[14]     **A:** No.
[15]     **Q:** And other than the degree you
[16] described, from the — was it the Oil and Gas
[17] Institute In Ukraine, have you received any other
[18] higher education or postgraduate degrees?
[19]     **A:** No.
[20]     **Q:** And other than what you've testified
[21] to here today, have you ever had any involvement
[22] in the architecture or design business?
[23]     **A:** No.
[24]     **Q:** Have you had any involvement in the
[25] construction business, other than what you've

Garry Braverman
Vol. 1, July 11, 2012

Triarch Architectural Services, P.C. v.
Medallion Inc., et al.

Page 261

**G. Braverman**

[1]
[2] testified to here today?
[3] **A:** No.
[4] **Q:** Do you hold any professional
[5] licenses?
[6] **A:** No.
[7] **Q:** Have you ever held any professional
[8] licenses?
[9] **A:** No.
[10] **Q:** Were you ever an engineer?
[11] **A:** Yes.
[12] **Q:** Were you licensed as an engineer?
[13] **A:** Yes.
[14] **Q:** Where was that?
[15] **A:** In the Soviet Union.
[16] **Q:** Was that before you came to the
[17] United States?
[18] **A:** Yes.
[19] **Q:** Were you ever licensed in the United
[20] States?
[21] **A:** No.
[22] **Q:** Were you ever disciplined in any
[23] way?
[24] **A:** No.
[25] **Q:** Have you ever been convicted of a

Page 262

**G. Braverman**

[1]
[2] crime?
[3] **A:** No.
[4] **Q:** You've never been convicted of a
[5] crime?
[6] **A:** Yes.
[7] **Q:** When was that?
[8] **A:** In 1999.
[9] DIR Q. And what was the crime?
[10] **MR. ISRAEL:** Objection.
[11] Does the crime have to do in some
[12] way with your honesty, your predilection to
[13] tell the truth?
[14] **THE WITNESS:** No.
[15] **MR. ISRAEL:** Then you don't have to
[16] answer the question.
[17] DIR Q. Were you convicted of tax fraud?
[18] **THE WITNESS:** Do I have to answer
[19] that?
[20] **MR. ISRAEL:** No, you don't have to
[21] answer the question.
[22] **MR. MANDEL:** Okay. Fraud is
[23] admissible, as you know.
[24] **MR. ISRAEL:** I just asked if
[25] he — if he in any way when he was

Page 263

**G. Braverman**

[1]
[2] convicted of anything to do with his
[3] ability to tell the truth, if it bears upon
[4] his ability to tell the truth, and he
[5] answered the question that it does not.
[6] Okay.
[7] **MR. MANDEL:** No, that is not okay.
[8] **MR. ISRAEL:** Then take it to the
[9] judge.
[10] **MR. MANDEL:** Okay.
[11] DIR Q. Were you convicted of conspiring to
[12] defraud the United States?
[13] **THE WITNESS:** Do I have to answer
[14] that?
[15] **MR. ISRAEL:** No.
[16] DIR Q. Okay. Did you serve any prison time
[17] as a result of that conviction?
[18] **THE WITNESS:** Do I have to answer
[19] that?
[20] **MR. ISRAEL:** No.
[21] DIR Q. Did you plead guilty to conspiring
[22] to defraud the United States?
[23] **MR. ISRAEL:** You don't have to
[24] answer that.
[25] DIR Q. What was the nature of the

Page 264

**G. Braverman**

[1]
[2] conspiracy?
[3] **MR. ISRAEL:** You don't have to
[4] answer that.
[5] DIR Q. How much money did you defraud the
[6] United States out of?
[7] **MR. ISRAEL:** You don't have to
[8] answer that.
[9] **Q:** Did you conspire with anyone else
[10] when you defrauded the United States?
[11] **MR. ISRAEL:** All right. Let's go.
[12] Are you done? I'm going to tell you, he's
[13] not going to answer those questions. Do
[14] you have any questions beyond those?
[15] **MR. MANDEL:** Let me just make my
[16] record. I have a series of more questions
[17] about this criminal conviction —
[18] **MR. ISRAEL:** Okay.
[19] **MR. MANDEL:** — which I regret, but
[20] I have to ask them.
[21] **Q:** Am I correct in understanding,
[22] Mr. Braverman, that you're going to refuse to
[23] answer any questions about the criminal
[24] conviction?
[25] **THE WITNESS:** Right.

Triarch Architectural Services, P.C. v.
Medallion Inc., et al.

Garry Braverman
Vol. 1, July 11, 2012

Page 265

[1]                    **G. Braverman**
[2]    **MR. MANDEL:** We will take that up
[3] with the judge.
[4]    **MR. ISRAEL:** Okay. Good.
[5]    **MR. McKEE:** Are you done?
[6]    **MR. MANDEL:** Yes. I have no further
[7] questions. I can't close the deposition
[8] because Mr. Israel and I are still working
[9] on resolving some concern about his
[10] production, so we have to reserve all of
[11] our rights, but I thank Mr. Braverman for
[12] his time today.
[13]    And I hope you make it to the airport
[14] on time.
[15]    **MR. ISRAEL:** I think we've used your
[16] eight hours today.
[17]    **MR. McKEE:** I have some questions.
[18]    **MR. ISRAEL:** We produced everything
[19] that is required to be produced. There are
[20] no open issues about it, and I'm going to
[21] respond that the deposition is over when
[22] this is over. As to your questions of
[23] whether you get to probe into any earlier
[24] criminal conviction and any details about
[25] that, you can write to the judge about

Page 266

[1]                    **G. Braverman**
[2] that.
[3]    **MR. McKEE:** Let's try to do this as
[4] quickly as I can.
[5]             **EXAMINATION**
[6]           **BY MR. McKEE:**
[7]    **Q:** Mr. Braverman, my name is Wesley
[8] McKee. I represent Garth Hayden. I'm going to
[9] try to be very quick because I know you have to
[10] go. You were shown Defendant's Exhibit 7
[11] earlier, correct?
[12]    **A:** Yes.
[13]    **Q:** I want to be sure, it's your
[14] testimony that you've never seen this collection
[15] of documents?
[16]    **A:** No.
[17]    **Q:** Were you ever given what we'll call
[18] a full-size set of drawings from Triarch when
[19] they were working on a project; were you ever
[20] given a set of drawings like this from Triarch?
[21]    **A:** No.
[22]    **Q:** Were you ever given single sheets,
[23] maybe not collections like this, but maybe single
[24] sheets that might have had a layout of the
[25] apartment, were you ever given anything like

Page 267

[1]                    **G. Braverman**
[2] that, like the full-sized set?
[3]    **A:** No.
[4]    **Q:** Let me show you what was previously
[5] marked as Defendant's Exhibit 49. Your counsel
[6] can take a look at it quickly.
[7]    Sir, the first page of that
[8] references a presentation with a date, and then
[9] there is a number of drawings, I'll call them,
[10] that follow after that.
[11]    Have you ever seen this collection
[12] of drawings before?
[13]    **A:** I believe I did. Yes. Yes.
[14]    **Q:** Let me show you one that was marked
[15] as Exhibit 50, Defendant's Exhibit 50, that is
[16] another collection of what we'll call drawings,
[17] with a cover sheet that has a presentation of a
[18] different date, it might be November of 2008. Do
[19] you recognize that document?
[20]    **A:** No.
[21]    **Q:** But looking at 49, you do believe
[22] you've seen this before?
[23]    **A:** Yes, I do remember seeing this.
[24]    **Q:** It has a date on the front
[25] presentation October 26, 2008. Looking at that

Page 268

[1]                    **G. Braverman**
[2] date, does that refresh your recollection as to
[3] whether you were shown that or something similar
[4] to that in or around that date by Triarch?
[5]    **A:** Yes.
[6]    **Q:** Was that the kind of materials that
[7] Triarch was giving you in connection with their
[8] work on the project?
[9]    **A:** Yes.
[10]    **Q:** You looked at Exhibit 50; you don't
[11] recall this specific one?
[12]    **A:** No. I can look again.
[13]    **Q:** Let me show you one more along this
[14] line, it has previously been marked as
[15] Defendant's Exhibit 51. It is entitled
[16] "Presentation File January 14, 2009." Take a
[17] look at that, please.
[18]    **A:** I certainly didn't see it.
[19]    **Q:** And now that contains some drawings
[20] and also some computer-generated — I forget what
[21] they're called now.
[22]    **MR. MANDEL:** Renderings?
[23]    **Q:** — renderings. Looking through that
[24] collection, have you ever seen that collection
[25] before? No?

Garry Braverman
Vol. 1, July 11, 2012

Triarch Architectural Services, P.C. v.
Medallion Inc., et al.

Page 269

**G. Braverman**

[1]
[2] **A:** No. No. But — but, again, I
[3] wasn't paying attention to any design related —
[4] **Q:** That was Vladimir's —
[5] **A:** That was his apartment.
[6] **Q:** You were shown what I think is
[7] Plaintiff's 10, and you said, I think, that these
[8] were renderings which came from Libracon,
[9] correct?
[10] **A:** Yes.
[11] **Q:** Other than what is in this little
[12] booklet here, did Libracon provide you with any
[13] other renderings, any other depictions,
[14] computer-generated depictions, anything other
[15] than this?
[16] **A:** No, I don't think so.
[17] **Q:** Let me show you what was previously
[18] marked as Defendant's Exhibit 3, which has a
[19] series of different renderings in it, and ask you
[20] if you recognize any of those.
[21] **A:** Yes.
[22] **Q:** Do you recall being presented with
[23] any of those, maybe not the specific ones, but
[24] things of that nature, from Triarch when they
[25] were still working on the project?

Page 270

**G. Braverman**

[1]
[2] **A:** Yes.
[3] **Q:** Is that the kind of work they were
[4] giving you?
[5] **A:** Yes.
[6] **Q:** Let me show you another collection
[7] of sketches and renderings which has been marked
[8] as Defendant's Exhibit 5, and ask you to just
[9] flip through that and ask you a general question
[10] about those.
[11] As you go through that you'll see
[12] that there are some renderings in there, correct?
[13] **A:** Yes. But aren't those the same as
[14] the other book?
[15] **Q:** Well, we're not going to take the
[16] time it compare each set.
[17] **A:** Well, yeah, I do remember seeing
[18] this.
[19] **Q:** You remember seeing some of the
[20] renderings?
[21] **A:** Yes.
[22] **Q:** How about some of the sketches that
[23] are in there, does that, again, look familiar,
[24] look like something that you were getting from
[25] them at the time, them being Triarch?

Page 271

**G. Braverman**

[1]
[2] **A:** No.
[3] **Q:** That is fine.
[4] **A:** No.
[5] **Q:** During the period of time that you
[6] were involved in the project, you had occasion to
[7] meet with Garth Hayden?
[8] **A:** Yes.
[9] **Q:** How many times do you figure you met
[10] with Garth Hayden?
[11] **A:** At least half a dozen.
[12] **Q:** Did you ever meet also with Mr. Pepe
[13] Calderin at the same time? Were you together
[14] with both of them at the same time?
[15] **A:** The meeting that we were discussing,
[16] when Calderin came to New York, I believe
[17] Vladimir — I was not involved already in the
[18] project, but since Vladimir was not in town he
[19] asked me to introduce, since I knew them both.
[20] So I do remember having lunch with Calderin and
[21] then Garth came over to the apartment. I
[22] introduced them and I left.
[23] **Q:** I see.
[24] **A:** So just a general introduction.
[25] **Q:** I know you said you never saw

Page 272

**G. Braverman**

[1]
[2] Exhibit 7 before, which is Triarch's set of
[3] drawings dated December of 2008. I would be
[4] correct then that you never saw Mr. Hayden with a
[5] set of those; is that correct?
[6] **A:** Correct.
[7] **Q:** And you never saw Mr. Calderin with
[8] a set of those, correct?
[9] **A:** Correct.
[10] **Q:** And that one occasion that you were
[11] together with them, you didn't see a set of these
[12] plans; is that correct?
[13] **A:** No.
[14] **Q:** Okay. You were shown a new exhibit
[15] today marked P-64, and I'll give you my copy.
[16] Take a look at this e-mail.
[17] Do you remember looking at this
[18] earlier today?
[19] **A:** Yes.
[20] **Q:** And there is reference in there to
[21] them having been provided with AutoCAD; do you
[22] see that?
[23] **A:** Yes.
[24] **Q:** Who is AutoCAD? Who had created
[25] that AutoCAD drawing?

Triarch Architectural Services, P.C. v.
Medallion Inc., et al.

Garry Braverman
Vol. 1, July 11, 2012

Page 273

[1] **G. Braverman**
[2] **A:** Hayden.
[3] **Q:** Garth Hayden?
[4] **A:** Yes.
[5] **MR. ISRAEL:** He's got an
[6] appointment.
[7] **MR. McKEE:** Yes.
[8] **MR. ISRAEL:** Can you make it quick?
[9] **MR. McKEE:** We'll be out of here by
[10] 6:00.
[11] **Q:** Let me show you what was previously
[12] marked as Defendant's Exhibit 1. Does this look
[13] familiar to you?
[14] **A:** Yes.
[15] **Q:** And you'll note that down here there
[16] is a date of June 26, 2008. Do you recognize
[17] these as being the set of plans originally
[18] prepared by Mr. Hayden which —
[19] **A:** Yes.
[20] **Q:** — you were both — you have to let
[21] me finish the question.
[22] — which were originally approved by
[23] both the building and the Building Department?
[24] **A:** Yes.
[25] **Q:** And the AutoCAD that is referenced

Page 274

[1] **G. Braverman**
[2] in P-64, would that have been a version of these
[3] drawings?
[4] **A:** Yes. He asked me to submit them
[5] approved plans and I sent him I believe in PDF,
[6] and he asked me to resend them in Cad.
[7] **Q:** I'm going to show you my copy of
[8] what was previously marked as D-37. There is an
[9] e-mail chain here. This is my handwriting, I'll
[10] note for the record, but down here in this e-mail
[11] it says, "You need them to concentrate on
[12] redrafting the initial design," do you see that?
[13] Please read it in context, please.
[14] My question to you is what design is
[15] that a reference to, what was the initial design?
[16] **A:** It was referring to renderings.
[17] **Q:** To renderings?
[18] **A:** Yes.
[19] **Q:** The renderings which would have
[20] predated the September 15th, those would have
[21] been the ones from Filip?
[22] **A:** No.
[23] **Q:** No?
[24] **A:** The one — the —
[25] **Q:** Who?

Page 275

[1] **G. Braverman**
[2] **A:** The one that he would come up with,
[3] which I'm referring to that hopefully Vladimir
[4] will approve them, so at the time we were on
[5] schedule, and he was planning to present them in
[6] the mid-September, so they will get approved by
[7] the end of September, so we are on schedule.
[8] **Q:** I have one or two more questions.
[9] You were shown Exhibit P-71. And this had do
[10] with the billing. And correct me if I'm wrong, I
[11] think you said something to the effect that you
[12] told him, meaning Corelli, that he had no
[13] business to work on anything beyond phase I,
[14] something to that effect?
[15] **A:** I — I was always — I was always
[16] repeating myself, every — on every telephone
[17] conversation, I was always reminding him that he
[18] has no business to focus on anything else, but to
[19] finish phase I so we can get the production in
[20] Italy going, then we can go to anything else.
[21] **Q:** And in order to get the Italians
[22] working on producing the panels, all the
[23] custom-made stuff, what level of detail had to be
[24] provided from Triarch in order for that to
[25] happen?

Page 276

[1] **G. Braverman**
[2] **A:** Well, first they had to — to have
[3] the designs approved, the renderings. Then they
[4] need to come up with the drawings for the
[5] Italians, the measurements and the — we went
[6] through this.
[7] **Q:** Yes?
[8] **A:** In other words, how would
[9] manufacturer go into production with only the
[10] renderings, without the actual drawings?
[11] **Q:** When you stopped working on the
[12] project sometime after Triarch was released, had
[13] any work been done, any physical work on the
[14] project?
[15] **MR. ISRAEL:** Any construction?
[16] **Q:** Any construction work, yes.
[17] **A:** No.
[18] **Q:** Nothing had been built? Had any
[19] contractors been hired yet?
[20] **A:** No.
[21] **MR. McKEE:** That is all I have.
[22] Thank you.
[23] **THE WITNESS:** Thank you. Time.
[24] **MR. MANDEL:** Thank you very much.
[25] (Time noted: 6:04 p.m.)

Garry Braverman
Vol. 1, July 11, 2012

Triarch Architectural Services, P.C. v.
Medallion Inc., et al.

---

Page 277

[1]

[2]   I, the witness herein, having read

[3] the foregoing testimony, do hereby certify

[4] it to be a true and correct transcript,

[5] subject to the corrections, if any, shown

[6] on the attached page.

[7]

[8]

[9]

[10]

[11]   **GARRY BRAVERMAN**

[12]

[13]

[14]

[15]

[16] Subscribed and sworn to

[17] before me this _____ day

[18] of _____ 2012.

[19]

[20]

[21]

[22]

[23]

[24]

[25]

---

Page 278

[1]

[2]   CERTIFICATE

[3] STATE OF NEW YORK )

[4]

[5] COUNTY OF NEW YORK)

[6]

[7]   I, KAREN PERLMAN, RPR, CRR, a Shorthand

[8] Reporter and Notary Public within and for the

[9] State of New York, do hereby certify:

[10]   That GARRY BRAVERMAN, the witness whose

[11] deposition is hereinbefore set forth, was duly

[12] sworn by me and that such deposition is a true

[13] record of the testimony given by such witness.

[14]   I further certify that I am not related to

[15] any of the parties to this action by blood or

[16] marriage, and that I am in no way interested in

[17] the outcome of this matter.

[18]   IN WITNESS WHEREOF, I have hereunto set my

[19] hand this 23rd day of July, 2012.

[20]

[21]

[22]

[23]

[24]   KAREN PERLMAN, RPR, CRR

[25]

---

Page 279

[1]

[2]   INDEX

[3] WITNESS   EXAMINATION BY   PAGE

[4] GARRY BRAVERMAN  MR. MANDEL   4

[5]   MR. McKEE   266

[6]

[7]   EXHIBITS

[8] PLAINTIFF'S   EXHIBIT   PAGE   LINE

[9] 56,  Document entitled   4   9
     "Notice of Deposition

[10] of Medallion Inc."

[11] 57,  Document entitled   35   15
     "Contract of Sale,

[12] Condominium Unit"

[13] 58,  Two-page document   39   2
     entitled "Assignment

[14] and Assumption" bearing
     Bates numbers MED 159

[15] and MED 160

[16] 59,  Document bearing Bates   39   15
     numbers MED 167 -

[17] MED 170

[18] 60,  Document bearing   40   17
     Bates numbers MED 171 -

[19] MED 174

[20] 61,  Document bearing   43   4
     Bates number MED 194

[21]

     62,  Document bearing   43   20

[22] Bates number MED 128

[23] 63,  Document bearing   46   9
     Bates numbers MED 287

[24] and MED 288

[25] 64,  One-page e-mail chain   112   21

---

Page 280

[1]
[2]                    INDEX(Continued.)
[3]              E XHIBITS
[4] PLAINTIFF'S         EXHIBIT      PAGE  LINE
[5]  65,  E-mail chain           142  24
[6]  66,  E-mail chain           144  6
[7]  67,  Document dated           161  2
              Wednesday,
[8]       December 10, 2008
[9]  68,  Two-page document        189  10
              dated June 1, 2012

[10]
       69,  Document dated         191  4
[11]      July 1, 2010
[12]  70,  Document entitled,       200  20
              "Answer and
[13]      Counterlcaims"
[14]  71,  Two-page document        253  9
              dated Wednesday
[15]      November 5, 2008
[16]
[17]       QUESTIONS DIRECTED NOT TO ANSWER
[18]       PAGE   LINE
[19]        262      9
[20]        262      17
[21]        263      11
[22]        263      16
[23]        263      21
[24]        263      25
[25]        264      5

Triarch Architectural Services, P.C. v.
Medallion Inc., et al.

Garry Braverman
Vol. 1, July 11, 2012

**$**

$1,273,000 177:4
$1,273,800 176:13
$10 173:25
$10,950,000 37:7, 10
$11 million 37:24
$2.1 million 255:10, 17
$30,000 209:14; 211:6
$70,000 152:2
$800,000 255:18

**1**

1,029,000 62:5
1-5 171:16
1/2 12:23; 13:2, 3
1/2-minute 13:6
10 154:14; 155:5; 161:3, 8; 206:8; 243:14; 244:11; 245:9, 19; 248:3; 250:15; 269:7
10022 4:4
107644/2009 201:2
10th 158:6; 160:13, 23, 23; 166:15; 183:2, 4
11 37:16
11:22 52:25
11:26 53:3
12 98:12; 163:21
128 43:21; 44:6
14 171:8, 19; 172:4; 218:3, 6; 257:2, 13, 22; 268:16
141 35:20
15 95:13
153 36:13
154 36:13
157 35:21
159 39:4, 7
15th 274:20
18 186:6
160 39:5, 8
164 62:4; 99:8; 106:19
167 39:16; 40:9
17 64:5
170 39:16; 40:10
170,000 64:8; 212:7, 8
171 40:18, 22
173 41:19, 22
174 40:18, 22
18 143:4
18th 143:14; 144:9
194 43:5, 9
1970s 16:2
1971 14:11
1975 15:16
1997 4:25
1999 51:3; 262:8
19th 143:14

**2**

2-D 79:7
2.1 255:14
2.5 255:14
20 64:5; 66:8
200 66:15
200,000 66:15
2006 17:3, 18
2008 16:5; 18:25; 19:12, 19, 20; 22:2, 8; 23:19, 21; 24:6; 28:3, 6; 44:21; 59:11, 20; 95:13; 98:12; 99:16, 20; 100:4, 24; 110:8; 113:2; 119:24; 142:12, 22; 143:5; 144:25; 147:12, 21; 154:14, 15; 155:5; 161:3, 8; 162:16; 163:21; 164:25; 172:3; 183:9; 193:12, 20; 195:14, 23; 197:16, 25; 198:8, 12, 22; 201:15; 203:2, 3, 14; 206:22; 214:15; 230:12, 19, 22; 237:19, 20, 24; 253:10, 19, 25; 267:18, 25; 272:3; 273:16
2009 18:25; 44:22; 47:17, 18; 49:15; 51:6, 24; 55:19; 60:3, 5; 123:5; 153:17, 21; 154:7, 19; 171:8, 19; 172:4; 178:21; 179:20; 180:7; 183:15; 184:14; 186:14, 18; 187:8, 23, 24; 189:22; 190:2, 6, 19; 193:20, 24, 25; 194:3; 195:21; 197:12; 199:4, 16; 200:16; 201:14; 204:6; 209:13; 211:2; 217:24; 218:3, 6, 6; 219:6; 223:15; 227:4; 257:3, 13, 19, 23; 268:16
2010 190:19; 191:5, 12
2011 44:19; 95:6; 190:20
2012 55:18; 59:6; 111:20; 189:11; 277:18
21 178:21; 183:15; 184:14
21st 22:10, 15; 43:12; 180:11
22 260:3
22M 4:3
23 237:19, 20, 24
24 148:25; 149:17
25 144:25; 147:11, 21; 212:8
25,000 215:3, 4
26 267:25; 273:16
27 153:17, 21; 154:6; 200:16

**2**

27th 154:22, 23
28 207:23
287 46:10, 14
288 46:10, 14
29 119:12

**3**

3-D 79:8
30 181:20; 223:20
30(b)(6 9:13; 12:7, 13; 57:4, 7, 17, 21, 23; 58:8, 14, 16
30,000 201:25; 202:4; 210:25; 223:7
30-day 206:18, 19; 207:3
300 4:3
300,000 67:16
31 22:2; 99:16, 20; 100:4, 24; 193:12, 20; 195:14; 197:16, 25; 198:8, 12, 22
31st 25:23; 101:10; 195:23; 196:8; 198:19; 199:19
35,000 181:20, 23
37 138:21
370 58:19; 59:2; 61:8
39 139:17
3:00 166:5
3:21 166:7

**4**

40 55:10; 140:17; 162:21
40,000 223:7
41 151:19; 154:13; 163:18
42 157:19; 166:8, 9
434 112:4, 5, 17
44 179:12; 180:21; 181:8; 211:10, 14, 21; 254:5, 9
45 167:13; 178:16; 180:10; 181:6, 7, 9; 182:3
46 153:9; 171:6; 175:5; 195:10
47 176:4
48 111:8, 8
488 108:21
49 53:9; 267:5, 21
4:55 232:11

**5**

50 267:15, 15; 268:10
500 67:9; 228:9, 10
51 268:15
51,000 223:13
515 22:10, 14; 43:12
52 55:12; 58:22; 61:12
53 259:16
54 212:8; 256:20
54,000 212:4

55 61:16
56 4:9; 12:12
56th 4:3
57 35:15, 19
57th 6:8
58 39:2, 7, 22, 23
59 39:15, 19; 40:7; 95:11
5:03 232:13
5:29 253:6
5:31 253:8
5th 119:23

**6**

60 40:17, 21
600 177:21
600,000 67:9, 19
61 43:4, 8
62 43:20; 44:5
63 46:9, 13; 52:8
64 112:21, 24
65 142:24
66 144:6, 20; 160:5
67 161:2, 6
68 189:10, 18; 191:2
69 191:4; 192:22
6:00 273:10
6:04 276:25

**7**

70 200:20, 24
70K 151:23
70s 16:3
71 253:9, 13, 14; 254:14

**8**

875 25:22
8th 214:13

**9**

9th 219:3

**A**

A.J.K 42:6, 12
a.m 52:25; 53:3
Aaron 144:25
abandonment 122:25; 134:3; 136:7
Abe 109:15
ability 238:21; 263:3, 4
able 24:21; 68:21; 101:6, 17; 117:4; 190:23; 207:12
above 130:2, 9, 22, 23; 176:20; 205:6
absent 205:7

Absolutely 131:3; 133:11; 156:15; 188:6; 199:20
accept 66:17; 67:18; 103:21; 175:11; 103:10; 139:12; 141:24, 24; 177:9, 13
acceptable 103:7; 148:3; 166:22; 170:23; 176:15; 177:5; 193:19, 25; 206:5
access 229:2
accommodate 172:21; 173:7
accordance 134:11
According 154:14; 171:9, 21
Accordingly 192:11
account 228:19; 229:2, 4; 33:22; 228:16; 229:3
accurate 193:16; 195:17; 199:10, 14
acting 11:5, 8
action 200:25
active 59:9
actively 59:19
acts 11:9
actual 86:4; 87:13, 16, 20; 88:4; 126:2; 223:12; 276:10
actually 4:20; 66:14; 76:17; 88:4; 97:12; 110:21; 117:18; 123:3; 126:5; 137:12; 140:25; 174:7; 182:16; 226:16; 237:23; 253:16
addition 213:21; 245:11
additional 73:10; 89:15; 118:4; 129:25; 130:12, 16, 21; 131:5, 10, 12, 19, 21; 132:12, 15; 133:19; 172:12; 173:4; 181:2, 4; 196:2; 211:11; 213:17, 18; 214:3, 4; 215:2, 4, 15, 17; 217:14; 219:22; 230:23; 231:14
address 4:2; 108:20, 22, 24, 25; 220:25; 222:19; 211:16; 228:5, 10, 11, 18, 24; 10:4; 58:2
adjusted 174:14
admissible 262:23
admitted 57:8
advance 114:10
advice 33:14
advise 225:15; 206:9
advising 153:15; 186:2, 11
aesthetic 49:3
affect 189:7
AFTERNOON 119:2; 147:6
again 10:22; 27:5; 37:18; 59:7; 60:11; 84:9; 93:10; 107:16; 129:10; 138:7; 153:24; 164:16, 19; 180:20; 195:9; 196:9;

203:10; 206:19; 207:6;
213:20; 218:18; 220:22;
224:21; 233:25; 234:9;
248:6; 251:10; 268:12;
269:2; 270:23
**against** 76:19
**agents** 32:7, 15, 17
**ago** 4:19, 23, 24; 6:2;
37:19; 69:16; 99:6;
186:21; 222:8, 9; 225:14;
243:20
**agree** 27:21; 58:6;
112:20; 143:16, 19; 71:9;
131:13; 200:6, 9; 214:19
**agreement** 36:8, 9, 19;
39:13; 69:5; 98:7, 9, 11,
16; 99:15, 18; 100:22;
102:11; 106:13; 107:23,
25; 111:14; 113:8, 11;
114:21, 22; 119:16, 18;
120:3, 10, 13; 121:20;
122:6, 10, 15, 20; 126:17;
134:8, 12, 18, 23; 135:2,
17, 22; 136:12, 21; 171:21;
174:20; 196:14; 208:25;
209:10; 233:6, 17; 30:18
**ahead** 58:17; 93:25;
129:6; 136:14; 169:13;
242:23
**airport** 265:13
**allowed** 192:25
**allows** 134:23
**almost** 118:2; 127:4;
145:24; 154:16; 200:12
**along** 69:11; 140:6, 8;
168:21; 268:13
**altered** 141:12, 13
**alternative** 166:25; 204:9
**although** 74:4
**Altogether** 228:7
**always** 71:2, 6, 10; 78:8;
90:14; 91:11; 99:3;
143:12; 174:12; 185:20,
23; 195:22; 196:4, 6, 11;
202:16; 213:5; 216:10;
217:21; 219:4; 275:15, 15,
17
**amended** 107:25
**amount** 25:6; 61:23;
62:6, 11; 70:4; 140:25;
170:10; 172:14; 176:16;
213:21; 55:16; 61:20, 25;
235:17
**and/or** 48:8; 61:8;
177:15; 224:4
**angry** 157:3
**annual** 138:13
**answered** 263:5
**Apartment** 4:3; 20:4, 6;
21:25; 22:10, 14, 15, 18,
19; 23:22, 23; 24:2, 8;
25:7; 26:4, 20; 27:7, 15,
19, 24; 28:5, 8, 11, 15, 21;
29:18; 34:3, 4; 36:10; 37:7,
9; 38:4, 6, 14, 15, 18, 19,
24; 40:14; 43:15; 45:21;
46:7; 47:7; 49:4; 51:11, 14;

52:4, 19; 53:15; 54:13, 25;
55:5; 56:23; 59:5, 10, 13;
61:9; 62:8, 12; 63:2; 67:11;
74:9; 75:5, 15; 77:2, 10;
79:23, 24; 88:9; 94:15, 24;
95:5, 9, 22; 102:13, 15, 18;
103:9; 105:2; 110:8;
111:15; 113:12; 145:7;
149:9; 157:12; 158:8;
186:14; 187:9, 14, 22;
188:7, 14; 189:6, 15;
190:4, 19; 195:6; 198:2;
200:4, 18; 201:13; 202:12,
14, 25; 203:22; 204:5, 10,
13; 205:15; 207:15; 209:6,
13; 210:20; 211:5; 221:3,
13, 18, 22, 25; 222:3, 7,
11, 16; 231:21, 24; 232:8;
234:19, 25; 235:7; 240:9;
256:11; 266:25; 269:5;
271:21; 23:14; 25:10
**apologize** 60:10, 24, 25;
113:20; 116:15; 194:18,
25
**Apparently** 160:24
**appear** 42:19; 46:16, 22;
61:23; 62:4; 95:15;
112:25; 113:9
**appointed** 60:21
**appointment** 273:6
**appreciate** 45:2; 60:9, 9;
230:2
**approach** 150:9; 246:14
**appropriate** 134:24
**approval** 59:20; 84:19;
85:25, 25; 100:11, 19;
101:6, 7, 16, 24; 102:25;
103:3, 11, 13, 22; 104:6,
17; 217:10; 218:4; 230:11,
14, 16, 21; 231:6, 9, 11;
235:4; 99:25; 230:23
**approve** 64:20, 22;
77:13; 79:14; 82:3; 85:12,
18; 88:5; 91:17; 132:24;
139:6, 8; 149:14; 151:14,
16; 165:10; 275:4; 64:23;
70:18; 74:20, 20, 23;
75:19; 77:16; 78:11; 82:5;
83:3; 90:23; 102:22, 24;
103:6, 12, 14; 116:17;
117:8; 124:7; 144:10;
159:11, 23; 163:7, 8, 24;
164:3, 24; 165:5, 16, 19;
171:14; 172:10; 173:21;
181:2; 200:14, 17; 203:18;
213:8; 214:14, 24; 215:5;
218:8; 238:11; 240:21, 21;
241:2; 242:2; 273:22;
274:5; 275:6; 276:3
**approximate** 63:17
**approximately** 17:3;
18:22; 19:20; 29:16;
37:11; 55:9; 62:5, 22; 64:8;
67:16; 82:13, 15; 95:5, 16;
116:19; 154:18; 181:23;
215:3; 255:10, 17
**April** 60:5; 187:6
**architect** 22:23; 59:16,
17; 86:9; 94:4; 99:9; 102:5;

103:22; 104:11; 106:23;
121:8; 128:20; 130:11;
131:9; 133:2, 3, 4; 134:7;
136:8; 240:25; 59:12;
66:22; 102:18
**architectural** 101:24;
103:19; 104:16
**architecture** 260:22
**argument** 66:20; 141:25
**Around** 17:4; 49:14;
51:9; 60:2; 97:15; 117:25;
147:5; 148:13; 154:23;
163:21; 171:8; 178:21;
181:20; 183:4; 184:2, 2,
14, 15; 186:18; 187:5;
202:22; 218:3; 268:4
**arranged** 59:14; 102:19;
208:19
**arrival** 50:22
**arrived** 50:22
**Article** 121:6; 130:6, 12,
14, 15, 15; 131:10; 134:2;
136:5; 138:8
**articulated** 195:5
**aside** 90:17; 257:17
**aspect** 91:9; 206:11;
75:14; 150:23; 239:16, 19;
240:4, 8; 252:11
**assign** 39:12
**Assignment** 39:3
**assist** 27:6
**associate** 202:7; 46:6;
20:10
**assume** 8:22; 151:24;
205:2; 96:17
**assuming** 220:12
**Assumption** 39:4
**assured** 71:10
**attached** 277:6
**attaching** 113:10
**attend** 15:17; 186:17;
14:16
**attention** 27:5; 36:12;
39:21; 40:7; 41:19; 52:7;
58:19; 95:10; 99:7;
106:18; 111:24; 121:6;
122:24; 124:14; 129:10;
130:5; 133:25; 136:3, 5;
138:7, 24; 139:2; 145:2;
160:4; 168:6; 179:13;
180:20; 182:2; 192:21;
206:7; 207:22; 212:12;
216:24; 219:5; 220:21, 24;
222:22; 251:11; 269:3
**attorney** 36:3
**August** 22:7; 23:19;
101:16; 189:22; 190:2, 6;
208:11, 22, 23; 230:15, 19,
22
**authority** 152:12; 165:10
**authorized** 183:18, 19
**AutoCAD** 174:5; 272:21,
24, 25; 273:25
**automatically** 173:23
**available** 204:6; 229:15
**Avenue** 6:8; 22:10, 15;

43:12; 108:21; 221:19
**aware** 20:2; 22:9; 40:4;
42:20; 44:16; 68:14;
94:23; 108:8; 150:13;
151:8; 156:12, 14; 165:5;
179:9; 181:12, 14; 185:25;
186:3; 209:3; 211:8;
221:24; 222:5; 234:18, 21
**away** 9:7; 28:23, 24;
167:9

# B

**bachelor's** 15:2, 8, 12
**back** 14:11, 14; 40:7;
44:25; 50:23; 59:7; 69:10;
74:14; 87:11; 102:12;
107:12; 111:22; 112:9;
144:11; 159:24; 160:4;
163:8; 174:10; 182:16;
183:15; 201:15; 214:21;
224:10; 230:22; 238:6, 9;
250:5
**bad** 246:9
**ballpark** 116:20
**bank** 33:21
**bargain** 95:11
**base** 103:10; 105:21;
251:6; 29:25; 72:13; 74:3,
23; 75:2; 89:3, 10; 111:18;
126:18; 127:6, 22; 192:23;
196:12; 199:6; 202:18, 18;
203:10, 10; 208:18, 18;
212:5; 217:3; 244:20, 23;
245:18, 23; 247:15; 248:5;
249:22; 251:3; 255:13
**basically** 90:7; 159:3;
160:15; 162:19; 167:3, 4
**basing** 142:5; 255:25
**basis** 72:9; 145:25;
187:12; 188:25; 255:17
**Bates** 35:20; 39:4, 7, 16;
40:9, 18; 43:5, 8, 21; 44:5;
46:10, 13; 112:18; 119:11
**bath** 177:19
**bathrooms** 73:24, 24;
83:8, 11, 22; 145:15;
146:16, 23; 198:8
**bearing** 39:4, 16; 40:18;
43:5, 21; 46:10; 155:23
**bears** 263:3
**beast** 172:25
**became** 155:21
**become** 22:17; 51:2;
222:5
**bedroom** 81:18; 145:12,
13, 14; 146:10, 13, 17, 22;
147:3, 7, 11; 159:17, 21,
25; 160:8, 9, 12, 22; 163:2,
4; 166:14, 19, 22; 167:5;
198:4; 250:2, 3; 83:7, 7, 14
**began** 157:12; 189:14;
190:15
**begin** 27:23; 72:22;
74:18; 75:6; 76:4, 8; 77:3,
17; 116:8; 117:4; 118:2;

133:13; 190:11; 35:20;
39:7; 40:9; 46:13; 119:11;
138:9
**beginning** 44:22; 47:18;
59:11, 24; 62:16; 71:19;
73:4; 114:13; 193:25;
195:19
**behalf** 9:9, 22, 23; 10:8,
24; 36:19, 22, 24; 44:10;
165:10; 185:6
**behind** 90:24; 148:4, 9;
188:11
**belief** 72:10; 96:8
**below** 42:20
**beneath** 189:21
**Besides** 89:2
**best** 28:12; 64:21; 68:3;
165:4
**better** 50:8; 171:3, 3
**beyond** 64:2; 130:3, 22,
23; 131:13; 211:11;
264:14; 275:13
**bidding** 125:20, 22
**big** 54:7; 62:19; 216:4
**biggest** 70:13
**bill** 175:6; 215:7, 11;
217:22; 130:17; 172:14;
255:13; 214:10; 275:10
**birthday** 17:7, 8
**bit** 44:24; 90:13
**board** 88:11, 13; 100:20;
103:2; 214:21; 88:15, 18,
19
**bogged** 242:9
**book** 80:7, 14; 212:7;
238:19; 245:4; 270:14
**booklet** 269:12
**born** 50:13, 14, 17
**Both** 18:5; 65:18; 66:12;
69:6; 134:23; 140:14;
144:18; 168:3; 245:13;
246:22; 247:8, 12; 271:14,
19; 273:20, 23
**bottom** 41:20, 22; 46:15;
52:8; 68:21; 108:20;
138:24; 139:3; 143:6;
161:9; 189:23; 190:10;
191:25
**box** 227:17, 24
**Braverman** 4:14; 12:7;
35:18; 40:20; 55:21; 57:6;
58:10, 15; 113:19; 143:5;
161:11, 12; 191:14;
250:14; 264:22; 265:11;
266:7; 277:11; 56:4; 57:13
**Breach** 5:22, 22, 23;
232:18
**break** 9:3, 6; 52:22;
97:14, 16; 112:14; 118:11;
165:23; 253:5
**brief** 53:2; 166:6; 232:12;
253:7
**briefly** 149:20
**broken** 227:12
**buddies** 14:9

Triarch Architectural Services, P.C. v.
Medallion Inc., et al.

Garry Braverman
Vol. 1, July 11, 2012

**budget** 48:23; 62:16, 21; 63:22; 66:13, 24; 67:11, 12; 142:5, 6, 7; 151:2; 176:13, 15; 177:4, 17; 255:10, 14, 18, 18, 24; 256:4

**build** 58:13; 59:14, 21, 22; 75:20; 99:24; 100:9, 20; 102:14, 17, 22; 104:7; 105:3; 230:11, 23; 231:9, 21; 273:23, 23

**builders** 66:23

**building's** 100:11; 101:15

**buildings** 23:15; 25:11; 110:11, 16; 231:6, 11, 14; 235:4

**built** 85:11; 240:10; 276:18

**bunch** 233:5

**busier** 28:22

**business** 16:19; 17:23; 30:5, 6, 10, 25; 31:14; 32:23; 33:3; 41:5, 7; 66:11; 68:5; 72:14; 73:21; 170:2, 6; 201:22; 202:7; 209:8; 210:2; 255:3; 260:22, 25; 275:13, 18; 31:2, 16; 35:9

**buy** 30:17

# C

C-O-L-O-M-E-R 46:18

**cabinet** 149:21, 25; 150:13

**CAD** 173:22; 274:6

**cake** 25:4; 101:12, 14

**calculate** 94:22; 255:10

**calculating** 255:16

**calculation** 255:25

**Calderin** 46:23, 24; 47:4, 5, 11, 14, 20, 25; 48:9, 14, 19; 49:2, 9, 10; 51:5, 23, 25; 52:9, 14; 186:17; 187:3; 189:22; 208:14, 15, 16, 20; 232:6; 251:17; 252:15; 271:13, 16, 20; 272:7; 187:7, 24; 256:11

**call** 76:20; 97:19, 20; 118:7; 165:24; 196:13; 214:25; 266:17; 267:9, 16; 6:9; 7:12; 14:19; 22:20; 46:3; 54:8; 68:8; 160:14; 173:22; 268:21; 32:9; 49:17, 21, 24; 51:5, 7, 24; 82:20; 105:5; 107:14; 120:15, 23; 121:14; 123:14; 134:19; 135:18, 25; 136:13; 137:6, 23; 138:17; 169:10; 192:7; 221:8; 232:21; 240:15; 251:8; 252:18, 25; 258:16

**came** 43:15, 18; 51:9; 57:16; 139:9; 261:16; 269:8; 271:16, 21

**Can** 7:4, 6; 9:3, 6; 11:16; 17:21; 23:5, 12; 24:10; 26:7; 27:12; 32:12, 13, 21; 41:17; 48:7; 52:23; 67:23; 69:4; 70:17, 20, 23; 71:11, 14, 16; 74:21; 75:2, 2; 77:3; 78:19, 21; 82:24; 84:18; 85:9; 86:15, 20; 87:3, 10; 89:22; 90:13; 93:8, 25; 94:22; 96:19, 22; 97:16; 98:19, 23; 101:13, 15; 105:18, 23; 107:11, 17; 111:3, 17, 21; 114:9; 115:5, 11; 116:21; 118:4, 6; 120:19, 24; 121:16; 122:3; 127:14; 129:19; 131:2; 132:14, 23, 24; 134:21; 135:7; 136:11; 138:2; 139:6; 141:17; 147:24; 148:7, 22; 149:12, 13; 151:16; 152:4, 22; 153:5; 161:20; 164:2; 165:13; 170:18, 20, 24, 24; 173:3, 25; 175:2; 177:8, 20; 180:13; 183:23; 191:2; 212:23; 213:6; 215:7; 220:6; 221:7; 223:24; 228:20; 234:2; 238:23; 239:7; 241:12; 242:10, 11; 243:10; 245:22; 246:21; 248:10; 258:7; 265:25; 266:4; 267:6; 268:12; 273:8; 275:19, 20

**capacity** 36:21; 118:2

**care** 99:11; 156:20

**case** 4:18, 20; 5:15, 16; 6:3, 12; 7:15, 16; 10:13; 11:4; 12:23; 18:6; 21:11; 26:5, 21; 27:7; 34:5; 36:10; 40:15; 45:21; 53:15; 54:21; 60:16, 22; 78:14; 125:10; 146:18, 20; 170:11; 174:13; 215:2; 221:4; 225:7, 16, 20; 228:25; 230:7; 5:3, 8; 26:14; 260:7, 8, 10

**category** 132:11

**cause** 211:6; 154:24

**cc'd** 190:20, 24

**cease** 121:21; 191:15, 16; 192:12; 121:23; 234:22

**ceiling** 73:18, 23; 79:19, 20; 84:16; 91:14; 176:19, 20; 177:4; 197:20; 84:7, 8; 198:9

**century** 6:2

**certain** 48:20; 60:18; 67:13; 70:4; 101:16; 116:6; 120:14; 125:11; 146:4; 151:11; 154:2; 163:10; 213:21; 215:12; 236:10, 13, 24; 245:8

**certainly** 50:10; 56:13; 58:6; 81:19; 83:7; 95:25; 136:15; 141:20; 142:3; 148:18; 268:18

**certify** 277:3

**cetera** 206:13

**chain** 112:22, 25; 113:4; 142:25; 143:3; 144:7, 21;

161:7; 189:19; 253:17, 24; 254:7, 13; 274:9

**chair** 9:21

**chance** 52:21; 143:25

**change** 19:15; 91:20, 25; 92:5, 12; 149:8, 24; 164:19, 20, 22; 176:23; 216:6; 141:10; 149:5; 150:15; 199:23; 204:13; 92:17; 103:8; 104:5; 127:4; 149:13; 150:19; 207:19; 215:15

**changing** 92:7; 149:3

**charge** 6:24; 7:2; 67:6; 172:16, 12; 213:19

**charging** 213:22

**childhood** 210:4

**Christmastime** 73:4

**circle** 112:9

**circumstances** 17:5; 131:4; 134:13, 16; 135:3, 14, 15

**CIS** 7:25

**citizen** 50:24; 51:2

**city** 75:20; 109:9, 19, 24

**Civil** 9:14

**claimed** 158:25

**clarification** 62:18; 142:17

**clarified** 256:4

**clarify** 256:8

**clarity** 60:10

**cleaning** 196:2

**clear** 11:2; 45:4; 60:8; 77:25; 112:17; 119:11; 127:19; 137:18; 141:21; 150:12; 153:25; 181:7, 13; 218:22; 233:14; 236:4, 6; 241:9; 250:14

**clearly** 57:3

**client** 52:11, 15; 56:23; 75:16, 18; 77:20; 79:9, 10; 85:18, 23; 94:3, 4, 7, 11, 13; 127:19; 170:23; 172:9, 9, 21; 173:3, 7; 192:25; 207:19; 214:22; 217:9, 9; 60:20

**close** 15:21, 24; 16:6, 7; 17:10, 11; 55:10; 102:24; 156:22, 25; 209:25; 210:2, 3; 213:13; 246:10; 265:7

**closely** 252:11

**closet** 147:8; 160:10, 13, 13; 198:4; 147:7; 160:9

**clue** 60:4

**collect** 229:7; 230:6

**collection** 266:14; 267:11, 16; 268:24, 24; 270:6; 266:23

**college** 14:9, 10, 13; 50:23

**Colomer** 46:17, 18, 20; 52:13

**color** 79:18; 145:6; 246:7; 147:24; 245:25; 246:2, 14,

15

**column** 61:22

**combination** 246:2, 7; 247:18, 18, 20

**comfortable** 104:21

**coming** 143:16, 20; 144:9

**commencement** 200:13

**comment** 92:4; 93:12; 166:24; 69:8; 83:3; 139:21; 143:8, 9, 11; 166:13, 15, 18, 21; 167:3, 8; 170:17

**commercial** 25:16; 26:10; 63:8

**common** 77:19; 121:9

**communicate** 19:8; 21:24; 45:17; 48:9, 19; 204:4; 217:17; 45:23; 185:15; 220:7, 10

**communication** 19:9; 50:2; 45:9, 13, 20; 51:25

**companies** 30:17; 42:22; 67:19

**company** 6:14; 7:15, 17, 18; 10:5; 11:6, 8, 15, 18, 21; 28:7; 29:25; 34:16; 42:7, 9, 14, 16, 24; 43:2, 11; 46:2; 52:15; 54:7; 68:7; 105:16; 231:20

**compare** 177:11; 270:16; 248:14

**comparing** 247:24

**compensated** 64:7; 136:8

**compensation** 27:8, 11, 13, 18; 106:8; 124:15; 128:20; 130:2, 12, 21; 131:6, 11, 21; 214:17

**complain** 159:14, 14; 163:11; 255:9

**complaints** 215:21; 216:9, 16, 20, 22

**complete** 8:18; 72:25; 73:12; 96:9; 99:16, 19; 101:10; 103:9; 104:8; 115:14; 120:13; 195:13; 198:7, 25; 199:14; 202:17; 215:12; 219:21; 8:16; 21:25; 48:20; 74:10; 75:5; 77:11, 16; 151:13; 159:5; 175:16; 195:20; 197:16, 24

**completing** 24:7

**completion** 121:19

**compliant** 126:4

**complicated** 26:11; 79:24

**complied** 122:12, 19

**comply** 122:5, 9

**component** 67:13; 115:4

**computer** 170:17, 24

**computer-generated** 268:20; 269:14

**concentrate** 139:4; 274:11

**concept** 71:3; 150:14;

214:3; 246:2; 90:17

**Conceptually** 245:20, 23; 246:5, 5, 7, 13; 248:6

**concern** 70:13; 78:8; 150:25; 254:18, 22; 255:24; 265:9; 111:14; 225:3; 253:24; 142:21; 216:17

**conclusion** 32:10; 107:15; 120:16, 23; 121:15; 123:15; 134:20; 135:19; 136:2, 13; 137:9, 24, 25; 138:18; 192:8; 232:22

**condition** 205:16, 18

**Condominium** 35:16

**conduct** 32:23; 44:17; 33:2; 44:13

**conflict** 183:8

**confused** 112:8; 141:15, 18; 173:9

**confusion** 141:8, 22

**connection** 27:14, 19; 54:12; 59:4; 68:12, 15; 131:24; 132:3; 190:18; 228:12, 24; 232:7; 235:11, 17; 268:7

**consent** 193:3

**consider** 82:3; 152:9; 63:9; 150:4; 73:3; 183:10; 205:22, 23

**consideration** 67:13

**consistent** 99:10

**conspiracy** 264:2

**conspire** 264:9; 263:11, 21

**constant** 17:17

**constantly** 151:9; 209:21

**construction** 22:22; 25:15; 26:10; 38:21, 24; 54:7; 75:4, 8, 11, 17, 17, 18, 21; 102:2; 103:19; 105:21; 114:8, 11; 116:25; 124:25; 125:4, 6, 16, 25; 126:8; 127:9; 128:2, 12, 21, 23; 129:12; 158:14, 15, 25; 159:2, 7, 9; 175:24; 176:8; 195:14, 19; 197:15, 17, 19; 199:2, 15, 21; 213:4, 12, 12; 234:24; 260:25; 276:15, 16

**consulting** 30:5, 7, 10

**contact** 70:3; 162:11

**contained** 254:14

**container** 7:11

**contains** 268:19

**context** 67:24; 274:13

**contingent** 99:22; 100:10

**continue** 28:10; 116:9; 39:8; 40:10, 22; 46:14

**continuing** 107:8

**continuum** 86:19

**Contract** 35:16; 63:23; 69:7, 12, 22; 99:5; 100:5; 121:3, 25; 123:7, 13, 19;

Garry Braverman
Vol. 1, July 11, 2012

Triarch Architectural Services, P.C. v.
Medallion Inc., et al.

129:3, 24; 130:3, 24;
132:11, 18, 21; 133:9;
137:20; 138:15; 173:11,
12; 174:24; 181:3; 200:8;
206:21; 207:8; 213:20;
232:19; 233:2; 69:14, 18
**contractor** 104:19;
114:21, 23; 115:4, 15, 18,
25; 116:13; 117:14, 17;
125:4, 19, 24; 126:4;
128:7; 177:24; 178:5, 13;
32:8, 15, 18; 41:14;
114:16; 116:24; 117:3, 21;
276:19
**contrary** 82:4; 147:16
**conversation** 18:23;
19:22; 21:2, 5, 9, 19, 22;
22:6; 57:7, 12; 63:4;
105:22; 126:25; 127:3;
158:5, 18; 275:17; 18:13;
21:11; 78:4; 113:11; 127:5
**conversationally** 8:13
**convicted** 261:25; 262:4,
17; 263:2, 11
**conviction** 263:17;
264:17, 24; 265:24
**copied** 239:2; 241:17;
242:18; 244:18; 251:17,
21, 24; 258:14, 21; 259:9,
13
**copies** 44:2; 90:21;
184:20; 242:16
**copy** 43:23; 58:23;
105:24; 112:14; 140:18;
191:9; 211:11; 233:19, 24;
234:6, 12, 16; 240:12, 20,
22; 242:24; 252:15, 22;
272:15; 274:7
**ccpyright** 121:10
**Corelli** 65:14; 66:4, 16;
67:2; 68:10, 13; 69:2, 6;
70:13, 23; 71:12; 74:8;
77:8; 89:6, 11, 12, 15, 25;
113:2, 4, 19; 114:6;
123:22; 126:12, 19, 25;
133:17; 140:5, 23; 141:2,
21; 143:5, 15, 18; 144:14;
151:21; 155:9, 21; 156:3,
13; 157:22, 25; 158:17;
159:6; 163:9; 169:9, 20;
170:3, 8; 171:7; 172:11;
175:5; 178:20; 180:11;
183:17; 184:4, 5; 185:16;
193:11, 21, 22; 196:9;
212:19; 214:7; 216:8, 22;
218:4, 24; 253:18; 254:15;
255:6; 275:12; 78:3;
155:16; 157:13; 254:17;
255:23
**corner** 239:3
**corrected** 69:9; 123:23;
223:11
**corrections** 150:18;
151:5; 277:5
**correspondence**
158:18; 190:18, 20, 22
**cost** 63:24; 64:18; 65:3;
66:5, 7; 67:15; 128:23;

129:8; 175:24; 178:3, 9;
128:21
**counsel** 178:12; 267:5;
189:20
**counterclaims** 200:25
**Counterclaicms** 200:21
**countless** 158:22;
172:23
**countries** 7:20, 25; 68:5
**country** 14:19
**couple** 4:21; 16:12, 13;
47:12; 49:11; 52:3; 65:23;
92:9; 93:13, 15; 216:3
**course** 80:2; 111:5;
142:18; 149:3, 7, 10;
163:16; 191:3; 201:18;
246:12
**court** 8:6, 20; 37:20;
103:2; 200:25
**cover** 197:20; 267:17;
8:5; 11:13; 81:23; 197:21
**coverings** 86:22
**crash** 205:2
**crazy** 103:6
**create** 76:13; 84:12, 21,
25; 207:12; 242:14, 21;
85:6; 89:10; 121:13, 24;
125:11; 170:18; 178:11;
223:17; 237:23; 238:15;
239:4, 10; 240:21; 241:25;
243:9; 272:24; 173:23
**creating** 89:18
**creation** 124:22; 125:3,
12
**creative** 89:14, 19; 90:6,
13; 124:2; 174:6; 223:8
**creativity** 248:20; 249:4
**credit** 223:8
**crime** 262:2, 5, 9, 14
**criminal** 264:17, 23;
265:24
**critical** 206:10
**crucial** 70:2
**crystal-clear** 80:3; 154:3
**currency** 62:2
**current** 17:10
**currently** 29:21; 31:2
**custom-made** 275:23
**customer** 223:8
**Cyrillic** 111:11

# D

**D-37** 274:8
**D-E** 7:5
**D-E-J-A-N** 189:21
**daily** 127:4; 145:24;
187:12
**damages** 210:19; 211:7,
8
**dark** 85:24
**date** 24:18; 48:20; 117:4,
16; 119:22; 120:14, 25;
147:21, 22; 148:17;

153:13; 154:2; 179:15;
180:2; 184:2; 195:24;
197:9; 202:15; 203:5;
206:22; 218:18, 20;
238:21, 23; 267:8, 18, 24;
268:2, 4; 273:16; 44:19;
55:18; 59:6; 95:12;
111:19; 112:2; 113:2;
144:25; 161:3, 8; 179:15;
189:11, 22; 191:5; 214:13;
237:19; 253:10, 18; 257:2,
20; 272:3; 45:3; 121:3;
224:2, 3, 7, 8
**daughter** 23:25
**Day** 74:15; 92:6; 140:7, 8;
141:22; 148:19; 154:8;
160:2; 176:18; 207:13;
255:2, 2; 277:17
**days** 69:9; 70:22; 93:10,
12, 13; 117:19; 134:8, 10;
135:4; 144:15; 145:5;
196:22; 197:2, 7; 206:12,
14; 219:3; 231:12
**deadline** 24:7; 71:17;
100:5; 150:25; 154:16, 17;
151:11
**deal** 184:4; 221:10; 209:7
**December** 19:14, 20;
22:2; 28:6; 71:18; 73:3;
78:13; 88:10; 90:23;
99:16, 20; 100:4, 24;
101:10; 154:14; 155:5;
158:6; 160:13, 23, 23;
161:3, 8; 162:16; 163:21;
166:15; 182:17, 21, 24;
183:2, 4, 9; 184:8; 193:12,
20; 195:14, 23; 196:8;
197:16, 25; 198:7, 12, 18,
22; 199:19; 214:13, 15;
237:19, 20, 24; 272:3
**decent** 63:14; 83:21, 21,
22; 151:17
**decide** 19:5; 115:8, 12;
148:14; 152:25; 163:22;
216:4; 103:21; 152:14, 19;
179:8; 182:12; 183:20;
164:18
**decision** 20:16; 144:5;
155:11, 24; 182:15, 16, 20;
183:5, 13, 25; 188:4
**decorated** 188:8
**decorating** 23:14; 62:8,
12
**decoration** 38:21; 46:7;
52:19; 54:25; 59:5; 61:9;
74:9; 196:2; 232:8
**decorative** 132:3
**deed** 95:11, 12
**defendant** 5:6; 10:13;
206:9; 80:10; 87:7, 18;
119:7, 9; 138:21; 139:17;
140:17; 148:25; 149:16;
151:19; 157:19; 167:13;
171:6; 176:4; 223:20, 23;
236:18; 239:5; 241:3, 4;
245:17, 19; 247:25;
266:10; 267:5, 15; 268:15;
269:18; 270:8; 273:12

**Define** 13:15; 16:7; 75:7,
11, 11; 78:24; 86:16; 94:13
**definitely** 132:15;
152:23; 226:21, 22;
241:13; 244:8, 9
**definition** 86:25
**defraud** 263:12, 22;
264:5, 10
**degree** 14:23; 15:2, 8, 8,
11; 260:15, 18
**Deiss** 144:22, 24; 149:18;
161:8, 10; 164:15; 176:9;
161:12
**Dejan** 189:21
**delay** 103:13
**delete** 226:8; 227:15, 16,
20
**Deli** 25:22, 23, 25; 26:16,
24; 27:3
**deliver** 7:9; 70:9; 73:25;
6:23
**delivery** 73:2; 196:24, 25;
206:12
**demanding** 94:7
**demands** 192:11
**demurrage** 6:24; 7:3, 13
**department** 110:11, 15;
231:6, 11, 14; 235:4;
251:12; 273:23
**departure** 96:21
**depending** 115:6
**depictions** 269:13, 14
**deposed** 4:16, 21, 23;
5:10, 12, 15; 6:12; 8:3;
260:7
**deposit** 181:19; 214:19,
20
**Deposition** 4:10; 9:13;
12:21; 50:12; 56:5, 6;
57:13; 194:24; 229:24;
265:7, 21
**describe** 15:6; 17:14;
245:22; 18:14; 51:4;
199:3; 219:19; 220:3;
260:16
**Design** 46:23, 24; 47:5,
14; 52:9, 14; 77:13; 79:22;
82:4; 83:4; 89:3; 90:4;
91:12; 92:2; 93:14;
115:10; 124:16, 18, 20, 22;
125:6, 8, 9; 126:6, 7;
127:10, 11; 128:3, 9, 14;
129:11; 132:25; 133:4;
139:5, 8; 144:2, 5; 149:6,
9, 13; 150:14, 23; 151:10,
13; 158:8; 162:25; 163:4;
166:22; 171:4; 172:10;
173:21; 174:21; 192:13,
18; 193:2; 200:14, 17;
212:4; 213:3, 7, 7; 214:11,
25; 215:6; 217:5; 219:21;
242:9; 252:11; 256:11;
260:22; 269:3; 274:12, 14,
15; 126:5; 82:5; 84:7, 15;
85:3; 86:11, 12; 89:17;
91:18; 92:13; 93:5; 107:7;
117:8, 9, 13; 121:24;

122:14; 124:7; 139:25;
140:13; 151:7, 14; 160:22;
163:22; 165:10, 16, 20;
206:11, 16; 215:15;
238:11; 239:20; 240:5, 9;
241:17; 242:4, 5, 7, 14, 16,
18, 21, 24; 251:6, 18, 21,
24; 252:6, 15; 259:23;
276:3
**designated** 57:17
**designer** 22:22; 76:13;
85:12; 86:9, 10; 88:3; 90:5;
94:4; 104:12, 18; 114:17;
133:2; 186:12; 207:15;
208:10; 240:25; 103:23
**desire** 49:3; 57:13
**desist** 191:15, 16; 192:12
**destroy** 225:16
**detail** 85:17; 153:10;
241:11; 275:23; 85:14;
20:3; 265:24
**determination** 62:25
**determined** 62:21
**develop** 170:20; 150:9
**development** 124:20,
22, 25; 125:6, 7, 8, 16;
126:2, 7, 8; 127:9, 11;
128:2, 13, 14; 168:4;
169:24; 212:4; 213:3, 7;
215:6; 217:5
**difference** 62:18; 125:5
**different** 6:18; 66:22;
67:8; 75:14; 77:21, 24;
81:22; 86:21; 91:5;
127:20; 129:10; 130:19;
150:9; 192:18, 18; 229:2;
242:11, 12; 246:6, 7, 15;
250:8, 8; 267:18; 269:19
**difficult** 94:4, 11, 13;
99:24; 156:21
**digitally** 119:20
**dimensions** 75:14;
78:23; 84:6, 15; 85:2
**dining** 145:8; 146:21
**dinners** 20:24
**DIR** 262:9, 17; 263:11, 16,
21, 25; 264:5
**directly** 34:15; 185:16,
17; 212:19
**director** 40:5; 42:3, 10,
17; 34:20; 41:23
**disagree** 143:17, 19;
205:10
**disciplined** 261:22
**disconnect** 11:7
**discount** 68:19, 19
**discovery** 223:10
**discuss** 52:4; 94:13, 13;
102:9; 126:10; 156:2, 6, 9;
167:20; 168:22; 18:6, 12;
20:25; 22:3; 48:5, 6, 24;
49:16, 20; 63:15, 16, 18,
21; 74:14; 126:12; 141:6;
145:19; 148:11; 188:19,
21; 200:5; 205:13; 215:18;
65:25; 70:12; 102:23;
126:15; 168:9; 178:19;

Triarch Architectural Services, P.C. v.
Medallion Inc., et al.

Garry Braverman
Vol. 1, July 11, 2012

193:10; 271:15

**discussion** 20:21; 51:13;
97:23; 116:5; 126:14, 18;
133:10, 12; 148:24;
158:23; 166:4; 243:12

**display** 26:14; 250:23

**disproportionate**
174:22

**disputes** 235:9

**dissatisfaction** 158:10;
159:16; 167:21

**divorce** 157:4; 155:22

**doable** 71:11, 13; 193:21;
196:12

**document** 4:9; 12:14;
35:15; 36:5; 39:3, 9, 15;
40:11, 17, 23; 43:4, 9, 20;
46:9; 53:10; 55:13; 58:20;
61:17, 23; 79:15; 80:11,
19; 98:3; 108:6, 8; 111:9,
19, 25; 112:10, 11; 113:24;
114:2; 119:13; 138:17, 22,
25; 139:18; 140:19;
153:13, 14; 157:20, 23;
159:24; 161:2; 162:22;
163:19; 164:9, 11, 13;
166:10; 167:14; 176:5;
178:17; 186:7; 189:11;
191:4; 200:20; 201:3;
206:8; 207:23; 223:5, 21;
224:3, 8, 24; 236:19, 21;
241:9, 10; 243:15; 253:10,
20; 256:21, 23; 257:2, 5,
17; 259:17, 19; 260:4;
267:19; 13:4; 35:23, 24;
106:20; 114:24; 121:7, 12,
24; 136:16; 158:14, 15, 19;
159:2, 8, 10; 192:13, 15;
193:2; 209:4; 213:4, 12;
225:3, 6, 9, 10, 16; 228:3;
229:14; 230:6; 237:2, 12,
18; 239:4, 5, 9; 266:15

**dollars** 61:25; 62:22;
63:5, 15; 64:3, 10, 14, 19;
65:4; 66:14; 67:17; 142:6;
173:25; 177:20

**domestically** 70:25

**done** 20:12; 26:5; 56:21,
22; 70:25; 73:12, 18, 19,
25; 74:5; 79:21; 89:25;
100:24; 102:16; 125:18;
174:8; 175:9, 19; 197:11,
20, 21; 198:12, 13, 18, 21;
199:3, 19, 22; 202:19;
209:8; 216:6; 217:10;
219:20; 231:20; 237:14;
241:2, 5; 264:12; 265:5;
276:13

**door** 199:24, 25; 147:8;
160:10, 13; 198:4

**door-to-door** 103:17

**doorway** 250:18

**doubt** 165:22; 204:15,
16, 17, 18

**down** 8:7; 37:20; 58:7;
64:5; 66:21; 67:5; 92:22,
25; 93:22, 24; 97:5; 138:9;
193:7; 227:12; 242:9, 10;

**downtown** 105:24

**dozen** 63:8; 170:25;
207:13; 226:4; 227:25;
271:11

**draft** 108:18; 199:5, 7;
120:3

**drapes** 198:17

**draw** 74:24; 130:5; 136:3,
4; 213:8, 8; 76:17; 145:2;
214:21; 234:12; 272:25

**drawings** 70:19; 71:15;
74:21, 22, 25; 75:3, 4, 8,
12, 13, 17, 19, 22, 24;
76:2, 7, 11, 20; 77:9, 12,
17; 78:15; 79:16; 84:5, 14;
85:2, 7; 106:21; 107:7;
114:25; 121:24; 122:14;
124:23; 125:3, 13; 128:7;
140:7, 8, 14; 145:6; 147:4,
24; 150:19; 160:21;
161:20, 22; 162:2, 4, 9, 17;
163:10, 23; 164:17, 18, 24;
166:14; 173:23; 184:21;
191:17; 192:4; 233:20, 24;
234:7, 16; 236:13, 14, 15;
238:10; 239:21; 240:4, 5,
13; 241:2; 242:8; 243:21,
23; 252:22; 256:14; 257:6;
258:15, 22, 25; 259:6, 10,
23; 266:18, 20; 267:9, 12,
16; 268:19; 272:3; 274:3;
276:4, 10

**due** 138:10

**duly** 4:5

**during** 13:4; 18:12;
19:22; 20:20; 21:19, 21;
51:14, 14; 59:19; 97:5, 6;
112:14; 155:22; 271:5

**E**

**e-mail** 45:18; 46:16, 22;
52:8; 53:18; 112:22, 24,
25; 113:3, 9, 13, 17, 18;
114:5; 139:2; 140:22;
141:3, 23; 142:24; 143:3,
4, 6; 144:3, 6, 16, 21, 21;
146:25; 147:14; 149:17;
151:20; 154:13; 158:2, 9,
18; 161:6, 7, 7, 9, 9, 11, 12;
164:4, 7, 15, 22; 167:17;
170:8; 171:7, 9, 10;
180:11; 182:4, 9, 22, 23,
25; 183:2; 189:18, 19, 19,
23, 25; 190:10; 218:2, 8;
228:5, 10, 11, 16, 18, 19,
23, 25; 229:5, 21; 230:2;
253:17, 17, 23; 254:7, 13;
255:8, 24; 272:16; 274:9,
10; 185:13; 168:8; 170:8;
184:9; 208:19; 225:19, 19,
22; 226:2, 6; 227:3, 9, 15,
15, 23; 228:15; 229:7, 15;
230:3

**Earlier** 53:17, 21; 96:8;
113:6, 17, 18; 116:5, 10;
148:25; 149:20; 176:21;

177:7; 193:6, 9; 195:5;
218:3; 220:3, 4; 231:19;
260:6; 265:23; 266:11;
272:18

**early** 73:2; 90:23; 123:5;
172:2; 176:18; 210:4

**easier** 8:17

**East** 4:3; 25:23; 81:8, 8, 9

**easy** 94:3; 101:12

**edge** 246:19

**edit** 127:7; 69:11; 120:2;
150:19; 151:6

**education** 260:18

**effect** 92:25; 93:19, 22;
275:11, 14

**effective** 60:5; 211:2

**effort** 128:8, 13; 185:7;
204:9; 229:7; 230:5

**eight** 203:11, 11; 265:16

**either** 7:8; 85:24; 134:6;
143:9; 190:2; 237:8;
248:16

**elaborate** 86:12, 16, 17,
18, 20, 23, 24, 24

**electrical** 206:13

**elements** 91:11

**elevation** 160:17; 147:7;
160:9, 12, 15

**else** 18:4; 20:18; 21:18;
27:17; 34:10; 38:11; 48:3;
51:17; 90:4; 93:18, 21;
110:15; 120:7; 133:18;
151:5; 168:21; 185:9;
198:11, 13; 205:25;
212:11; 213:16; 232:7;
233:12, 24; 234:11;
235:10; 239:11; 242:19,
25; 255:3; 264:9; 275:18,
20; 89:3; 243:4

**elsewhere** 21:17

**employed** 13:10; 29:21

**employees** 31:25; 32:4;
41:13

**end** 24:19, 24; 103:9;
104:9; 109:24; 114:6;
140:5; 148:19; 155:4;
172:12; 174:10; 203:6;
257:19, 21; 275:7

**engineer** 14:25; 261:10,
12; 14:16, 18; 235:6

**English** 50:2, 8, 12, 19,
21, 23

**enough** 85:17; 124:2;
144:8; 203:13; 207:17, 17;
215:22

**enter** 111:13; 98:11;
99:15; 100:22; 173:10, 11

**entertaining** 152:24

**entire** 63:24; 69:5; 75:5;
77:2; 96:15; 129:8;
175:14; 198:2, 2

**entirely** 18:19; 99:22;
246:8

**entities** 53:14

**entitled** 4:10; 35:16; 39:3;
124:10, 12; 129:7, 16;

130:15; 131:5; 171:12, 20;
174:23; 200:21; 212:6;
213:20; 214:16, 25; 215:4,
9, 11; 223:23; 268:15

**entity** 34:16; 53:14

**equal** 15:13

**equipment** 7:12; 26:13,
14

**error** 223:11

**essentially** 90:21

**Essex** 29:24; 30:7, 21

**estate** 168:4, 10, 12;
169:24; 205:24; 206:6

**estimate** 63:17; 106:17;
115:11; 175:24; 176:8;
66:22

**euros** 61:25

**even** 6:5; 8:14; 25:9;
70:14; 90:9; 103:5;
159:17; 160:24; 172:7;
190:24, 24, 25; 195:4;
196:15; 197:8; 213:13;
227:19; 229:21; 246:10,
14; 255:21

**event** 121:25; 130:22;
131:14, 15, 19; 135:21;
136:6, 20; 137:19; 138:14;
10:3, 6; 11:4, 16; 16:4;
156:15

**Eventually** 144:4

**everyone** 8:17; 118:12

**evidence** 96:18

**ex-father-in-law** 65:22,
24; 68:16

**exact** 78:23; 243:20

**exactly** 17:9; 19:4; 20:23;
28:4; 37:8; 49:18; 56:12;
71:12; 89:11; 98:24; 99:4;
102:14; 103:15, 24; 104:8;
113:14, 22; 141:7; 148:17;
150:3, 6; 153:19; 208:17;
212:5

**EXAMINATION** 4:12;
266:5

**examined** 4:6

**example** 149:17; 244:24;
246:9

**exceeded** 66:23; 140:24

**exceeding** 124:13

**except** 60:6

**exception** 198:3

**exchange** 167:17; 78:4,
7

**exciting** 168:18

**exclusive** 106:23

**Excuse** 15:16; 19:19;
36:13; 52:12; 54:23;
104:20; 112:5; 113:16;
149:4; 166:8; 178:12;
186:4, 16; 220:17; 243:22;
250:5; 253:21; 216:10

**executed** 106:25; 107:21

**Exhibit** 4:9; 12:12, 13;
35:15, 19; 39:2, 7, 15, 19,
22, 23; 40:17; 43:4, 20;
44:5; 46:9, 13, 16; 52:7;

53:9; 55:12; 57:8; 61:12,
16; 80:10, 17; 82:12;
83:24; 84:2, 13; 85:15;
86:12; 87:8, 10, 18, 19;
95:10; 97:25; 106:14, 18;
108:5; 111:6, 8; 112:12,
14, 21, 24; 119:8, 9;
138:21; 139:17; 140:17;
142:24; 143:3; 144:6, 20;
148:25; 149:17; 151:19;
153:9, 10; 154:13; 157:19;
160:5; 161:2, 6; 162:21;
163:11, 18; 166:8, 9;
167:13; 168:7; 171:6;
175:5; 176:4; 178:16;
179:12; 180:10, 21, 23;
181:6, 7, 7, 9, 14; 186:6;
189:10, 18; 191:4, 11, 23;
192:22; 195:10; 200:20,
24; 211:10, 13; 223:20, 23,
25; 236:18; 239:5; 241:4,
4; 243:14; 244:11, 18;
245:8, 9, 12, 13, 17, 19;
248:2, 3; 250:12, 15, 16;
253:9, 13, 16; 254:5, 9, 14;
255:9; 256:20; 258:21;
259:16; 260:3; 266:10;
267:5, 15, 15; 268:10, 15;
269:18; 270:8; 272:2, 14;
273:12; 275:9; 245:14

**existing** 90:3

**expand** 90:3

**expect** 205:24

**expediting** 235:3, 5

**expeditiously** 99:10

**expenses** 46:6; 213:25;
217:16

**experience** 23:13; 25:10,
13, 15, 16; 72:14; 203:11;
215:25; 207:14

**expert** 82:4; 175:4

**explain** 66:25; 144:14;
255:5; 104:2; 254:25;
112:7

**explanation** 60:14;
254:16, 17, 21

**exported** 7:22, 23

**express** 49:2; 78:8;
167:21; 195:12; 82:23, 24;
184:9; 216:18; 158:10

**extend** 6:5

**extensive** 26:4

**extensively** 116:10

**extent** 15:9

**extra** 117:25; 140:18;
172:13

**eyes** 9:19

**F**

**F-I-L-I-P** 53:19

**fact** 63:20; 87:8; 89:2;
90:22; 95:19; 147:2;
151:8; 154:4; 155:9, 21;
156:3, 6, 9, 12; 159:16;
179:9; 188:18; 208:9;
213:6; 241:17; 257:16;

**Garry Braverman**
**Vol. 1, July 11, 2012**

Triarch Architectural Services, P.C. v.
Medallion Inc., et al.

56:19; 96:18
**factor** 155:11
**factories** 70:4
**factors** 204:23
**factory** 67:25
**failed** 233:10, 16; 235:16
**fails** 134:11; 135:5;
138:14
**failure** 210:19; 211:4
**fairly** 188:24
**fall** 95:5
**false** 172:18; 192:6;
193:4; 197:16; 208:2, 4
**familiar** 15:7; 42:7, 14;
178:13; 270:23; 273:13
**familiarize** 114:9
**family** 16:14; 68:11, 12,
14, 19; 109:8, 18, 21
**family-based** 68:19
**far** 44:16; 127:9; 135:24;
147:24; 150:12; 151:25;
181:14; 209:9; 246:23
**fashion** 101:8
**father** 155:16
**favor** 13:18; 27:22; 50:7
**February** 20:7; 23:21;
24:6; 28:2; 60:3; 95:13;
123:5; 194:3, 9; 195:2;
201:13; 202:17; 203:2;
204:6; 208:23; 209:13;
211:2; 219:6; 220:8;
257:2, 13, 21, 22, 25;
258:6
**Federal** 9:14
**fee** 66:4, 17; 67:10; 69:21;
128:22; 129:15; 171:20;
173:4; 174:14, 23; 175:7
**feed** 70:17
**feel** 60:24; 61:2; 227:20;
55:20; 193:23
**fees** 133:19; 215:17
**fellow** 70:3
**felt** 184:10; 199:10
**few** 18:8; 21:13; 47:15;
51:23; 65:19; 69:9; 78:4;
104:5; 117:19; 123:21;
144:15; 145:5; 155:6;
158:10; 186:21; 202:11;
231:12
**few-minute** 52:22
**fifth** 138:9
**fight** 57:18
**figure** 211:3; 271:9
**figuring** 11:24
**file** 164:21; 268:16; 225:5;
231:12; 226:24; 227:2
**filing** 102:5; 231:15, 14
**Filip** 51:20; 53:17, 18, 19,
19, 20; 89:8, 10; 90:12;
149:19; 161:8, 10, 14, 15,
19; 162:8; 185:12, 25;
232:6; 243:9, 22; 247:21;
249:19; 251:21, 25;
274:21; 67:24; 72:13;
89:14; 90:21; 164:15;

245:24; 246:18; 247:15;
248:2, 5; 249:10, 23;
251:3, 7
**final** 70:14; 116:22;
117:7, 7, 9, 12; 139:2;
161:22; 163:23; 164:16;
213:9
**finally** 166:14
**financial** 49:23; 54:17
**find** 11:14; 22:22; 59:12;
103:22, 23; 204:9; 225:22
**fine** 12:9; 60:23; 79:13,
14; 135:11; 137:9; 166:2;
217:16; 229:25; 271:3
**finish** 8:9, 11; 20:4;
24:10, 16, 17, 23; 94:14;
101:17; 115:10; 196:7;
273:21; 275:19; 124:10;
193:19
**firm** 21:17; 22:22; 86:10;
105:7; 189:20, 20
**first** 4:5; 5:15; 14:8;
16:25; 22:17; 24:5; 35:22;
46:15; 49:8; 59:24; 78:11;
83:25; 114:7; 117:12;
126:21; 127:8, 18; 136:5;
137:13; 144:23; 145:2, 3;
147:4; 159:10; 167:7;
174:21; 187:8; 190:3;
192:10, 21; 193:10;
201:11; 202:24; 211:21;
214:24; 224:3; 230:10, 13;
231:5, 10; 241:6; 267:7;
276:2
**fit** 67:16; 71:4; 116:4
**five** 37:18; 51:11; 69:16;
71:4; 96:4, 14; 97:5; 99:6;
116:18; 117:21; 129:10;
200:12; 207:10; 227:3;
228:13, 16, 23; 246:24
**five-minute** 253:5
**five-year** 6:6
**fixtures** 132:3
**flexible** 70:15
**flip** 243:17; 270:9
**floor** 22:11, 15; 43:12;
73:19; 84:8, 16; 102:17;
108:21; 241:25; 73:23;
115:5; 197:20; 198:8
**focus** 275:18; 126:8
**folder** 226:11, 15;
227:10, 13, 20, 11
**follow** 267:10; 147:6;
159:25; 173:18; 216:14;
255:2; 4:7; 119:5; 130:17
**foregoing** 277:3
**forget** 268:20
**forgetting** 197:9; 239:2
**forgot** 165:20
**form** 91:22; 105:4;
107:15; 174:16; 188:16;
34:25; 35:3, 5; 143:22
**former** 68:4
**forth** 60:10; 135:2
**forward** 114:9; 228:19,
25

**forwarder** 6:15, 17, 19,
22
**found** 59:15; 102:13, 17;
134:4; 193:18
**four** 6:2; 18:2; 26:2; 67:7;
71:4; 83:25; 84:12;
116:18; 117:2, 21; 130:18;
175:13; 181:15; 207:21;
215:24; 228:13, 16, 23
**fourth** 138:8
**foyer** 81:3; 84:2, 13;
145:7, 11; 146:21; 244:12,
18; 245:14, 17, 18; 247:22;
249:13
**fragment** 130:14
**frame** 59:8; 71:5, 8;
73:20; 90:18; 94:22;
103:4; 104:8; 121:5;
234:2, 4; 60:6
**frank** 81:23
**fraud** 262:17, 22
**free** 136:15
**Freedom** 44:13, 17, 25;
45:5
**freight** 6:15, 16, 19, 21;
7:9, 12; 72:7
**French** 7:5, 7
**frequent** 93:9
**friend** 13:18, 21; 15:21;
20:3; 27:22; 50:4; 59:15;
156:23, 25; 194:7, 10;
202:6; 15:24; 16:6, 7;
17:14; 189:3; 210:2, 4
**front** 67:15; 99:23;
196:10; 267:24
**full** 57:12
**full-size** 266:18; 267:2
**fully** 122:12
**funds** 43:14, 17
**furnished** 206:10
**furnishing** 204:9; 198:15
**furniture** 131:22, 24;
198:17
**further** 57:11; 119:5;
265:6
**future** 146:4

# G

**G-A-U-T-H-I-E-R** 46:17
**gap** 208:22
**Garry** 161:11; 277:11
**Garth** 98:8; 100:6;
103:25; 104:4; 108:13;
162:25; 189:20; 208:20;
240:12, 20; 241:2, 2;
259:7; 266:8; 271:7, 10,
21; 273:3; 99:21
**Gas** 14:20; 15:15; 30:23;
260:16
**Gauthier** 46:17
**gave** 89:7; 104:4; 106:5;
110:15; 161:11; 162:12;
184:13; 191:8; 192:15;
227:8

**general** 92:4; 104:18;
114:15, 21, 23; 115:14, 18,
25; 116:13, 23; 117:3, 14,
17, 21; 125:4, 19, 24;
126:3; 128:7; 177:24;
178:5, 12, 12; 236:2;
270:9; 271:24
**generally** 45:17
**generate** 78:16, 21
**George** 7:19
**given** 60:14, 15; 244:21,
24; 245:6, 7; 260:7;
266:17, 20, 22, 25
**giving** 134:8, 24; 177:25;
223:8; 246:8; 268:7; 270:4
**glance** 222:25
**goal** 25:2; 81:24; 48:10
**goes** 35:20; 40:21;
119:12; 173:21; 196:5;
214:21
**Good** 4:14, 15; 17:14;
50:11; 63:10; 94:9;
106:17; 112:13; 118:11;
142:16, 17; 164:24; 189:3;
215:21; 248:18; 265:4;
6:23; 7:21, 22, 23; 54:11;
73:7; 235:10
**government** 44:24
**graduate** 14:21; 15:14, 6
**gray** 79:5, 25
**great** 50:3; 223:3
**greater** 83:5
**ground** 8:4
**Group** 46:3, 5; 52:16, 18
**growing** 92:6
**guess** 34:11; 54:14;
62:13; 81:23; 82:25;
94:22; 109:2, 4, 10, 11, 13;
111:16; 130:25; 146:25;
153:23; 173:9; 186:11;
210:22; 219:13; 257:7
**guest** 177:19
**guilty** 263:21
**guy** 51:20; 63:9; 64:22;
97:19; 202:3
**guys** 44:2

# H

**half** 26:18; 95:17, 20;
96:13, 16; 154:16, 18;
190:19; 271:11
**hall** 163:22; 164:17, 24;
165:2; 249:9
**hallway** 83:8; 198:5;
249:9
**Hamptons** 59:25; 65:23
**hand** 12:11; 35:18; 39:6;
40:20; 43:7; 44:4; 46:12;
53:8; 88:19; 112:23;
119:8; 144:19; 161:5;
166:8; 191:7; 200:23;
53:4; 55:11; 61:15; 97:24;
108:4; 111:7; 138:20;
139:16; 140:16; 151:18;

153:8; 157:18; 162:20;
163:17; 167:12; 171:5;
176:3; 178:15; 179:11;
186:4, 5; 189:17; 195:9;
211:9; 236:17; 253:15;
254:3; 256:19; 260:2
**handshake** 209:9, 9
**handwriting** 274:9
**hang** 149:22
**happen** 275:25; 11:17;
96:20; 97:13; 154:24;
203:24; 204:3; 216:12, 13;
230:8; 239:13
**happy** 136:17; 173:7
**hard** 44:23; 63:20
**hard-and-fast** 177:3
**hard-line** 9:16
**Hardy** 109:15
**Haroutounian** 41:24;
42:5
**Hayden** 90:18; 100:22;
101:19, 21, 23, 25; 102:9;
104:10, 21; 106:13; 107:4,
8, 9, 20; 108:15; 163:12;
186:11; 203:14; 208:20;
232:5; 240:12; 241:5, 18,
24; 252:22; 259:7, 9;
266:8; 271:7, 10; 272:4;
273:2, 3, 18; 162:25;
189:20
**head** 8:20, 21; 37:21
**hear** 210:13; 42:24; 46:2,
19, 24
**heavily** 59:12, 22, 25
**held** 97:23; 148:24;
164:4; 243:12; 261:7
**help** 22:21; 30:17, 18, 19;
38:21; 118:4; 125:22;
59:12; 22:4
**helpful** 60:6; 110:20
**hereby** 277:3
**herein** 277:2
**Hermitage** 36:15, 19, 22;
37:2; 39:11
**hesitate** 62:17; 97:2
**high** 103:20
**higher** 260:18
**highly** 90:5
**hindsight** 188:2
**hire** 115:18; 116:13;
117:10, 14; 118:4; 47:8,
11; 59:23; 74:12; 75:18;
89:11, 12; 90:3, 4; 101:23;
114:17; 115:15, 24; 117:5;
133:2; 172:3; 187:4;
196:10; 208:8, 16, 18;
240:24; 276:19
**hiring** 89:15; 117:17
**historically** 100:13
**history** 210:8
**hold** 225:6; 261:4; 7:11
**Holdings** 54:8
**holidays** 73:4
**honesty** 262:12
**hope** 50:10; 265:13

Triarch Architectural Services, P.C. v.
Medallion Inc., et al.

Garry Braverman
Vol. 1, July 11, 2012

hopefully 275:3
hopelessly 148:4, 9
hoping 182:17
host 55:25; 56:16
hour 173:25; 7:10; 29:19; 65:23; 93:15; 170:25; 172:2, 24; 265:16
hourly 130:17, 18
house 65:24
huge 6:24
hundred 50:16; 64:8; 66:15; 115:14; 214:11; 227:18

**I**

idea 9:18; 31:18; 35:4; 50:4; 55:15; 61:19, 24; 62:6; 73:14; 90:2, 16; 149:21; 150:5, 8; 169:20; 190:5; 222:10; 230:8; 90:3, 7, 14, 20, 25; 91:2, 6; 149:6; 150:7, 7; 169:8; 243:5, 6, 9; 248:24
ideal 195:5; 197:8
ideally 139:5
identification 4:11; 35:17; 39:5, 17; 40:19; 43:6, 22; 46:11; 112:22; 142:25; 144:7; 161:4; 189:12; 191:6; 200:22; 253:11
identify 250:11
ignored 170:16, 16
II 125:14
Immediately 27:25; 118:2; 142:19; 192:12; 212:2, 16; 231:8
imminent 165:24
implying 56:13
import 7:20
import-export 6:14
important 8:7, 9, 11; 226:9, 10; 236:6
impossible 100:14, 15, 16, 17, 18; 133:6, 8; 165:18; 196:11
impression 218:16
improve 91:11
improvements 182:18
impulse 8:15
in-house 116:18; 177:11
in-person 51:22; 185:18
inaccurate 195:16
inbox 227:10
Inc 4:11; 9:10, 20, 22, 24; 10:8, 11, 12, 16, 21, 23; 12:6, 8, 14; 13:11, 14, 17; 16:9; 28:7, 10; 39:13; 40:5, 14; 42:3, 7, 13, 17, 22; 192:5
include 128:22; 199:2; 248:12; 100:5; 130:11; 131:10; 132:11

including 59:24; 121:10; 195:13; 196:24; 198:25; 199:15; 229:14
incorporate 239:15, 19; 240:3; 34:22; 41:2; 240:9
incorrectly 112:11
increased 205:6
increases 205:9
incurring 215:16
independent 32:8, 15, 18; 41:14; 90:5
index 201:2
indicate 189:25; 172:6; 222:14; 223:10; 147:2
indication 156:16
individually 80:15
industries 30:9
industry 14:20
info 162:11
Information 44:13, 17; 45:2, 6; 57:15; 74:16; 82:24; 110:10; 192:23; 196:18; 197:10; 209:15
informed 63:11; 114:17; 145:24
initial 64:4; 70:17; 126:25; 127:3; 139:5, 22, 25; 140:12; 149:14; 174:15; 181:18; 204:3; 207:18; 218:19; 231:15; 274:12, 15
Initially 22:3; 63:21; 65:21; 89:6, 24; 102:25; 126:15; 150:14; 214:19; 241:25; 243:8
inquiry 44:14; 45:6
install 72:6, 8, 10; 73:15, 18; 74:2; 73:13; 197:22
installation 71:20, 21; 73:7; 197:4; 206:13
instance 154:7
Instead 93:15; 102:7
Institute 14:20; 15:15; 260:17
instruct 162:8; 233:23; 234:6, 11; 162:16; 184:12; 234:16; 257:10; 252:16, 23
instruction 184:14; 199:6
instruments 106:22; 121:21
insult 238:23
intended 150:14
intends 38:20
intention 104:15; 177:14; 196:7
interest 138:13; 168:11, 25; 188:14; 20:5; 49:7; 150:22; 169:7, 15, 19, 23, 25; 170:5
Interestingly 144:8
International 42:6, 13
interpretation 126:20
interrupt 8:8; 137:15

into 38:15; 45:12; 51:5; 67:17; 78:12; 94:24; 95:5; 98:11; 99:15; 100:22; 110:7; 111:14; 170:2; 173:10, 11; 187:16; 196:13; 201:13; 202:14; 209:13; 213:6; 217:11; 221:12, 21; 222:6, 6, 10, 15; 227:11; 240:9; 250:19; 265:23; 276:9
intricate 86:22
introduce 271:19; 103:25; 271:22
introduction 271:24
invested 35:12
invoice 59:3; 140:24; 141:10, 16, 19; 142:2, 3, 22; 158:13; 171:8; 178:20, 24; 179:3, 8, 13, 14, 16, 18; 180:6, 9, 15, 18, 22, 24; 181:5, 8; 182:3, 6; 211:17, 20, 22; 212:10, 12, 13, 17; 214:5, 13; 216:24; 217:2, 4, 13; 218:7, 15, 23; 219:6, 10, 15; 220:4, 4, 11, 14, 19, 21, 23, 24; 221:3, 17; 223:14; 253:24; 254:8, 15, 18; 255:9, 16; 256:8; 235:17; 54:11; 55:17; 142:5; 151:25; 180:25; 181:11, 15; 211:10; 219:20; 220:15, 17; 223:16; 235:19, 22
involve 70:24; 125:11; 21:2; 22:17; 26:20, 23; 27:2; 29:10, 13; 30:13, 16; 31:2, 17; 38:2, 23; 44:21; 47:6, 10; 48:12, 14; 49:7; 51:16; 55:19; 56:24; 59:12, 19, 23; 60:2; 69:2; 79:23; 85:5; 97:7, 9; 115:20; 126:10; 127:23; 187:11; 190:7, 24; 200:3; 229:13; 231:2; 234:3, 5, 11, 15; 244:9; 260:11, 12; 271:6, 17; 70:18; 86:18
involvement 31:6; 54:20, 24; 55:22; 59:8, 8; 115:24; 163:3; 173:20; 260:21, 24
Irrelevant 169:13; 226:9; 227:21
isolation 136:11
ISRAEL 9:15, 25; 10:25; 12:5, 9, 16; 17:20; 23:3; 26:6, 9; 32:9, 20; 33:7, 9, 16, 18; 34:2, 11, 23; 35:6, 13; 36:3; 41:16; 43:3; 48:21; 49:5; 52:21; 54:14, 22; 55:2; 56:3, 9; 57:4, 9, 10, 22, 25; 58:7, 9, 12, 15, 17, 23; 62:13; 66:6; 67:22; 69:3; 78:18; 82:20; 84:17; 85:8; 86:14; 87:2; 89:21; 91:23; 92:3, 18; 93:7, 23; 94:6, 12, 17, 25; 95:7, 18, 21; 96:17; 97:10; 98:2, 4, 18, 22; 101:2; 105:5; 106:11; 107:10, 14; 108:7; 109:3, 11, 25; 110:12, 22;

111:16; 112:16; 117:6; 120:4, 15, 22; 121:14; 122:2, 7, 11, 16, 21; 123:8, 14, 20; 126:11, 22; 127:14; 128:15, 24; 129:5, 17, 19; 130:25; 132:13, 22; 134:5, 19; 135:6, 18, 25; 136:10, 24; 137:4, 6, 12, 16, 23; 138:16; 142:13, 18; 144:23; 147:13; 148:6, 16, 22; 149:11; 150:16, 21; 152:3, 16, 21; 153:3, 18, 22; 154:10; 155:2; 156:24; 157:24; 161:24; 162:7; 163:25; 165:12, 21, 23; 166:23; 168:15; 169:4, 10, 13, 21; 170:4; 173:16; 174:17, 25; 175:10; 177:6; 179:17, 21, 25; 180:12; 181:10; 182:5; 183:22; 184:4; 186:8; 189:16; 191:9, 10, 13, 20; 192:7; 194:23; 210:21; 218:10; 219:12; 220:5; 221:6, 14; 222:21, 23; 223:2; 224:17; 225:8, 12, 14; 226:3, 21, 24; 227:5; 229:6, 9, 19; 230:4; 231:3; 232:21; 233:21; 235:12; 237:25; 239:7, 22; 240:6, 15; 241:6, 19; 242:20; 243:2, 7; 248:9, 13; 249:14; 250:4; 251:8; 252:8, 18, 25; 256:2; 257:7, 15, 24; 258:5, 16, 19, 23; 262:10, 15, 20, 24; 263:8, 15, 20, 23; 264:3, 7, 11, 18; 265:4, 8, 15, 18; 273:5, 8; 276:15
issue 34:4; 36:10; 40:15; 45:21, 24; 53:15; 77:21; 100:9; 109:21; 183:13; 221:4; 242:9; 55:25; 56:16; 144:5; 265:20
Italian 67:25; 68:7; 70:3, 9; 162:4, 9, 17; 189:13; 190:14; 196:18, 22; 197:10, 19; 206:10, 16, 23; 207:4; 259:23; 70:9, 20, 24; 71:6, 16; 72:11, 21, 25; 73:8, 12, 15; 74:17, 17; 75:6; 76:3, 3, 8, 8, 22; 116:8; 139:4; 146:7, 9; 158:16; 197:18; 198:3; 199:22, 22; 275:21; 276:5
Italy 67:14, 20; 70:17; 71:19; 72:5, 7; 161:21, 23; 190:12; 275:20
item 214:5; 61:7, 13; 147:5
ITG 7:19, 20

**J**

J-E-N-D-R-E-T-Z-K-I 232:3
James 191:12
January 20:6; 28:6; 71:20; 73:2, 5; 74:6, 10; 123:5; 153:17, 21; 154:6,

111:16; 112:16; 117:6; 120:4, 15, 22; 121:14; 122:2, 7, 11, 16, 21; 123:8, 14, 20; 126:11, 22; 127:14; 128:15, 24; 129:5, 17, 19; 130:25; 132:13, 22; 134:5, 19; 135:6, 18, 25; 136:10, 24; 137:4, 6, 12, 16, 23; 138:16; 142:13, 18; 144:23; 147:13; 148:6, 16, 22; 149:11; 150:16, 21; 152:3, 16, 21; 153:3, 18, 22; 154:10; 155:2; 156:24; 157:24; 161:24; 162:7; 163:25; 165:12, 21, 23; 166:23; 168:15; 169:4, 10, 13, 21; 170:4; 173:16; 174:17, 25; 175:10; 177:6; 179:17, 21, 25; 180:12; 181:10; 182:5; 183:22; 184:4; 186:8; 189:16; 191:9, 10, 13, 20; 192:7; 194:23; 210:21; 218:10; 219:12; 220:5; 221:6, 14; 222:21, 23; 223:2; 224:17; 225:8, 12, 14; 226:3, 21, 24; 227:5; 229:6, 9, 19; 230:4; 231:3; 232:21; 233:21; 235:12; 237:25; 239:7, 22; 240:6, 15; 241:6, 19; 242:20; 243:2, 7; 248:9, 13; 249:14; 250:4; 251:8; 252:8, 18, 25; 256:2; 257:7, 15, 24; 258:5, 16, 19, 23; 262:10, 15, 20, 24; 263:8, 15, 20, 23; 264:3, 7, 11, 18; 265:4, 8, 15, 18; 273:5, 8; 276:15
19, 22, 23; 171:8, 19; 172:3; 178:21; 179:15, 19; 180:7, 11; 182:23; 183:15; 184:14; 187:23; 195:7, 21, 25; 197:12; 199:14, 15; 200:16; 208:23; 217:24; 218:3, 6, 6; 219:3; 257:19, 21; 258:2, 7; 268:16
Jendretzki 231:25
job 21:17; 50:11; 73:23; 75:2; 102:3, 4; 114:16; 133:6
John-Pierre 39:19; 41:23
judge 96:22; 172:19; 232:23; 263:9; 265:3, 25
Julie 157:13
July 101:16; 104:7; 109:24; 110:8; 163:8; 186:14, 18; 187:8, 24; 191:5, 12; 203:20; 208:11, 22, 23
June 189:11; 203:20; 230:12; 273:16

**K**

Katherine 46:23, 24
Kathy 52:9, 13
Kaufman 157:13
keep 88:18; 143:12; 167:11; 187:19; 226:10; 227:9; 228:15
kept 114:16
kids 145:8, 11; 146:22
kind 6:12; 7:2; 14:23; 29:5; 33:14; 74:22; 268:6; 270:3
kitchen 26:14; 83:17, 20, 21
knew 15:22; 50:5; 66:12; 67:15; 70:2; 71:9, 10; 99:23; 100:13; 101:17; 193:11; 195:6, 19; 196:21; 201:16; 203:18; 271:19
knowing 64:21; 71:5; 78:22; 92:5; 259:9
knowledge 28:12; 68:4; 111:18; 165:4; 210:11; 251:16, 20, 23
knowledgeable 11:3
known 13:24; 14:5; 16:22
knows 11:23, 25; 94:8

**L**

labeled 106:19
Labor 74:15; 115:6
landlord 5:17, 20, 23
language 173:10
large 250:18
last 8:3; 12:23; 46:17; 65:12; 92:9; 114:8; 134:3, 6; 145:4; 191:25; 192:22; 194:13, 22, 23; 207:23; 250:16

**late** 95:5; 123:5; 147:5, 6; 154:19; 203:3

**later** 21:13; 47:9; 143:9; 144:15; 151:23; 160:2; 168:22; 202:15

**latest** 74:7; 143:10

**law** 9:20; 44:13, 18; 45:2, 6; 121:9

**laws** 41:2

**lawsuit** 11:13; 16:5; 22:11; 225:5

**lawyer** 8:4; 33:8; 44:9; 5:12; 33:5, 10, 12, 19

**layout** 102:16; 266:24; 131:22, 24

**lead** 196:5

**learn** 50:18, 21; 92:6; 221:20; 201:12, 15

**lease** 5:22, 24; 6:5

**least** 4:24; 16:13; 63:8; 86:17, 19; 186:3; 196:22; 197:5, 6; 229:13; 271:11

**leather** 76:15

**leave** 75:9

**led** 83:24

**left** 51:12; 60:3; 71:4; 188:18; 271:22

**legal** 32:10; 33:14; 107:14; 120:16, 23; 121:15; 123:15; 134:20; 135:19; 136:2, 13; 137:6, 8, 24, 25; 138:18; 192:8; 232:22

**lengthy** 165:25

**less** 17:17, 19; 26:3, 17; 29:20; 62:11; 86:11; 127:16; 134:8; 171:23; 172:8; 173:19; 174:9; 176:17; 204:22; 258:4

**letter** 69:9; 108:12, 16, 18, 21; 110:11, 23; 123:6; 148:19; 191:12, 15; 192:2, 9; 195:11; 200:11; 184:12

**level** 248:25; 249:3; 275:23

**Libracon** 54:8; 55:16; 111:13; 190:2; 232:6; 251:24, 25; 257:6, 11; 258:14; 259:2; 269:8, 12

**library** 81:15, 16; 83:9; 91:14; 145:8, 11; 146:22; 163:23; 164:17, 24; 165:2; 249:20, 23, 24; 250:6, 20, 24; 251:3, 4

**licensed** 261:12, 19

**licenses** 261:5, 8

**life** 156:19; 157:15

**light** 85:24; 132:3

**liked** 92:13

**likely** 20:12; 61:2; 210:15; 211:15

**likes** 63:10

**limit** 215:14

**limitation** 56:2; 66:24

**line** 63:20; 68:21; 104:8;

**M**

177:18, 19; 268:14; 116:18

**lion** 175:13, 14, 6, 8, 18

**listed** 222:19; 224:2, 7; 232:9

**literate** 170:17

**litigation** 260:13

**little** 8:2; 90:13; 95:16; 102:12; 269:11

**live** 24:2; 50:20; 55:4, 7; 87:15; 205:21; 222:3; 233:10, 16; 205:17; 221:25

**living** 81:6, 13; 83:9; 145:4, 11; 198:5; 247:22, 25; 248:2; 249:7, 8; 250:17, 19

**LLC** 29:24

**local** 125:18

**located** 138:5

**logistics** 30:12, 19

**long** 13:24; 14:5; 16:22; 25:24; 26:15; 43:8; 44:5; 71:21; 94:14; 96:5; 101:15, 21; 102:2; 106:14; 116:5, 23; 117:16; 147:22; 157:2; 188:12, 14; 203:15

**long-time** 157:2

**look** 38:18; 49:3; 59:7; 76:14; 77:2, 14; 79:5, 10; 85:13, 18, 21; 103:16; 104:18; 111:3; 133:5; 134:5; 136:11; 150:24; 192:18; 203:21; 216:3; 220:11, 23; 227:7; 243:16; 267:6; 268:12, 17; 270:23, 24; 272:16; 273:12; 218:2; 268:10; 21:16; 81:6; 84:13, 22; 89:9; 90:2; 114:15; 207:19; 267:21, 25; 268:23; 272:17; 85:22; 138:8; 165:24; 224:11; 247:19; 250:19

**loose** 88:11

**lost** 188:13

**lot** 55:21; 60:11; 67:21; 68:2; 69:18; 170:15; 172:15; 185:13; 187:17

**loves** 63:11

**lower** 239:2

**lunch** 51:10, 14; 97:15; 112:14; 167:18, 19, 24; 168:3, 8; 271:20

**luncheon** 118:14

**luxury** 205:23; 206:5, 5

**M**

**Madison** 108:21; 221:18

**maintained** 121:12

**maintains** 223:3

**maker** 144:5; 206:10

**makes** 154:5; 173:25

**Management** 29:24; 30:5, 7, 10; 42:6; 114:12

**manager** 81:25; 150:24

**managing** 53:24

**MANDEL** 4:13; 12:4, 10; 30:24; 39:20; 40:8; 41:21; 43:25; 44:7; 52:12, 23; 53:6; 54:23; 56:8; 57:2, 18, 23; 58:6, 10, 13, 22; 61:21; 64:25; 65:7; 72:17, 19; 75:9; 77:7; 80:6, 16; 82:10; 87:10; 91:4; 92:23; 93:20; 96:6; 97:16, 21; 98:15; 100:3; 104:24; 107:17; 109:17; 110:5; 111:5, 21; 112:7, 20; 113:16; 114:19; 115:22; 116:15; 117:11; 118:10; 119:6, 10; 120:5, 11, 19; 122:8; 129:2, 23; 131:16; 132:8; 133:16; 134:15; 137:2, 8, 14; 140:4, 11; 141:9; 142:9, 16; 143:2; 144:13; 146:19; 152:8, 10, 18; 155:19; 157:8, 10; 163:14, 16; 164:6, 12, 14; 165:8; 166:2; 169:17; 175:22; 179:6, 23; 180:5; 181:12; 187:15; 190:9; 191:3, 8, 11; 193:8; 196:16; 203:23; 204:2; 210:6, 17; 211:19; 219:8, 24; 221:15; 222:24; 224:25; 226:19, 25; 228:4; 229:17, 25; 230:17; 231:18; 232:16; 234:8, 20; 235:15; 238:4, 8; 239:17, 25; 242:17; 243:10; 244:16; 245:5; 249:18; 250:13; 253:4; 255:22; 257:12; 258:4, 12; 262:22; 263:7, 10; 264:15, 19; 265:2, 6; 268:22; 276:24

**manner** 148:3; 192:13

**manual** 114:8; 223:14

**manufacture** 70:5; 73:16; 84:20, 21; 67:14; 72:12; 73:7, 13; 125:18

**manufacturer** 75:2; 161:21, 23; 162:5, 10, 17; 190:15; 196:18, 22; 197:10; 206:12, 17, 24; 207:4; 259:24; 276:9; 124:24; 189:14

**manufacturing** 70:6, 11; 72:22; 73:2; 74:18, 19; 75:6; 76:4, 9, 18, 22; 77:3; 116:8; 125:12, 13; 189:14; 190:11; 196:23, 25

**many** 5:8; 12:25; 86:21; 92:5; 96:2; 172:2; 173:3, 3, 3; 226:2; 227:23; 228:5, 10; 236:3; 271:9

**marble** 76:15

**March** 23:21; 24:6; 28:2; 98:12; 187:5, 5; 203:14

**margins** 174:10

**marked** 4:11; 12:12; 35:17, 19; 39:5, 6, 17; 40:19, 21; 43:5, 7, 21; 44:4; 46:11, 12; 53:5, 8; 55:11; 61:15; 80:10;

97:24; 108:4; 111:7; 112:22, 23; 119:8; 138:20; 139:16; 140:17; 142:25; 144:7, 20; 151:19; 153:9; 157:18; 161:3, 5; 162:21; 163:17; 167:13; 171:5; 176:3; 178:15; 179:11; 186:5; 189:11, 17; 191:5; 195:10; 200:22, 23; 211:9; 223:19; 236:18; 243:13; 253:11, 15; 254:4; 256:20; 259:16; 260:3; 267:5, 14; 268:14; 269:18; 270:7; 272:15; 273:12; 274:8

**market** 204:12, 23

**marshaled** 229:14

**master** 81:18; 145:13, 14; 146:10, 13, 16, 22; 147:3, 7, 11; 159:17, 20, 25; 160:8, 9, 12, 22; 163:2, 4; 166:13, 18, 22; 167:4; 198:4; 250:3; 15:8, 12, 13

**material** 79:11, 13; 87:13; 88:4; 115:7, 7; 59:3; 76:16; 85:20; 87:5, 8, 19, 20, 21, 24; 88:8; 171:3; 184:25; 185:4, 8; 206:16, 23; 207:4; 246:6; 247:19; 268:6

**math** 223:11

**matter** 68:20; 93:10; 116:20; 210:7; 11:24; 49:23

**Maximum** 227:25

**may** 8:4; 11:7, 21, 22, 23; 32:10; 44:23; 55:21; 60:13; 96:24; 112:10, 12; 113:16; 134:7; 140:17; 163:15; 165:25; 171:15; 177:22; 230:12; 243:16, 22

**maybe** 29:19; 59:6; 148:20, 21; 220:12, 13; 226:4; 266:23, 23; 269:23

**Mazel** 58:9, 12

**McKEE** 43:23; 44:3; 54:2; 58:20, 24; 71:24; 72:3; 75:7; 80:13; 91:22; 97:14, 18; 100:25; 101:11; 105:4; 107:11; 111:3, 6; 127:12; 128:16; 163:15; 174:16; 188:16; 191:2; 232:10; 238:6, 18; 240:14; 241:20; 243:3; 245:3; 250:11; 252:17, 24; 253:21; 265:5, 17; 266:3, 6, 8; 273:7, 9; 276:21

**mean** 7:8; 24:13; 28:24; 32:11; 33:7; 64:21; 68:15; 70:2; 75:8; 85:17; 92:20; 94:18, 21; 96:21; 105:23; 131:11; 142:14; 159:14; 161:14; 172:20; 173:6, 9; 177:9, 12; 206:2; 207:14, 16; 215:24; 232:24; 238:23; 79:4; 141:16, 19; 242:5; 275:12; 9:16; 131:2, 18; 247:14

**meant** 121:22

**measurements** 76:18; 78:15; 190:4; 276:5

**Mechanical** 14:25

**MED** 35:20, 21, 24; 39:4, 5, 7, 8, 16, 16; 40:9, 10, 18, 18, 22, 22; 43:5, 9, 21; 44:6; 46:10, 10, 14; 119:12, 12

**Medallion** 4:10; 9:9, 20, 22, 24; 10:8, 11, 12, 15, 21, 23; 11:3; 12:6, 8, 14; 13:10, 14, 17; 14:2; 16:9; 28:7, 10; 31:5, 7, 8, 10, 12, 14, 17, 19, 22, 25; 32:4, 7, 14, 17, 23; 33:2, 5, 5, 10, 19, 21, 24; 34:5, 8, 10, 15, 22, 25; 35:10, 12, 25; 36:2; 37:6, 9; 39:13; 40:5, 14, 25; 42:3, 10, 17, 22; 44:10; 55:24; 57:20; 59:4; 60:18, 21; 62:7, 10; 68:11; 69:6; 74:4; 83:10, 13, 16; 88:8, 14, 19, 21, 24; 89:4, 16; 92:14; 98:7; 99:15; 100:23; 106:12, 14; 108:25; 110:7; 111:13; 114:20; 115:18, 24; 116:6, 13; 119:16; 120:7; 121:23; 122:9, 12, 13, 14, 19; 123:5, 12, 18; 131:20; 134:17; 135:16, 21, 23; 136:20, 21; 137:20, 20; 138:12; 142:10; 149:5, 8, 24; 150:8, 14; 153:16; 163:22; 165:11; 166:17; 167:4; 173:11; 178:24; 179:2, 7, 19, 24; 180:2, 7; 181:16; 182:11, 14; 183:4, 9, 12, 20; 184:24; 185:7; 191:15, 16; 192:5, 11, 14, 16, 25; 193:18; 200:16; 203:21; 204:8; 205:10, 14, 18; 208:25; 210:18; 211:6, 22; 212:10, 13, 18; 215:16; 217:2; 219:10; 224:23; 226:5, 6; 227:3; 229:6, 11; 230:5, 10; 231:5, 13; 232:19; 233:19, 23, 25; 234:5, 5, 11, 15; 235:9, 14, 16, 23; 236:9, 12, 22; 237:4, 13; 239:19; 240:3; 242:4, 13; 252:5, 7; 257:14, 18; 34:18, 20; 36:3; 72:20; 73:6; 74:3; 96:8; 132:9; 155:23; 177:14; 193:23; 197:23; 200:24

**medical** 14:15

**meet** 14:8; 16:25; 47:13; 65:20; 151:11; 177:16; 271:7, 12; 134:3, 7; 17:6; 48:5, 13; 49:8; 51:17, 19; 59:14, 24; 65:15, 18; 88:2; 102:19; 114:10; 124:3; 140:23; 141:5, 6, 11; 142:11, 22; 167:18, 18; 186:17, 20, 24, 25; 208:20; 223:24; 224:13; 255:2; 271:15

**meetings** 20:24; 49:9;

Triarch Architectural Services, P.C. v.
Medallion Inc., et al.

Garry Braverman
Vol. 1, July 11, 2012

51:23; 88:16; 90:9;
185:18, 21; 224:16, 20
**memorialize** 242:11
**memory** 223:12
**mention** 78:10; 202:9;
24:9; 64:2; 114:13; 124:4,
5; 186:21, 22; 188:18;
194:8; 201:25; 202:2, 3,
24; 209:17, 19
**message** 50:4
**met** 12:23; 17:17; 21:7;
47:15, 24; 59:14; 65:21;
89:6, 24; 102:19, 20;
157:7, 14, 15; 224:4, 9;
271:9
**Miami** 47:17, 19, 22; 52:2
**mid-December** 164:25
**Mid-January** 197:13
**mid-September** 275:6
**middle** 39:23; 170:7
**Midtown** 25:23; 26:16;
27:3
**might** 64:10, 14; 77:21;
80:15; 92:8; 100:23;
101:9; 110:20; 203:15;
207:16, 19; 266:24;
267:18
**miles** 50:16
**million** 37:17; 62:16, 18,
19, 22; 63:5, 15; 64:3, 10,
14, 18; 65:4; 66:13; 67:17;
142:6; 176:19; 177:4, 17;
255:14
**million-dollar** 142:7
**mind** 15:14; 66:24; 70:8;
91:21; 92:2, 13, 17;
114:24; 149:3, 6, 8, 24;
150:15; 162:19
**minimal** 103:8
**minor** 104:5
**minute** 56:3; 12:24, 25;
13:3; 51:12; 186:21;
207:10, 10; 232:10
**mirror** 149:21
**mischaracterizes** 177:7
**miscounted** 227:5
**misheard** 171:15; 194:18
**missing** 112:13, 16, 17,
18
**mission** 100:14, 16, 17,
18
**misspoken** 113:17
**Misstates** 97:10; 153:3
**misstating** 96:23
**mistaken** 71:17; 220:13
**misunderstood** 177:22
**MIT** 15:5, 6
**Mm-hmm** 81:4; 107:2;
151:22; 195:15; 231:22;
245:15; 254:6
**Mobili** 59:3; 68:8
**modifications** 151:6
**modify** 238:4
**moment** 220:22; 222:25;
243:20

**money** 49:20; 61:24;
62:7, 11, 11; 264:5
**month** 16:12; 31:5, 10;
103:4; 154:18; 160:2;
201:25; 202:4; 203:11, 12,
12; 207:16; 209:14; 211:6;
257:25; 258:2, 6, 7; 21:13;
25:6; 26:2, 18; 28:18;
47:12; 70:9; 71:4, 6; 96:2,
4, 10, 14; 154:16; 200:12;
202:11; 208:7; 215:10
**monthly** 215:7
**more** 15:11; 17:17, 19;
18:9; 25:8; 26:3, 11, 19;
37:13, 16, 17; 62:10; 63:5;
64:18; 65:3; 79:24; 86:23;
89:13; 90:13; 92:11, 17;
102:7, 7; 107:18; 115:11;
127:9, 15, 25; 128:2, 7, 13;
134:10; 135:4; 137:19;
155:6; 171:13, 21; 172:15;
176:17; 188:8; 199:13;
203:12; 207:16; 225:14;
246:4, 12, 24; 258:4;
264:16; 268:13; 275:8
**morning** 4:14, 15; 147:5
**Moscow** 17:2; 89:8;
90:11; 243:9
**most** 15:4; 20:12; 28:23;
35:23; 89:9; 117:23;
174:14; 209:7; 210:15;
211:15; 227:2
**Mostly** 45:19
**mouth** 241:14
**move** 24:13; 38:15; 61:5,
6; 110:7; 201:13; 202:14;
209:13; 221:12, 21; 222:6,
10, 15; 94:24; 95:4; 222:6
**move-in** 203:5
**moving** 116:4
**much** 8:17; 26:11; 28:22;
29:16; 37:14; 60:9; 63:11;
67:4; 79:24; 86:23;
130:13; 136:18; 173:18;
174:9; 209:9; 210:16, 18;
214:15; 246:12; 251:10;
264:5; 276:24
**multiplied** 210:25
**must** 8:19; 214:21
**mutual** 59:15; 64:6; 121:5
**myself** 69:18; 82:3;
114:10; 275:16

## N

**name** 7:18; 14:13, 17;
39:25; 42:5, 12; 46:18;
51:20; 65:13; 105:8, 13;
157:13, 16; 194:14, 16, 22;
231:23, 24; 266:7; 144:24;
25:20; 42:19
**naming** 194:20
**natural** 213:25; 247:17
**naturally** 158:24
**nature** 4:20; 6:3; 168:17;
169:8; 172:24; 263:25;
269:24

**necessarily** 247:14
**necessary** 71:15; 146:6
**need** 11:20; 37:21; 52:22;
60:24; 70:4, 8, 22; 71:6;
75:5; 76:2, 7, 25; 77:13;
78:14; 87:13; 103:11;
105:24; 116:24; 117:9, 17;
130:13; 133:3; 136:17;
139:4; 159:11; 164:19;
207:5; 220:22; 222:24;
274:11; 276:4; 72:22;
74:16; 77:10; 159:7;
174:7; 196:18; 197:11;
206:17, 24; 213:24
**negatively** 189:7
**negotiate** 68:22; 177:18;
64:3, 5; 65:9, 16; 69:6, 15;
98:16, 21; 99:2, 4, 5;
107:3; 113:8, 15, 23; 114:3
**negotiating** 63:22;
66:14; 69:2, 12, 21, 23
**negotiation** 38:3, 3;
68:20; 125:21, 22, 23;
48:14; 66:2, 12
**neighbor** 65:22; 157:2, 2
**neither** 127:21
**net** 62:5
**New** 4:4, 4; 21:14; 25:18;
29:25; 31:19, 23; 32:2, 5,
8, 15, 18, 24; 33:3, 6, 10,
19, 22, 25; 34:6; 48:7;
51:9; 72:7; 102:20; 109:9,
19, 24; 118:4; 138:5;
139:6, 9; 167:4; 186:12,
17; 187:8, 9; 190:3;
199:25; 208:21; 271:16;
272:14
**next** 8:10; 129:13; 140:7,
8; 145:5; 159:12; 165:25;
200:11; 216:12, 12, 13;
223:5; 248:25; 249:3
**nicely** 143:16, 21; 144:10
**night** 12:23
**nine** 25:5; 96:9; 203:12,
12
**Ninth** 6:8
**nods** 8:20; 37:21
**non-performance**
123:23, 24
**None** 27:16; 55:3; 78:10;
83:2; 155:25, 25; 163:5;
180:25; 238:11
**nor** 127:21
**normal** 66:11
**Notary** 4:5
**note** 159:13, 15; 175:6;
273:15; 274:10; 52:25;
53:3; 166:5, 7; 232:11, 13;
253:6, 8; 276:25; 69:8;
223:24; 224:12, 15, 19
**Notice** 4:10; 12:13; 57:7;
58:8; 134:9, 24
**November** 18:24, 25;
19:12; 71:18; 78:12;
82:15; 142:11, 22; 143:4;
144:8, 25; 147:11, 21;
159:24; 253:10, 19, 25;

267:18
**nowhere** 151:24
**number** 35:20; 36:4;
37:8; 40:9; 43:5, 21; 45:14,
16; 46:14; 63:14, 18;
66:12, 13; 70:15; 79:18,
18; 97:25; 119:11; 162:21;
172:7; 179:14, 18; 180:6;
201:2; 211:17, 20; 212:10,
13; 213:5, 5; 215:14;
216:25; 217:13; 218:23;
219:10; 220:19, 22, 25;
221:3, 17; 223:12; 242:12;
243:14; 254:8, 15, 19;
255:13; 267:9; 39:4, 16;
40:18; 46:10; 80:25; 81:2;
116:22; 210:23

## O


**o'clock** 118:10
**oath** 4:6
**object** 128:17; 171:10;
211:18, 22, 25; 212:13, 18;
214:4, 10; 218:23; 219:15;
222:18; 218:7, 15
**Objection** 9:15; 17:20;
23:3; 26:6; 32:9, 20; 33:16;
34:2, 23; 35:6, 13; 41:16;
48:21; 49:5; 54:22; 55:2;
66:6; 67:22; 69:3; 78:18;
82:20; 84:17; 85:8; 86:14;
87:2; 89:21; 91:22, 23;
92:3, 18; 93:7, 23; 94:6,
12, 17, 25; 95:7, 18, 21;
96:17; 97:10; 98:18, 22;
100:25; 101:2, 11; 105:4,
5; 106:11; 107:10, 15;
109:3, 25; 110:12, 22;
117:6; 120:15, 22; 121:14;
122:2, 7, 11, 16, 21; 123:8,
14, 20; 126:11, 22; 127:12;
128:15, 24; 129:17;
132:13, 22; 134:19; 135:6,
18, 25; 137:5, 5, 8, 23;
138:16; 142:13; 147:13;
148:6, 16; 149:11; 150:16,
21; 152:3, 16, 21; 153:3,
18, 22; 154:10; 155:2;
156:24; 161:24; 163:25;
165:12, 21; 166:23;
168:15; 169:4, 10, 21;
170:4; 173:16; 174:16, 17,
25; 175:10; 177:6; 179:2,
21; 180:12; 182:5; 183:22;
188:16; 192:7; 212:3, 15,
20, 25; 217:7, 12; 218:10;
219:12; 220:5, 13; 221:6;
222:21; 224:17; 225:8;
231:3; 232:21; 233:21;
239:22; 240:6, 14, 15;
241:6, 19, 20; 242:20;
243:2, 3, 7; 248:9, 13;
249:14; 250:4; 251:8;
252:8, 17, 18, 24, 25;
254:15, 16; 256:2; 257:15,
24; 258:16, 23; 262:10;
212:9; 213:2, 15; 217:2,
13, 18; 219:19, 23; 220:3,

12, 18, 19; 256:7
**objective** 71:5; 48:10
**obligated** 136:21
**obligation** 10:16; 233:6;
232:19; 233:10, 17
**observe** 241:12
**obtain** 101:24; 184:20;
185:3, 7; 230:13; 59:21;
101:8; 104:6; 192:23;
230:16, 21
**obviously** 63:23; 69:20;
70:16; 86:18; 114:16;
141:4; 147:22; 168:17;
171:3; 184:10; 186:2;
188:10; 213:25; 215:6, 8
**occasion** 18:9, 10; 271:6;
272:10; 16:17; 18:11
**occurred** 10:3, 6; 97:8;
141:22; 184:25; 190:6
**October** 18:25; 19:12;
71:17, 18; 72:22; 77:11;
78:12; 147:21, 22; 154:15;
196:19; 197:9; 206:24;
267:25
**off** 53:6; 97:21, 23;
147:25; 148:22, 24; 166:3,
4; 217:6; 229:20; 243:10,
12
**offense** 135:12
**offer** 27:8; 67:19, 18
**office** 5:13; 31:19, 23;
41:10; 43:12; 88:17
**officers** 34:18; 42:20, 22
**Often** 8:13; 16:8, 10, 11;
17:25; 52:2
**Oil** 14:20; 15:15; 29:7, 7,
8, 11, 14; 30:12, 14, 23,
25; 260:16
**old** 14:19; 55:9; 199:24
**Once** 7:9, 9; 10:22; 18:14;
59:10, 23; 73:21; 79:9, 14;
103:16; 104:17; 115:4;
116:14, 16, 20; 157:14, 15;
172:9, 9, 9; 173:20, 20;
174:7; 196:9; 206:3;
207:6; 214:20, 24; 215:5;
217:10; 218:18; 251:10
**one** 6:14; 15:4; 18:9, 10;
20:9, 24, 24; 21:9; 25:22,
23; 43:8, 24; 44:5; 45:14;
53:6; 60:7, 20; 68:4; 70:16;
72:20; 79:14; 82:4; 90:2;
97:22; 105:15; 107:18;
109:20; 117:10; 123:25;
129:13; 130:14; 135:3;
137:19; 140:17; 143:23;
149:25; 150:8; 151:4;
157:16; 162:15; 181:18,
24; 187:20; 192:19;
199:25; 207:20; 208:19;
211:11; 213:5; 214:23;
215:23, 25, 25; 216:2, 5, 5,
19; 218:14; 228:25; 229:4;
241:25; 242:10; 244:21;
246:4; 247:11; 251:13;
259:13; 267:14; 268:11,
13; 272:10; 274:24; 275:2,
8

**one-page** 112:21
**ones** 226:10; 269:23; 274:21
**only** 12:18; 48:12; 58:2; 71:3; 73:16; 75:19; 93:9; 96:13, 22; 101:23; 105:15; 134:13, 16, 22; 135:2; 140:15; 167:2; 207:20; 215:3; 229:4; 234:2; 247:21; 249:8; 276:9
**open** 265:20; 250:18
**opinion** 63:13; 95:23; 143:23; 178:2; 213:23; 226:9; 237:5, 7, 11, 12; 245:21; 248:22; 249:2
**opportunities** 168:5, 10
**opportunity** 168:12, 20, 25; 169:8, 19, 25
**opposed** 80:14; 193:20
**opposite** 79:7
**option** 6:6; 207:20; 166:25; 207:21; 214:22; 216:3
**oral** 105:22
**orally** 105:18; 106:2; 144:17; 219:2
**order** 60:16; 78:16; 108:14; 116:7, 8, 11; 139:3; 158:19; 159:8; 219:21; 275:21, 24
**orderly** 99:11
**organized** 167:11
**organizing** 228:15
**original** 112:12; 124:2; 242:3, 5, 14; 248:7, 20
**originality** 248:12; 249:4, 12
**Originally** 66:3; 273:17, 22
**originated** 52:16
**others** 83:6; 192:24
**otherwise** 23:5; 74:11; 88:4; 109:5, 12; 192:3; 237:17
**out** 28:24; 45:3; 65:3; 102:13, 17; 149:21; 151:10; 199:8, 11, 24; 211:3; 226:17, 17, 24; 264:6; 273:9
**outside** 16:8; 227:10; 239:11
**over** 8:4; 20:6; 22:20; 37:24; 49:12; 51:10; 64:10, 14; 65:16, 25; 66:2, 2; 69:8; 74:15; 88:7, 19; 90:11; 95:16; 145:5, 19; 149:3, 6, 9; 184:9; 212:22, 24; 219:2, 4; 225:25; 226:3, 14; 227:6, 8; 228:2, 9; 237:8; 265:21, 22; 271:21
**overall** 67:11, 12; 85:13, 18; 125:9; 150:25; 166:24; 175:7, 18; 178:2; 215:8; 248:14, 15
**overseas** 6:25; 125:12, 18; 198:14

**oversee** 199:21; 56:21; 59:17; 126:3
**owed** 55:16; 140:25
**own** 28:10, 22; 29:3; 34:10; 72:6; 90:7, 16, 19
**owned** 6:4, 13; 104:25
**owner** 64:2; 105:16; 130:10; 131:9; 134:7; 136:8; 121:20
**ownership** 106:20; 121:12; 192:4
**owns** 34:3, 8, 15, 15; 37:4

**P**

**P-64** 272:15; 274:2
**P-71** 275:9
**p.m** 118:14; 119:3; 166:5, 7; 232:11, 13; 253:6, 8; 276:25
**pace** 88:22, 23; 97:8
**page** 35:20, 21; 36:12; 39:23; 40:9; 41:19, 20, 22; 43:8; 44:5; 46:14, 14, 15; 59:2; 61:8, 22; 62:4; 80:24, 24; 81:2; 99:8; 106:19; 111:25, 25; 112:3, 5, 13, 16, 19; 113:9; 119:11; 124:15; 126:23; 128:25; 134:2; 136:25; 138:25; 139:3; 143:7; 161:9; 168:7; 170:7; 179:13; 180:21; 192:9; 206:7; 207:22, 24; 211:21; 224:3; 244:11, 18; 250:7, 15, 16; 267:7; 277:6; 61:12; 80:23; 82:11; 245:9
**paid** 52:18; 53:14; 89:15; 179:10; 222:22
**paint** 79:12, 13, 18, 18, 16
**palisander** 247:3
**Panama** 41:2, 5, 8, 11, 14
**panel** 77:3; 70:6; 73:16, 17, 22; 74:2, 24, 25; 76:23; 197:22; 198:5; 246:18, 19; 275:22
**paper** 242:10, 11
**Paradise** 25:22, 25; 26:24
**paragraph** 99:8; 106:19; 114:7; 123:2; 130:9, 13; 138:9, 10; 140:6; 145:3, 3, 5; 158:12; 159:13; 192:2, 10, 22; 206:8; 207:9, 11, 23, 23, 25
**Park** 22:10, 14; 43:12
**part** 30:20; 52:18; 181:3; 200:8; 215:12; 227:2
**partial** 83:9
**participated** 21:6; 48:13
**participating** 168:12
**particular** 49:3; 99:5; 125:10, 13
**partners** 210:2
**party** 5:3; 17:7, 8; 134:10,

14; 135:5; 192:5
**pass** 168:20
**past** 31:17; 147:22; 154:17
**pattern** 123:23
**pay** 46:5; 54:11; 106:7; 135:23; 136:22; 137:21; 138:13; 173:4; 178:24; 179:8; 201:24; 202:4; 235:16; 251:10
**payable** 138:10
**paying** 7:11; 269:3
**payment** 138:14; 178:20; 180:18; 181:19, 23; 182:8; 183:18, 20; 218:5, 8, 17, 19, 19; 124:12, 15; 128:20; 138:9; 181:17, 21, 25
**PDF** 274:5
**pejorative** 159:15
**penalties** 7:11
**pending** 120:17
**people** 50:5, 6; 72:5; 102:2; 103:17; 104:3; 118:7; 185:13; 229:13, 14, 18, 22; 241:24
**Pepe** 46:23, 24; 47:3, 5, 8, 14, 15; 51:9; 52:9, 14; 271:12
**Per** 16:14; 69:14; 209:14; 211:6; 213:20
**percent** 66:5, 17, 20; 68:11, 22; 115:14; 124:11, 13; 127:7, 7, 7; 128:21, 22; 129:8, 15, 21; 130:22; 138:14; 158:13; 171:13, 14, 16, 20, 22, 23; 172:6; 200:8; 212:6, 7; 213:3, 4, 11, 21; 214:11; 215:2, 10; 217:5; 227:18
**percentage** 64:4, 4; 70:14; 129:13, 15, 20; 171:19; 174:14, 22; 215:12
**percentage-based** 63:24
**percentages** 127:6; 129:14
**perfectly** 60:23; 69:17
**perform** 30:6; 99:9; 134:11; 135:5; 233:5; 16:9; 27:14; 131:19; 135:24; 136:9, 22; 137:22; 138:3; 232:7; 20:14; 130:2
**performance** 99:22
**perhaps** 60:19
**period** 96:22; 97:6; 155:22; 206:18, 19; 207:3; 234:10, 14; 259:2, 7; 271:5; 188:15; 236:4, 5, 8
**permission** 104:3; 105:10, 17, 25; 106:3
**permits** 25:4
**person** 6:17; 20:8; 40:4; 41:24; 42:2, 21; 53:24; 56:20; 57:14; 63:7; 65:15, 18, 20; 92:17, 20; 101:25; 105:14, 15; 173:25; 39:25

**personal** 155:15; 156:19, 22, 25; 205:12
**personally** 7:14; 120:4; 156:5; 205:8
**perspective** 81:8, 10, 12
**Ph.D** 15:8, 12
**phase** 124:11, 16, 21; 125:2, 6, 7, 8, 14, 16, 25; 126:7, 7, 8; 127:9, 10, 11, 15; 128:3, 4, 13, 14; 129:11, 12; 151:10, 13; 159:5; 172:7; 174:21; 175:12, 15, 15, 16; 181:4; 212:6; 213:19; 214:24; 215:6, 9, 13; 255:4; 129:6, 10, 21; 127:8, 18, 24; 129:10, 13; 175:13
**phone** 22:20; 49:12; 51:5, 23; 65:17; 66:2; 69:8; 90:11; 97:19; 145:20; 212:23, 24; 219:3, 4
**phrase** 198:25
**physical** 276:13
**physically** 21:4
**picture** 79:4, 7, 8; 85:16, 21; 87:14; 150:25; 81:3; 87:19
**piece** 25:3; 87:14, 16; 101:12, 14; 205:24; 206:6; 73:13; 116:4
**place** 47:23; 50:16; 63:14; 97:18; 115:4; 116:21; 126:14; 142:15; 205:21; 55:16
**placement** 76:19
**plain** 79:24
**plaintiff** 5:5, 7; 7:15, 16; 12:6; 206:9; 260:11; 4:9; 12:12, 12; 35:15, 19; 39:2, 15; 40:17, 21; 43:4, 20; 46:9, 13; 53:9; 55:12; 58:22; 61:16; 97:25; 106:13; 108:5; 111:8; 112:21, 24; 142:24; 143:3; 144:6, 20; 153:9; 161:2, 6; 162:21; 163:18; 166:9; 178:16; 179:12; 180:10, 21, 23; 181:6, 9, 13; 182:3; 186:6; 189:10, 18; 191:4, 11, 22; 192:22; 195:10; 200:20, 24; 211:10, 13, 21; 243:14; 244:11, 15; 245:8, 9, 12, 13; 248:3; 250:15; 253:9, 13, 16; 254:5, 9, 14; 255:8; 256:20; 258:20; 259:16; 260:3; 269:7; 60:17
**plan** 102:21; 103:6, 10, 10, 12, 14, 15; 104:3, 4, 21; 105:21; 164:21; 203:18; 241:25; 109:23; 110:7; 275:5; 101:24; 103:23; 104:25; 105:11; 106:9; 117:8; 163:7, 8; 164:19; 272:12; 273:17; 274:5
**plead** 263:21

**pleadings** 56:19
**pleasant** 205:21
**please** 8:24; 96:23; 97:2; 107:12; 114:9; 120:20; 163:15; 166:24; 191:2; 243:17; 268:17; 274:13, 13; 91:9
**plumbing** 118:6; 206:13
**plus** 223:7
**point** 23:8; 24:11; 28:13; 39:11; 48:15; 81:25; 88:6; 89:24; 90:15; 116:12; 117:24; 127:22; 129:20; 133:3; 143:25; 145:9; 146:3; 147:20, 25; 148:4, 10; 152:6, 11, 20; 155:10; 167:10; 171:18; 175:20, 23; 177:16; 182:11, 14; 183:16; 184:6; 199:21; 204:4; 211:22; 218:12; 221:20; 234:22; 242:4; 247:11, 12; 45:3; 241:8; 250:7; 96:24; 99:5; 124:3, 5
**policies** 225:2
**poorly** 92:10
**portion** 69:21; 129:15; 136:16; 250:23
**position** 77:21
**possession** 24:11, 12; 194:3, 4, 9; 195:2; 225:11
**possibility** 64:9, 13; 200:7
**possible** 24:10, 16, 21; 80:4; 84:4, 12, 25; 96:14; 101:9; 165:6, 15, 19; 203:5; 206:20; 207:2; 247:7; 252:14, 21
**possibly** 12:18; 113:8; 132:24
**postdate** 55:22
**postgraduate** 260:18
**potential** 170:23
**practically** 60:3; 184:18; 186:15
**practice** 226:5; 228:14
**precise** 78:15; 92:11; 115:11
**Precisely** 77:4; 89:20, 23; 102:15; 203:17
**predated** 274:20
**predilection** 262:12
**preliminary** 182:20
**preparation** 13:7; 73:22; 132:10
**prepare** 12:21; 60:16; 75:21, 24; 84:4; 159:8; 213:22; 86:4, 7; 106:24; 107:8; 158:20; 163:11; 199:6; 257:6; 259:23; 273:18
**preparing** 128:6, 8; 248:8, 21
**presence** 239:11
**present** 20:20, 25; 21:8; 38:9, 11; 47:24; 48:3;

Triarch Architectural Services, P.C. v.
Medallion Inc., et al.

Garry Braverman
Vol. 1, July 11, 2012

87:23; 88:3, 4; 185:20;
214:22; 242:3; 275:5;
59:22; 83:4, 8; 87:22; 88:2;
243:8; 269:22; 133:14
**presentation** 172:13;
245:4; 267:8, 17, 25;
268:16
**pressing** 151:9
**pressure** 71:8
**prestigious** 15:4
**Pretty** 16:11; 50:11; 52:2;
62:19; 78:3; 106:17
**previous** 66:22; 134:2;
158:22; 159:4, 24; 178:6;
217:4
**previously** 162:20;
220:14; 236:18; 254:4;
267:4; 268:14; 269:17;
273:11; 274:8
**price** 37:11, 15, 24; 65:9,
16; 68:11, 11; 200:8
**principal** 14:2, 3
**printed** 112:11; 226:16,
17
**prior** 50:22; 77:12; 86:4;
102:10; 115:23; 136:22;
137:22; 140:23; 185:4;
204:21; 222:9
**priority** 70:16
**prison** 263:16
**Probably** 15:13; 19:14;
23:20; 25:14; 63:7; 85:18;
93:9; 127:20; 128:10;
172:8; 203:3, 6; 204:20;
205:3, 3; 206:4; 221:10;
224:6, 21; 229:9
**probe** 265:23
**problem** 18:15; 19:24;
20:10, 11; 89:4, 16; 90:8;
118:9; 50:2; 88:24; 90:18
**Procedure** 9:14
**process** 69:12; 82:9, 13;
85:25; 97:5; 103:14;
108:14; 116:12; 125:24;
142:4
**produce** 36:3; 71:14;
79:15; 207:3; 230:6;
206:17; 225:25; 229:16;
265:18, 19
**producing** 78:9; 275:22
**product** 30:18; 72:11;
184:22; 189:15; 191:17;
213:9
**production** 70:22;
196:19; 217:11; 265:10;
275:19; 276:9
**professional** 99:10;
171:2; 207:11; 214:20;
231:25; 240:5; 261:4, 7;
67:5; 130:19; 239:18;
240:2
**progress** 99:11; 147:19;
158:7; 159:19, 22; 187:13,
21; 215:7, 11; 88:23; 148:2
**project** 22:5, 23; 47:11;
48:7, 10, 12, 16, 19, 23;
49:7; 53:25; 59:9, 16, 17;

60:5; 63:25; 64:10, 14, 18,
24; 65:3, 25; 67:14; 70:2,
13, 23; 73:11; 74:5; 79:20;
81:24; 82:6; 85:6; 92:22,
25; 93:2, 22, 24; 96:3, 16;
97:9; 100:23; 101:22;
102:10; 104:9, 12; 106:15,
24; 115:21, 24; 118:4;
120:14; 121:19; 124:11,
17; 126:16, 16; 129:8, 11;
134:9; 135:3; 136:7;
138:4; 147:20; 149:3, 7,
10; 150:23, 24; 158:11, 20,
24; 167:22; 168:3; 169:23;
170:14; 172:5; 173:6, 8,
15, 18; 174:6, 8, 11, 15,
22; 175:14, 19, 25; 178:2;
184:17; 188:19, 21, 21;
190:15; 191:18; 193:11,
19; 195:13; 198:25;
199:14; 200:13; 201:17;
203:16; 206:11; 216:9, 17;
220:25; 222:19; 226:12;
228:12; 229:8; 230:11;
231:7; 234:22; 235:11, 18;
246:22; 252:12; 266:19;
268:8; 269:25; 271:6, 18;
276:12, 14; 28:23; 29:3, 5;
63:9; 68:2, 3; 178:6
**promise** 196:12; 202:18;
216:11; 143:12
**promising** 159:25
**property** 33:24; 34:5;
106:23
**proposal** 103:20; 168:17;
170:6; 172:23; 177:10, 12,
15, 23; 178:9, 11; 67:8;
114:8, 12, 15; 116:18;
177:11, 15
**proposed** 69:7; 88:9;
90:4
**proposing** 67:5; 177:23,
24
**prospective** 194:8, 19;
202:24; 209:2, 5, 12, 16;
210:20; 211:5
**proved** 203:19
**provide** 13:16, 19; 27:8,
10, 13, 17; 33:15; 66:19;
75:13; 76:15, 16; 88:7;
99:19; 116:7; 125:23;
130:11; 131:9, 23; 132:2;
140:13; 161:12; 176:9;
269:12; 27:19; 30:10;
31:11; 57:9; 59:3, 16;
74:17; 76:3, 7; 92:14; 93:5;
110:11; 130:23; 162:4;
166:14; 211:12; 235:10;
236:9, 12, 22; 237:3, 13;
243:21; 244:4, 6; 252:6;
272:21; 275:24; 129:25;
130:18
**providing** 31:9; 85:19;
87:4; 133:7; 229:5; 230:3
**provision** 121:22; 122:6,
10, 19; 131:18; 134:25;
130:7, 16
**Public** 4:5; 105:23
**purchase** 27:25; 36:8, 9,

19; 37:6, 24; 38:4, 20;
39:12; 22:19; 23:22, 23;
28:5, 8; 37:9; 38:7; 40:14;
54:12; 59:10; 61:8, 13;
63:3; 94:19; 95:10;
102:13; 202:12, 25;
204:25; 205:4, 18
**purely** 86:19
**purpose** 35:5
**push** 151:13
**put** 57:2; 121:3; 145:22;
172:2; 199:25; 226:11;
227:10; 241:13

## Q

**quarter** 6:2
**Quick** 6:10; 266:9; 273:8
**quickly** 188:8; 266:4;
267:6
**quite** 44:24; 65:19; 78:4;
153:11; 158:10; 218:9
**quote** 115:5

## R

**ranging** 67:9
**rate** 68:24; 130:17, 18;
138:13; 211:5
**reach** 114:20, 22; 183:12
**reaction** 139:22; 151:15
**read** 62:20; 107:12, 13,
19; 111:11, 23; 120:21;
121:7; 130:13, 14; 134:3;
136:10, 15; 190:25;
207:24; 238:6, 9, 12, 21,
23; 274:13; 277:2; 113:23;
164:13; 207:7
**ready** 82:2; 158:14;
162:2; 195:6; 216:13;
223:4
**real** 168:4, 10, 12; 169:24;
205:24; 206:6
**realistic** 202:16; 203:7, 9
**realized** 148:8; 182:18
**really** 4:19; 15:3, 24;
20:2; 48:11, 13; 90:24;
91:14, 15; 127:21; 150:22;
165:5; 207:7; 208:10;
218:11; 237:7
**reask** 37:21; 136:19
**reason** 66:19; 90:24;
103:5; 145:21, 23; 153:20;
135:9; 188:11
**reasonable** 24:25; 103:7
**recall** 48:22; 82:8, 12;
88:6, 12; 92:15; 98:25;
105:9, 13; 114:11, 18;
120:2; 121:2, 4; 126:13;
139:13; 140:3; 143:10;
147:18; 161:13; 169:6, 16,
18; 178:19; 181:22;
191:19; 212:3; 216:22;
218:2; 268:11; 269:22
**receive** 14:24; 71:19;

117:12; 129:25; 130:21;
131:21; 145:6; 231:10;
15:11; 52:10, 14; 67:7;
82:13; 89:8; 124:12;
140:24; 160:12, 21, 21;
180:6; 214:19, 20; 218:4;
219:9, 16; 221:3; 226:20,
22; 235:22; 253:24;
260:17
**receiving** 211:23; 212:2,
16; 218:23
**recently** 102:17; 230:8
**recess** 53:2; 118:15;
166:6; 232:12; 253:7
**recognize** 36:5; 39:8, 25;
40:11, 23; 43:9; 53:9;
55:13; 61:16; 98:3; 108:5,
9; 111:8; 119:13; 138:21;
139:17; 140:18; 157:19;
162:22; 163:18; 166:9;
167:14; 176:4; 178:16;
186:6; 211:13; 243:15;
253:13, 20; 256:21;
259:17; 260:4; 267:19;
269:20; 273:16
**recollection** 19:11, 18;
37:23; 51:6; 69:23;
109:20; 110:3, 6; 113:14,
24; 114:2; 139:23; 147:15;
148:20; 153:12; 154:21;
162:15; 186:25; 190:14;
268:2
**recommended** 90:6
**reconcile** 177:2
**record** 8:20; 40:8; 45:4;
57:2; 62:20; 97:21, 23;
105:23; 107:13, 19;
111:23; 119:10; 120:21;
137:16, 17, 18; 143:2;
148:23, 24; 166:3, 4;
181:6, 13; 229:12, 21, 24;
233:14; 238:12; 243:11,
12; 250:13; 253:17;
264:16; 274:10
**redo** 83:10, 13, 16
**redrafting** 139:5; 274:12
**reduced** 142:2, 3; 172:14
**refer** 129:14; 159:18;
209:5; 9:13; 19:23; 22:14;
44:9; 53:17; 160:5; 181:5,
8; 243:21; 113:9, 22;
151:24; 180:23
**reference** 272:20;
274:15; 53:18; 113:18;
273:25; 267:8
**referring** 13:22; 16:2;
35:23; 52:8; 53:21; 58:21;
109:10; 114:12; 130:4;
131:12; 149:19; 158:22;
159:23; 173:17; 174:3;
180:10, 16, 17; 182:4, 9,
24; 197:18, 18; 199:17;
213:6; 218:17; 230:18;
238:19, 20; 239:5; 241:3,
10; 243:23; 244:2, 10;
245:7; 246:16; 247:10;
250:14; 255:12, 14;
274:16; 275:3
**refined** 246:4, 13

**refinery** 29:7, 8, 11, 14;
30:14, 19
**refining** 30:12
**reflects** 113:11
**refresh** 113:14; 114:2;
139:23; 148:20; 190:13;
268:2; 153:12; 113:24
**refrigeration** 26:14
**refuse** 264:22; 6:4
**regard** 133:23; 167:17;
186:24; 193:14; 57:12, 15;
113:12; 142:21; 186:12;
209:16; 217:22
**registered** 41:4
**regret** 264:19
**regular** 188:25
**reimbursable** 213:24;
217:16
**reimbursements** 130:4
**rejected** 102:25
**relate** 5:16; 11:4, 12;
45:21; 38:3; 125:9;
159:17; 225:6, 16, 19;
226:12; 229:7; 269:3;
254:8
**relating** 160:22
**relationship** 16:20;
17:15, 16, 23; 18:17;
21:16; 155:15, 23; 189:7
**relative** 56:19
**relay** 50:4; 82:24
**released** 276:12
**relied** 20:3
**relocate** 109:8, 19, 23
**relocation** 109:21
**remain** 106:22; 189:3
**remember** 4:20; 6:3;
20:23; 23:12, 12; 28:4;
36:23; 37:8; 48:25; 49:19;
51:8; 63:2; 65:12; 69:13,
14, 21, 25; 70:7; 73:15;
83:2, 6, 8; 88:20; 90:14;
91:10, 13; 99:4; 102:14;
105:8; 109:14, 20; 110:23;
140:9, 10; 147:17; 148:17;
150:3, 6; 153:6, 19; 154:7,
11; 157:14, 15, 16; 158:3;
161:25; 162:12; 164:8;
168:9, 16, 19; 169:5, 14;
180:8; 181:17, 20; 208:18;
212:5; 216:11; 218:13, 14,
18, 20; 219:14; 224:22;
243:18, 20; 246:23;
267:23; 270:17, 19;
271:20; 272:17
**reminding** 275:17
**remotely** 213:13
**removed** 149:22
**rendered** 147:4
**rendering** 76:13; 78:22;
85:6, 11; 88:5; 160:18;
167:7; 244:12, 18; 245:23,
24; 246:18, 21, 24; 248:2;
249:23; 250:17, 23; 251:2,
3; 74:20, 23; 77:15, 16;
78:10, 17, 24; 79:4; 80:7;

Garry Braverman
Vol. 1, July 11, 2012

Triarch Architectural Services, P.C. v.
Medallion Inc., et al.

81:16, 21; 82:2; 83:5, 25;
84:4, 12, 22, 22; 85:14;
86:4, 7; 89:3, 8, 9, 14;
90:9, 20, 22; 93:5; 114:25;
116:16, 17; 124:19;
125:11; 128:9; 132:10, 17,
20, 25; 133:7, 10, 14, 20;
140:13, 15; 149:15;
150:20; 159:8, 10; 160:15;
166:16; 170:9, 14, 20;
171:14; 184:21; 191:17;
207:12, 13, 18, 20; 213:23;
215:23; 216:2; 217:5;
236:10; 239:20; 242:6, 8;
243:23, 24, 25; 245:14, 17,
18; 247:8, 22, 25; 248:4, 5,
8, 11, 21; 249:9, 10, 13,
16, 20, 23; 251:7; 256:17;
268:22, 23; 269:8, 13, 19;
270:7, 12, 20; 274:16, 17,
19; 276:3, 10
**renovate** 25:7; 43:15;
95:22; 205:14; 49:4; 188:8
**renovating** 23:13; 25:10;
62:7, 12
**renovation** 24:7, 10;
25:24; 26:3, 4, 15, 19, 20,
24; 27:3, 7, 24; 28:14;
29:17; 38:24; 46:6; 47:6;
52:19; 53:14; 54:12, 25;
59:4; 61:8; 66:5; 74:9;
86:5; 94:15; 95:16; 96:9,
12; 97:7; 99:16; 101:10;
105:2; 117:18; 187:22;
200:18; 204:14, 21, 24;
205:5, 7, 9; 232:8; 234:22;
56:22, 24; 73:11
**rent** 201:24; 203:22;
204:9; 210:19; 211:4;
209:6
**repair** 170:15
**repeat** 27:12; 32:13; 76:5;
80:21; 101:13; 120:19;
141:17; 228:20; 248:10;
275:16
**rephrase** 8:25; 96:25;
142:19; 219:25
**replacement** 208:7
**reporter** 8:6, 20; 37:20
**represent** 36:2; 55:24;
60:21; 95:3; 229:12;
266:8; 55:23; 56:25; 57:3;
242:8
**representations** 56:10,
14, 18; 58:3, 5
**representative** 11:5, 9,
15, 18, 21; 12:3
**request** 44:18; 45:2;
130:10; 131:9, 20; 215:16;
247:2
**require** 127:15; 206:14;
73:11; 120:13; 123:21;
130:3, 24; 132:10, 17, 21;
137:21; 138:13, 15;
174:20; 265:19; 127:9
**resend** 274:6
**reserve** 265:10; 121:10
**residence** 221:2, 5, 9;

222:20
**residential** 25:15; 63:8
**resolve** 254:18, 21;
142:22, 23; 255:24
**resolving** 265:9
**respect** 44:14, 18; 82:11;
117:20; 123:25; 126:6;
136:4; 140:12; 153:13;
160:8; 166:18; 219:19;
228:14, 16; 231:17; 234:4;
235:22; 236:7; 254:18
**respond** 66:9; 141:2;
145:16; 157:22, 25;
265:21; 136:12; 158:3;
254:16
**response** 214:8; 247:5;
223:10
**responsibilities** 175:19
**responsibility** 148:11;
151:16
**responsible** 10:2; 56:20;
95:19; 96:15
**rest** 65:25; 70:23; 73:23;
174:8
**restate** 189:23
**restaurant** 6:4, 7; 26:13,
22; 25:14, 17, 21; 29:3;
85:10; 86:3, 5
**result** 6:24; 158:9;
204:13; 210:19; 263:17
**resumed** 119:4
**retain** 121:9; 226:5;
195:12
**return** 39:21; 83:24;
190:12; 27:5; 106:18;
129:9; 133:25; 154:12;
182:2
**review** 13:3; 82:2; 93:5;
199:7; 254:5
**revised** 113:8, 10
**revisions** 173:3; 215:15
**rid** 20:13; 60:2
**right** 9:6; 12:5; 17:21;
22:9, 13; 36:4; 52:23;
57:25; 58:2; 60:17; 61:22;
68:23; 76:20, 23, 24;
77:19; 79:17, 25; 85:23;
86:2; 95:6; 97:12; 98:13;
104:21; 106:8; 107:21;
112:8; 121:20, 23; 123:12,
18; 127:8; 135:16; 142:18;
146:24; 160:2; 162:8;
165:2; 177:22; 183:14;
185:14, 19, 22, 24; 188:4,
23; 195:16; 197:5; 198:14,
15; 204:25; 205:2; 207:11;
210:5; 213:21; 224:11;
225:14; 232:4; 233:2, 3, 3;
238:2; 244:10; 255:15;
264:11, 25; 39:12; 121:10;
265:11
**right-hand** 239:2
**Robert** 33:13; 44:8;
108:23; 153:15; 184:11
**role** 82:5
**room** 79:8; 81:6, 13; 83:9;
145:4, 8, 8, 11, 11; 146:21,

22; 198:6; 207:21; 216:3;
241:11; 247:22, 25; 248:3,
4, 5; 249:7, 8; 250:17, 19;
91:18; 145:6, 10, 18;
146:4, 5, 6; 150:2; 159:18,
20; 198:9, 9; 249:6
**roughly** 154:18
**Rowland** 191:12
**Rule** 9:13; 12:13; 57:4;
8:4; 9:14
**run** 22:4
**Russia** 18:3; 50:7; 54:7;
55:7; 68:2; 209:7

# S

**S.A** 36:16, 19, 22; 37:2;
39:12
**safe** 205:20
**safer** 209:9
**Sale** 35:16; 37:11, 14;
95:11
**same** 6:17; 42:19; 45:3;
49:14; 51:9; 59:13; 61:4,
11, 13, 14; 81:22; 102:15,
16; 103:15; 114:5; 116:19,
20; 126:20, 23; 137:3;
142:6; 160:16, 16, 18;
204:21; 205:4; 207:8;
213:11; 217:7, 14, 14;
220:2, 13; 228:15; 231:21;
245:25; 246:2, 6, 12, 13,
16; 250:2; 252:2; 255:2;
259:2, 3, 4; 270:13;
271:13, 14
**samples** 76:16; 85:19;
88:8, 11, 12
**satisfied** 167:6
**saving** 227:22
**saw** 21:14; 38:9; 40:24;
52:3; 75:25; 80:22, 24;
90:12; 159:3; 164:4;
191:21; 207:14; 211:15;
213:5; 226:23; 236:14, 15,
25; 238:13; 239:10; 241:8;
256:10, 13, 16; 259:11, 22,
25; 260:5; 271:25; 272:4, 7
**saying** 56:11, 12; 87:13,
25; 91:13; 99:3; 123:6;
145:17; 147:23; 179:25;
218:5; 241:4; 246:11, 11
**scale** 86:23
**scenario** 73:5; 203:19
**schedule** 148:9; 195:4, 5;
275:5, 7; 106:21
**schematic** 124:16, 18;
126:6; 127:10; 128:3;
129:11; 174:21; 200:14,
17; 213:7; 214:11, 25;
219:21
**school** 14:15, 16, 18;
15:17, 4
**screen** 149:23
**scroll** 207:9, 10
**search** 225:18
**second** 6:11; 53:7; 97:22;

111:25; 112:4; 113:9;
117:13; 121:18; 138:25;
145:4; 148:23; 170:7;
180:17, 18, 21, 22, 23;
181:22; 190:19; 191:8;
192:2, 9, 10; 218:17;
243:11; 250:16; 257:18;
170:19, 21; 207:8
**Secretarial** 42:13
**section** 121:8; 134:4
**seeing** 110:23; 132:25;
143:20, 24; 147:17;
161:25; 162:13; 164:8;
180:8; 243:18; 267:23;
270:17, 19
**seek** 230:10; 231:5
**seem** 60:13; 25:3; 189:25
**sees** 69:18
**send** 50:4; 69:9; 70:17;
90:10; 140:6, 8; 143:8;
144:12; 155:6; 161:20;
162:16; 179:22; 184:12;
191:14; 69:7; 147:4, 23;
154:13; 162:9; 164:16, 21;
180:3; 181:25
**Senor** 184:4, 5
**sense** 15:10; 77:19;
86:25; 146:20; 159:15
**sent** 90:9; 123:6, 22;
140:22; 141:23; 143:10,
13; 151:20, 25; 154:9;
155:4, 8; 158:19; 161:23;
164:7; 179:19, 23; 180:2,
4, 19; 181:15, 18; 182:22;
218:7; 219:6, 7; 226:17;
274:5
**sentence** 121:8; 131:8,
11; 134:3, 6; 136:5; 139:2;
191:25; 192:10, 23;
195:11; 200:12; 18:8
**separate** 137:10; 227:20;
260:7; 155:10, 22
**separating** 156:4, 13
**separation** 157:4
**September** 22:7; 23:19;
74:14; 113:2; 119:23;
144:11; 163:9; 172:3;
206:22; 221:16; 274:20;
275:7
**September-October**
202:22
**series** 113:6; 264:16;
269:19
**seriously** 184:8
**serve** 263:16; 57:9;
223:12
**service** 103:17; 106:22;
121:21; 13:16, 19; 16:9;
19:25; 27:14, 18; 30:7, 11;
31:9, 11; 42:6, 13; 48:7;
54:11; 64:7; 65:9; 88:25;
89:17; 99:9; 104:16;
130:2, 11, 16, 23; 131:10,
13, 20, 23; 132:2, 12, 16;
135:23; 136:9, 22; 137:21;
138:3; 181:2, 4; 213:17,
18; 214:3, 5; 217:15;
219:23; 232:7; 235:10

**serving** 10:5
**session** 114:14; 119:2
**set** 139:25; 140:12;
206:22; 257:6; 266:18, 20;
267:2; 270:16; 272:2, 5, 8,
11; 273:17
**sets** 135:2; 247:8
**Setting** 257:17
**seven** 134:8; 203:11
**seventy** 66:15
**several** 4:23; 18:11;
114:14; 209:17; 214:22
**shades** 246:15
**shaking** 8:21
**shall** 99:9; 106:22; 121:9,
21; 130:11; 131:9; 136:8
**shapes** 84:6; 86:23
**share** 175:6, 8, 13, 14, 18
**sheet** 267:17; 266:22, 24
**ship** 70:7
**Shop** 6:10
**short** 97:15
**shortly** 158:6; 217:23;
257:14
**shot** 239:7
**show** 12:17; 35:24; 80:9;
84:5, 14; 85:22, 23; 87:8;
245:14; 252:5; 267:4, 14;
268:13; 269:17; 270:6;
273:11; 274:7; 85:2;
89:25; 102:21; 258:25;
259:6; 83:25; 147:4;
243:13; 245:11, 12;
259:15
**shown** 58:23; 266:10;
268:3; 269:6; 272:14;
275:9; 277:5
**sic** 253:12
**sides** 134:23
**sign** 79:15; 98:9; 108:15;
110:19; 119:18, 20, 22;
133:9; 36:18, 24; 69:10;
106:12; 107:24; 108:13;
110:18; 120:8; 126:17;
147:25; 196:13; 206:21;
217:6; 36:22; 102:10;
120:3
**signature** 36:13; 39:22;
110:24; 111:2
**significantly** 172:13
**signoff** 217:9
**silly** 60:13
**similar** 15:5, 11; 50:6;
105:2; 231:20; 247:13, 19;
268:3
**similarities** 247:12
**similarity** 247:10
**simply** 64:20; 101:5;
124:3; 149:22; 165:16, 20;
170:16; 196:11; 218:12
**single** 200:13, 17;
228:19; 266:22, 23
**sitting** 9:20; 33:8; 69:22;
117:25; 147:18; 154:4, 20;
162:14; 188:3; 193:7;

Triarch Architectural Services, P.C. v.
Medallion Inc., et al.

Garry Braverman
Vol. 1, July 11, 2012

216:21; 219:18; 220:10
**situation** 112:15
**six** 16:24; 96:4, 14; 117:2
**six-month** 97:6
**sixty** 64:8
**sketch** 159:17, 25;
160:25; 70:18; 71:15;
270:7, 22
**skill** 99:11
**slow** 78:9; 92:22; 99:24;
123:25; 93:24; 97:5;
92:25; 93:22
**small** 14:14, 14
**social** 16:17
**socially** 52:6
**soft** 173:22
**software** 173:22; 174:5
**sole** 106:23
**somebody** 11:20, 23, 25;
239:11
**someone** 15:6; 20:5;
24:13; 51:17; 69:17;
76:17; 89:3; 90:4; 92:16;
110:15, 19; 144:24; 204:4;
213:22; 217:4; 242:25;
243:4
**sometime** 4:25; 23:18;
74:5; 190:2; 193:19;
195:7, 20; 199:15; 208:11,
21; 257:21; 276:12; 22:7;
44:24; 49:25; 88:10;
91:24; 93:4, 11; 113:23;
156:21; 172:22
**somewhere** 18:4; 154:8;
218:5; 223:13; 242:19
**son** 54:19
**son-in-law** 156:22
**soon** 24:10, 16; 101:6;
114:7
**sorry** 6:20; 13:25; 25:12;
43:25; 71:24; 76:5; 80:21;
84:9; 100:17, 20; 101:13;
161:15; 228:20; 242:23;
244:23
**sort** 56:2; 116:4, 11;
117:25; 150:23
**sound** 37:10; 95:6
**source** 209:15; 102:15
**south** 81:10, 11
**Soviet** 261:15
**speak** 7:7; 9:23; 10:23;
11:16; 16:10; 49:11;
50:18; 59:9; 66:13, 23;
82:6; 103:18; 195:24;
217:10; 233:25; 9:22, 25;
10:7; 56:15; 185:14;
138:17
**specific** 24:18; 69:24;
86:22; 102:8; 268:11;
269:23
**specifically** 47:19; 56:5;
80:14; 217:22
**specifications** 106:21
**specified** 60:7
**speculate** 23:4, 7; 109:5;

123:9; 235:12
**speculation** 82:21;
105:6; 169:11; 240:16;
251:9; 252:19; 253:2;
258:17
**speed** 108:14
**spell** 7:4, 6, 7; 194:13
**spend** 15:23; 29:17; 63:5;
172:22
**spent** 62:7, 10; 65:23;
172:15
**spoke** 24:5; 105:14;
149:20; 164:17
**spoken** 8:19; 217:21
**spring** 49:14; 51:6, 24;
203:3
**stage** 47:9; 63:14; 142:4;
174:15; 173:18
**stamped** 35:25; 43:8;
44:6
**stamping** 112:18
**stand** 119:4; 35:25
**standard** 107:5
**standpoint** 170:24;
173:19
**start** 7:11; 8:12; 71:20;
94:14; 162:9; 177:18;
196:19; 208:10; 234:9;
237:11; 70:12, 20; 117:18;
146:23; 244:8; 195:23;
211:17, 20
**state** 149:18; 151:23;
200:25; 18:4; 28:25; 99:8;
106:20; 113:10; 114:6;
128:21; 130:16; 134:6;
136:6; 140:6; 143:7, 15;
145:5; 147:3; 158:12;
160:7; 161:10, 19; 164:16;
170:8; 172:11; 175:5;
190:11; 192:10; 195:11;
200:12; 206:8; 261:17, 20;
263:12, 22; 264:6, 10
**statement** 57:10; 58:2;
66:10; 143:17; 172:18;
175:12; 192:6; 193:4;
195:16, 17; 197:14; 208:2,
2, 3
**stating** 4:2
**status** 11:11
**statutory** 121:9
**stay** 206:4; 51:11; 47:23;
137:3
**steal** 241:24
**step** 72:20; 158:23
**Steve** 23:1; 217:21
**Steven** 65:10; 217:21;
65:12
**still** 19:2; 30:13; 47:10;
106:19; 147:23; 151:24;
158:16; 160:3; 175:12, 12;
184:16; 186:13; 188:3;
197:11; 256:7; 265:8;
269:25
**stipulate** 12:6; 158:13
**stop** 28:20; 96:23; 97:2;
28:14; 31:4, 9; 48:15; 97:9;

188:20; 231:2; 235:22;
276:11
**store** 227:19
**story** 102:23
**straight** 79:19; 240:19
**Street** 4:3; 6:8
**strict** 64:22
**stuff** 72:6; 198:18; 275:23
**subcontracted** 118:7
**subcontractors** 118:5, 8
**subject** 16:5; 22:11; 78:5,
7; 193:24; 227:12; 277:5
**submit** 71:16; 172:23;
177:10; 178:9; 207:17;
215:23; 216:2; 274:4
**submitting** 159:10;
207:20
**Subscribed** 277:16
**substance** 45:13; 78:7
**substantially** 134:11;
135:5
**sue** 6:21
**sued** 6:14
**suede** 246:3, 14, 19;
247:20
**suffer** 210:18
**sufficient** 25:6, 8
**sufficiently** 89:18;
159:19; 161:22
**suggested** 108:13, 15
**suing** 5:17, 20
**suit** 11:24
**suitable** 208:7
**sum** 37:10; 78:6
**summarize** 96:25
**super** 119:11
**supervised** 252:11
**supplier** 6:16, 15
**supply** 248:7
**supposed** 24:2; 70:21;
73:16; 74:24; 133:4;
145:10; 232:25
**sure** 5:25; 7:6; 17:8;
20:22; 21:2; 22:16; 31:21;
32:14; 36:23; 37:12, 18;
49:6, 18; 67:24; 69:19;
76:10; 78:3; 81:22, 25;
84:11; 85:4; 86:17; 87:6, 6,
21; 88:16; 92:9; 94:21;
96:20; 101:14; 106:16, 16;
115:19; 118:13; 141:12;
145:19; 152:5; 160:17, 20;
170:5; 182:10; 202:8;
206:20; 211:3; 218:11, 22;
224:10; 228:22; 232:24;
233:13; 248:11; 255:7;
266:13
**Surgei** 54:18; 55:4
**surrendered** 54:3
**suspended** 134:9; 135:4
**suspension** 122:25;
134:2; 136:7
**sworn** 4:5; 277:16

# T

**T-E-N-A** 194:22
**talented** 207:15
**talk** 45:13; 90:11; 168:3,
4; 11:10; 69:15; 117:22;
145:3, 24; 160:16; 208:13;
209:21; 242:22
**target** 195:24; 196:17;
197:9; 206:22
**taste** 63:10; 94:9; 246:9;
248:16
**tax** 262:17
**technical** 74:25; 78:15;
84:5, 14; 85:2, 7; 172:10
**telephone** 45:18, 19;
127:4; 184:10; 275:16
**telling** 20:15; 183:16, 19;
184:7; 209:12, 14; 210:10;
229:22
**Temper** 59:3
**Tempor** 68:8
**Tempora** 190:3
**ten** 25:5; 51:12; 96:9;
226:4, 4
**tenancy** 209:16
**tenant** 5:18, 19; 194:2, 5,
8, 17, 19, 21, 22, 25;
201:12, 20, 23; 202:5, 13,
25; 203:22; 204:4, 9;
206:3; 209:2, 5, 12, 23;
210:10, 11, 14, 20; 211:5;
194:16
**tentative** 183:5
**tenth** 108:21
**term** 7:5; 79:2; 107:3;
15:7; 32:11; 63:16; 68:25;
69:11, 24; 71:13; 98:21,
25; 99:24; 113:7, 15, 22;
114:3; 134:12; 144:5;
173:20; 174:20; 210:23;
213:18
**terminate** 18:16; 19:5;
20:16; 123:13, 18; 134:7,
17, 23; 135:16, 22; 142:8,
10, 14; 148:15; 152:12, 15,
17, 20, 25; 153:16; 154:19,
22, 24; 155:7, 11, 24;
156:22; 182:12, 21; 183:6,
21; 19:13, 19; 21:15;
28:19; 31:6, 11; 47:9;
121:25; 122:15; 136:21;
137:20; 184:22; 187:23;
188:9; 192:16; 219:10;
257:14, 18, 23; 258:11, 14;
259:8
**terminating** 123:6;
148:12; 152:9; 183:7, 10;
184:6; 185:8; 188:4
**termination** 19:16;
115:23; 121:20; 122:25;
134:2; 135:2; 136:6, 23;
137:22; 148:19; 153:15;
154:6; 184:12, 25; 185:4;
237:15
**terrible** 205:16

**territory** 187:17
**testified** 4:6; 35:9; 53:13;
65:8; 88:21; 95:4; 96:7;
116:10; 119:5; 149:19;
176:19; 186:23; 193:6, 9;
195:18; 202:23; 231:19;
232:14, 18; 233:4, 8, 11,
15; 260:6, 11, 20; 261:2
**testifying** 9:9
**testimony** 77:8; 80:4;
84:3; 96:24, 25; 97:4, 11;
131:18; 153:4; 154:3, 15;
160:11; 164:23; 176:21,
24; 177:3, 7; 193:14;
198:24; 218:22; 241:16;
244:14, 17; 245:16; 248:4;
260:8; 266:14; 277:3
**therefore** 64:3; 124:9, 9,
11
**thickness** 76:19
**thinking** 103:11; 147:19;
148:5; 155:6; 183:7; 248:8
**Third** 25:22; 168:6;
179:13; 195:10; 244:11
**though** 6:5; 25:9; 155:14
**thought** 37:12; 71:2;
110:20; 152:24; 194:20;
195:18; 248:20; 153:6
**thousand** 177:20
**Three** 18:2; 26:18, 18;
42:19; 63:3; 67:7; 68:5;
69:14; 70:6, 8; 71:6; 95:16,
20; 96:12, 15; 126:9, 10,
21; 127:8, 18, 24; 156:15;
166:18, 21; 167:2; 206:3;
207:8, 10, 21; 215:10, 23;
220:14; 229:13, 17
**three-dimensional**
78:16, 22
**three-month** 73:19
**thus** 135:24; 151:25
**tight** 71:9, 10; 74:5;
193:13
**tile** 206:10, 14
**time-consuming**
173:19; 174:9
**timeline** 71:13; 72:18, 20;
74:3, 4; 102:9; 193:10, 11,
12; 197:8
**timely** 101:8
**times** 4:21, 22; 5:10;
16:12, 13; 18:2; 45:14, 15;
16; 47:15; 49:12; 52:3;
65:19; 91:25; 137:11;
158:10, 21; 209:18; 236:3;
271:9
**timewise** 172:8
**today** 9:4, 9, 21; 10:8, 17,
20; 11:9, 11, 21; 12:21;
13:7; 22:13; 23:8; 28:11;
35:24; 53:13, 21; 55:22,
23, 25; 57:8; 60:12; 69:22;
77:23; 79:3; 118:7;
140:18; 143:9; 147:18;
149:20; 154:4, 20; 162:14;
176:21; 186:24; 188:3;
191:23; 216:21; 219:18;

Garry Braverman
Vol. 1, July 11, 2012

Triarch Architectural Services, P.C. v.
Medallion Inc., et al.

220:11; 221:25; 222:3;
227:23; 229:20; 232:18;
233:4, 9, 15; 236:4;
260:21; 261:2; 265:12, 16;
272:15, 18

**together** 15:23; 20:23;
65:24; 116:4; 143:16, 20;
144:9; 271:13; 272:11

**toilet** 177:20

**told** 18:15; 19:12; 20:10,
12; 21:15; 38:19; 44:17;
55:25; 57:5; 58:15; 77:9;
101:19; 102:23; 104:16;
110:19; 156:15; 165:17;
178:8; 202:18; 203:6, 15;
218:3; 275:12

**Tom** 7:19

**tomorrow** 92:8; 143:9;
147:6

**took** 50:23; 66:2; 93:16;
95:16, 20; 96:12; 102:24;
126:14; 142:15; 170:15;
188:11; 215:10; 226:24;
230:6; 248:25, 25

**tool** 217:8, 9; 116:21

**top** 112:25; 143:4;
144:21; 161:7; 168:7;
189:19; 241:9; 253:17

**topic** 58:8, 11

**total** 62:5, 5; 182:19

**totally** 192:18, 18; 226:8;
227:21

**tov** 58:9, 12

**towards** 41:20, 22;
46:15; 114:6; 140:5;
143:6; 168:7; 172:11;
190:10

**town** 14:15; 271:18

**trading** 6:13

**transcript** 277:4

**transfer** 52:10, 15; 192:4;
225:11

**traveling** 93:10

**treatments** 132:5

**tremendous** 170:9

**Tri** 199:18

**trial** 18:15; 60:16, 17

**Triarch** 19:2, 6, 9, 12, 19;
20:13, 16; 21:16; 28:19;
31:5, 10; 47:9; 59:23; 60:2;
63:22; 66:3; 75:21, 24;
77:9; 87:23; 88:7, 7, 18;
89:5, 18; 90:19; 91:5;
92:14; 93:6, 12; 95:19;
96:3, 13, 15; 97:4, 6;
113:7; 115:10; 116:9, 17;
117:13; 119:17; 120:13;
121:3, 11, 25; 122:5;
123:6; 126:9; 127:25;
129:16, 25; 130:21; 131:5,
19, 23; 132:2; 133:10, 18;
136:22; 137:21, 22; 140:7,
13; 142:5, 8, 10; 144:25;
145:9, 16; 146:3, 21;
147:2, 10; 148:15; 151:25;
152:12, 15, 17, 20; 153:2,
17; 154:19; 155:12;

157:12; 163:3; 171:20;
172:2; 173:12, 14; 174:23;
175:23; 177:24, 25;
178:11, 13; 181:15;
182:12; 183:6, 10, 21;
184:16; 185:4, 8, 14;
187:23; 188:4, 9; 191:14;
192:3, 11, 13, 15, 16, 24;
193:2; 195:11; 199:18;
200:3; 202:19; 206:20;
207:3; 211:6; 214:16;
217:18; 219:11; 221:11;
222:13; 224:4, 9, 13, 15;
232:6, 18, 25; 233:9, 16;
235:18; 236:9, 12; 240:24;
241:17; 242:3, 13, 24;
244:4, 7; 245:7; 248:7, 19;
249:12, 22; 251:6; 252:6;
254:8; 255:16, 25; 257:14,
19, 23; 258:10, 13; 259:7;
266:18, 20; 268:4, 7;
269:24; 270:25; 275:24;
276:12; 19:25; 65:9;
88:22, 25; 89:17; 90:20;
91:9; 115:13; 122:13;
128:22; 139:25; 150:19;
151:6; 162:4, 17; 175:18;
184:21; 185:8; 193:3;
233:20, 24; 234:6, 12, 16;
239:20; 240:4, 8, 13;
244:17; 245:16, 23;
247:14, 24; 248:4, 11;
251:2, 17, 21, 24; 252:15,
22; 258:14, 21; 259:10;
272:2

**Triarch-Medallion**
206:21; 233:2

**Tribeca** 169:23

**Tribeca-related** 169:22

**trigger** 125:14

**troubled** 48:6

**true** 110:21; 117:20;
172:18; 192:6; 193:4;
200:14, 15; 208:2, 3, 5, 6;
235:21; 249:6; 250:2;
277:4

**Truly** 214:9

**truth** 262:13; 263:3, 4

**try** 8:8; 96:24; 215:23;
266:3, 9

**trying** 15:3; 67:16; 76:21;
77:22; 116:3; 127:17, 22;
151:11; 167:11; 172:21;
241:14; 242:8

**Turn** 40:7; 66:21; 124:14;
179:12; 220:21; 226:2, 14;
65:3; 67:5; 225:24; 227:6,
8; 237:8; 36:12; 41:19;
52:7; 58:19; 95:10; 99:7;
111:24; 121:6; 122:24;
138:7, 24, 25; 160:4;
168:6; 180:20; 183:15;
192:21; 206:7; 207:22;
212:12; 216:24; 219:5;
220:24; 228:2

**TV** 150:6

**Two** 5:9, 10; 6:17; 25:13,
17, 20; 28:18; 31:5, 10;
45:14; 51:22; 69:14; 70:6;

71:23, 24; 72:2, 10; 73:8;
86:3; 123:25; 134:13, 16;
135:3, 4, 9, 14; 137:10;
154:16; 170:25; 181:17;
197:5; 213:5; 215:23;
216:2; 232:10; 260:7, 10;
275:8

**two-page** 39:2; 189:10;
253:9

**type** 17:22; 79:13; 85:6;
23:14; 84:4; 86:21; 130:19

**typical** 92:17, 19

## U

**U.S** 7:22, 23; 50:24; 51:2;
62:16

**Ukraine** 14:11, 15; 50:14;
260:17

**ultimate** 63:25; 217:8, 9

**ultimately** 37:6; 40:14;
60:15; 115:18; 150:9;
179:8

**under** 4:6; 9:13; 39:12;
41:2; 42:20; 67:13; 71:8;
72:16, 16, 18, 20; 77:5;
128:19; 138:15; 174:19,
23; 195:4; 197:8; 218:16;
232:19; 233:2, 6, 17

**Underneath** 42:5, 12

**understandable** 214:2

**understands** 192:24

**understood** 38:14; 71:3,
7; 107:6; 129:22; 213:19;
214:2; 216:15; 217:15

**Unfortunately** 60:19, 20;
61:3

**unhappy** 88:22

**Union** 261:15

**unique** 90:25; 91:2

**Unit** 35:17; 18:3; 28:25;
261:17, 19; 263:12, 22;
264:6, 10

**Unitrade** 42:24; 43:2, 11,
18; 44:14, 18; 45:6

**unless** 107:8; 114:24

**unlikely** 154:5

**unloaded** 7:10

**unreasonable** 24:25

**unrelated** 204:23

**up** 116:18

**upon** 57:9; 71:9; 111:18;
121:19; 155:23; 200:9;
214:20; 255:25; 263:3

**upset** 64:18; 65:2, 5;
157:4

**use** 48:7; 79:11, 12;
104:2, 4, 15; 105:11, 18,
20; 106:8, 20; 107:7;
108:25; 121:7, 21, 23;
122:13; 150:15; 171:3;
191:16; 228:11; 247:7, 14,
15; 249:4, 12

**used** 43:15; 85:20; 87:5,
9; 89:14; 192:14, 25, 25;

193:13; 203:17; 206:2, 3;
228:24; 243:4; 247:3, 12;
248:19; 265:15

**using** 79:2; 88:9; 104:11;
192:12; 246:2, 6; 247:17;
255:18

**usual** 66:7, 7

**Uzbekistan** 29:9, 9;
30:14

## V

**V-U-C-K-O-V-I-C** 53:20

**vacation** 154:8; 158:16

**value** 204:12; 205:6, 9

**various** 16:16; 84:6, 7,
15; 236:8; 239:18

**Vekselberg** 14:4; 16:23;
17:12, 23, 25; 18:7, 18;
19:23, 24; 20:17; 21:10,
12, 19, 24; 23:17; 24:5, 15;
27:6; 29:13; 34:9, 14;
64:15, 23; 65:2; 148:11;
156:7; 201:12; 202:6, 9,
20, 24; 203:4; 208:25;
209:11; 210:9, 14; 23:25;
194:11; 201:23

**vendor** 105:14; 55:16;
67:8

**version** 214:2

**vicinity** 21:4

**Victor** 14:4; 21:7; 22:20,
25; 34:9; 36:25; 38:20;
62:23; 63:4, 12; 82:6;
194:8; 202:3; 194:2, 5, 25

**view** 170:24; 173:19

**virtually** 100:15

**visit** 187:8, 8, 24; 190:6;
38:14; 190:3

**visual** 84:19

**Vladimir** 13:23; 20:3;
21:7; 36:24; 38:10; 48:2;
49:25; 63:6, 6, 7; 82:2;
89:7, 7; 90:10; 102:20;
139:6, 8; 151:9, 13;
156:14; 168:22; 185:15;
209:17; 215:22; 271:17,
18; 275:3; 47:23; 54:19;
65:22; 89:24; 90:7;
139:21; 166:15; 251:11;
269:4

**Voronchenko** 13:23;
14:6; 15:20; 16:6, 10, 20;
18:20; 20:20; 21:4; 26:23;
27:2; 29:10; 38:13, 15, 17;
48:9, 18; 49:24; 54:18;
55:4; 64:11, 17; 68:13;
82:16; 91:8, 17, 20; 92:12,
16, 21, 24; 93:12, 21; 94:3,
24; 95:4; 139:24; 149:2;
155:15; 156:3; 157:3;
164:18, 23; 165:7, 9, 15;
168:24; 169:7; 183:17;
185:11; 188:13, 22;
209:19, 23; 210:10, 13;
220:25; 221:5, 9, 10, 12,
21, 25; 220:16, 15, 19;

224:5, 9, 19; 247:2, 9, 16;
252:10, 16, 23; 253:12;
50:9; 143:8

**Vuckovic** 53:19, 19; 54:4

## W

**wait** 8:17; 56:3; 154:17;
115:9

**waived** 192:3

**walk** 51:15, 10

**wall** 73:17, 17; 74:2, 24;
76:20, 22; 77:3; 79:5, 5, 6,
7, 17, 19, 25; 84:15; 86:18,
19, 20, 21; 133:5; 149:23;
76:14; 84:6, 7; 198:21

**wants** 24:9; 38:20; 94:8;
239:8; 258:5

**warnings** 123:21; 155:3,
7

**waste** 182:19

**way** 9:2; 12:18; 20:11;
38:2; 45:18; 47:6; 72:4;
98:17; 108:2; 113:25;
122:14; 129:12; 139:24;
141:15, 18; 143:23;
144:17; 149:9; 151:4, 10;
155:11; 157:3, 16; 158:11;
159:23; 162:15; 167:9;
171:11; 187:20; 189:8;
190:14; 192:19; 218:14;
223:8; 232:20; 233:16;
238:5, 24; 242:10, 11;
251:3, 13; 259:9, 13;
261:23; 262:12, 25

**ways** 233:5, 9; 242:12

**Wednesday** 161:3;
253:10

**week** 16:13, 14; 29:19;
69:14; 207:17, 18; 216:12,
12, 13, 14; 70:5, 6; 71:23,
25; 72:2, 10; 73:8; 93:4,
16; 117:2; 197:5; 206:4

**weekend** 74:15

**welcome** 167:10

**weren't** 89:18; 167:2;
169:15; 190:20

**Wesley** 266:7

**west** 81:12

**whatsoever** 27:16; 31:7;
154:21; 155:25, 25;
160:22; 163:5; 209:5;
242:14; 248:12, 20

**whenever** 9:3; 97:16

**Whereupon** 118:14

**white** 79:6; 86:19

**whole** 55:25; 56:16;
101:12; 116:5; 136:12;
167:4; 201:16; 226:14;
233:5

**Whose** 194:15; 243:6

**wife** 155:10, 21; 156:4,
13; 157:5; 17:8; 155:16;
157:13

**willing** 70:15; 170:2;
202:4, 14

**win** 173:6, 8

**window** 132:5

**wire** 52:10, 15

**Wise** 33:13, 13, 15, 18;
44:8, 12, 17; 45:5, 10, 24;
54:10; 153:15; 184:11, 13;
185:12; 186:2; 108:23

**wish** 176:23; 195:24

**withdraw** 210:6

**Withdrawn** 30:24; 39:20;
41:21; 43:3; 44:7; 52:12;
54:23; 61:21; 64:25; 65:7;
72:17, 19; 77:7; 80:6;
82:10; 91:4; 92:23; 93:20;
96:6; 98:15; 100:3;
104:24; 109:17; 110:5;
114:19; 115:22; 117:11;
120:11; 122:8; 129:23;
131:16; 132:8; 133:16;
134:15; 140:4, 11; 141:9;
142:9; 144:13; 146:19;
150:5; 152:8, 10, 18;
155:19; 157:8, 10, 24;
164:6, 12, 14; 165:8;
169:17; 179:6; 180:5;
187:15; 190:9; 193:8;
196:16; 203:23; 204:2;
210:17; 211:19; 216:25;
219:8, 24; 224:25; 228:4;
230:17; 231:18; 232:16;
234:8, 9, 20; 235:15;
239:17, 25; 242:17;
244:16; 249:18; 255:22;
257:12; 258:12

**within** 7:10; 140:7;
170:19, 21, 25; 206:11, 17;
207:2, 13; 231:12

**without** 21:7; 45:12;
78:22; 84:5, 14; 85:2, 7;
89:15; 132:25; 133:7;
143:19, 24; 154:9; 159:10;
186:2; 193:2; 215:16;
252:16, 23; 276:10

**WITNESS** 9:18; 10:5;
11:2, 5, 22; 12:7, 20; 13:9;
26:8; 54:3; 55:24; 57:5, 17,
21, 24; 58:14, 16; 72:2;
109:7; 118:13; 127:13;
129:4, 18; 137:13, 14;
226:23; 262:14, 18;
263:13, 18; 264:25;
276:23; 277:2

**won** 173:14

**wondering** 223:6

**wood** 76:14; 79:12;
85:22, 22, 23; 87:15, 16;
246:3, 5, 14; 247:3, 7, 13,
15, 15, 16, 17, 20

**word** 159:14; 193:13;
92:10; 70:7; 89:23;
101:13; 103:18; 115:9;
125:10; 126:3; 133:5;
167:6; 196:4; 199:20;
241:14; 243:20; 276:8

**work** 13:13, 15; 22:18;
23:18; 27:23; 30:20; 54:6;
56:21; 67:21; 70:23;
73:10; 88:7, 22, 23; 90:21;
91:9; 96:3; 99:12, 19, 21;

100:10; 103:19, 19; 105:7;
107:9, 20; 115:10, 13;
117:4, 18; 118:2, 3, 5;
120:14; 127:10, 15, 16, 23;
128:2; 146:4, 9, 12, 21;
172:6, 13, 23, 24; 174:20;
175:8; 176:8; 177:15;
178:5; 184:21; 189:6;
190:15; 191:17; 199:18;
203:16; 208:10; 231:20;
234:18, 21; 235:7; 244:9;
255:3; 268:8; 270:3;
275:13; 276:13, 13, 16;
31:8; 36:15; 44:9; 54:5;
79:22; 96:13; 246:22;
19:3; 28:14, 20; 29:6, 17;
31:4; 48:16; 59:13; 68:2;
116:9; 143:7; 144:2;
145:7, 10, 17; 146:3, 23;
147:2, 11; 157:12; 158:15,
25; 159:2, 4; 170:14;
184:17; 185:6; 186:13;
188:14, 20; 189:14;
201:17; 229:11; 235:23;
237:3; 239:19; 240:3;
242:13; 265:8; 266:19;
269:25; 275:22; 276:11;
11:8; 47:3; 86:2; 172:20

**worst-case** 73:5; 203:19

**worth** 204:20, 21, 22;
205:3, 4; 227:21

**write** 242:10; 265:25;
52:9, 13

**writing** 105:18; 145:20,
22; 212:22

**written** 111:14; 120:13;
134:9; 208:24; 209:4

**wrong** 97:2; 113:20;
139:13; 196:6; 213:23;
215:24; 219:21; 275:10

**wrote** 185:16

# Y

**year** 15:14; 18:2; 24:19,
24; 102:24; 103:9; 104:9;
203:7; 222:8, 9; 225:14;
4:19, 23, 24; 14:7; 16:24;
37:19; 50:20; 69:16;
72:15; 92:5; 95:17, 20;
96:13, 16; 99:6; 206:3;
246:24

**year-end** 20:4, 12;
101:18

**yesterday** 92:7; 201:7, 9,
11

**York** 4:4, 4; 21:14; 25:18;
30:2; 31:20, 23; 32:2, 5, 8,
15, 18, 24; 33:3, 6, 10, 19,
22, 25; 34:6; 48:7; 51:10;
72:7; 102:20; 109:9, 19,
24; 138:5; 139:7, 9;
186:17; 187:8, 9; 190:3;
208:21; 271:16

**Yugoslavia** 68:4

# Z

**zillion** 158:21